No. 14-4764

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### TRINITY WALL STREET,

*Plaintiff-Appellee*,

v.

### WAL-MART STORES, INC., A DELAWARE CORPORATION,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Case No. 14-405-LPS
The Honorable Leonard P. Stark, United States District Judge

### APPELLANT'S OPENING BRIEF

POTTER ANDERSON & CORROON LLP
Philip A. Rovner
Matthew E. Fischer
Angela C. Whitesell
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
Tel:  (302) 984-6000
provner@potteranderson.com
mfischer@potteranderson.com
awhitesell@potteranderson.com

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel:  (213) 229-7000
tboutrous@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Adam H. Offenhartz
Aric H. Wu
200 Park Avenue
New York, New York 10166-0193
Tel:  (212) 351-4000
aoffenhartz@gibsondunn.com
awu@gibsondunn.com

*Attorneys for Defendant-Appellant*
*Wal-Mart Stores, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellant Wal-Mart Stores, Inc. is a publicly-held corporation whose shares are traded on the New York Stock Exchange.  Wal-Mart Stores, Inc. has no parent corporation, and no publicly-held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................8

STATEMENT OF ISSUES PRESENTED............................................10

STATEMENT OF NO RELATED CASES OR PROCEEDINGS.........10

STATEMENT OF THE CASE...............................................................10

    I.     Trinity's Proposal For Wal-Mart's 2014 Proxy Materials......................10

    II.    The SEC Staff Concurs With Wal-Mart's View That Trinity's
           Proposal Is Excludable From The Company's 2014 Proxy Materials.....11

    III.   Trinity Files Suit, But Fails To Obtain A Preliminary Injunction
           Enjoining Wal-Mart From Printing, Filing, Or Distributing
           The Company's 2014 Proxy Materials......................................................12

    IV.   Wal-Mart Files Its 2014 Proxy Materials Without Trinity's Proposal ....13

    V.    Trinity Files An Amended Complaint Seeking Declaratory Relief
           Relating To Wal-Mart's 2014 And 2015 Proxy Materials And
           Injunctive Relief Relating To Wal-Mart's 2015 Proxy Materials ...........14

    VI.   The District Court Enters Final Judgment Declaring That
           Wal-Mart's Exclusion Of Trinity's Proposal From Its 2014
           Proxy Materials Was Improper And Enjoining Wal-Mart
           From Excluding The Proposal From Its 2015 Proxy Materials ...............14

    VII.  Following The District Court's Final Judgment, Trinity Submits
           Its Proposal For Inclusion In Wal-Mart's 2015 Proxy Materials.............16

    VIII. This Court Grants Wal-Mart's Motion To Expedite Appeal ...................17

SUMMARY OF ARGUMENT ..............................................................17

STANDARD OF REVIEW ...................................................................19

**TABLE OF CONTENTS**
**(continued)**

ARGUMENT ....................................................................................20

I.    Trinity's Proposal Is Excludable Under SEC Rule 14a-8(i)(7) Because
      It Deals With A Matter Relating To Ordinary Business Operations .......20

      A.    Under Rule 14a-8(i)(7), A Proposal Is Excludable If Its Subject
            Matter Relates To A Company's Ordinary Business Operations ..20

      B.    The SEC's Interpretation Of, And Guidance On,
            The Meaning And Application Of Its Own Rule
            Is Entitled To Considerable Deference ...........................................23

      C.    The District Court's Ruling Contravenes Longstanding SEC
            Guidance On Rule 14a-8(i)(7)'s Ordinary Business Exclusion.....24

            1.    It Is The Underlying Subject Matter Of A Proposal,
                  Not The Form Of Requested Action, That Is Dispositive
                  In Determining Whether A Proposal Is Excludable ...........24

            2.    A Proposal That Relates To An Area Of A Company's
                  Ordinary Business Operations Must Focus On, Not
                  Merely Implicate, A Significant Policy Issue To Avoid
                  Exclusion...........................................................................30

            3.    A Proposal That Does Focus On A Significant Policy
                  Issue Cannot Avoid Exclusion If The Significant Policy
                  Issue Does Not Have A Sufficient Nexus To The
                  Company ...........................................................................34

      D.    The SEC Staff Correctly Found That Trinity's Proposal
            Is Excludable Under Rule 14a-8(i)(7) Because It
            Relates To The Products That Wal-Mart Sells ..............................36

II.   Trinity's Proposal Is Vague And Indefinite And Thus
      Excludable Under SEC Rule 14a-8(i)(3)..................................................40

CONCLUSION ....................................................................................46

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*,
821 F. Supp. 877 (S.D.N.Y. 1993) ....................................................37

*Apache Corp. v. Chevedden*,
696 F. Supp. 2d 723 (S.D. Tex. 2010)......................................... 12, 39

*Apache Corp. v. N.Y.C. Emps.' Ret. Sys.*,
621 F. Supp. 2d 444 (S.D. Tex. 2008)...................................... 31, 32, 33, 34, 37

*Austin v. Consol. Edison Co.*,
788 F. Supp. 192 (S.D.N.Y. 1992) ............................................ 37, 39

*Blanchette v. Conn. Gen. Ins. Corp.*,
419 U.S. 102 (1974)...................................................................9

*CA, Inc. v. AFSCME Emps. Pension Plan*,
953 A.2d 227 (Del. 2008) ...........................................................38

*Decker v. Nw. Envtl. Def. Ctr.*,
133 S. Ct. 1326 (2013)............................................................ 18, 23

*DeJohn v. Temple Univ.*,
537 F.3d 301 (3d Cir. 2008) .......................................................43

*Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v.
Eastern Assoc. Coal Corp.*, 54 F.3d 141 (3d Cir. 1995) .......................... 5, 6, 23

*Donoghue v. Accenture Ltd.*,
No. 03 Civ. 8329, 2004 WL 1823448 (S.D.N.Y. Aug. 16, 2004)............... 37, 39

*Dyer v. SEC*,
287 F.2d 773 (8th Cir. 1961) ......................................................41

*El Paso Natural Gas Co. v. Neztsosie*,
526 U.S. 473 (1999)..................................................................13

*Facchiano Constr. Co. v. U.S. Dep't of Labor*,
987 F.2d 206 (3d Cir. 1993) .........................................................6

*Fed. Express Corp. v. Holowecki*,
552 U.S. 389 (2008)..................................................................23

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kelly v. Borough of Carlisle*,
622 F.3d 248 (3d Cir. 2010) ............................................................ 20

*Matwyuk v. Johnson*,
22 F. Supp. 3d 812 (W.D. Mich. 2014) ............................................. 43

*McCauley v. Univ. of Virgin Islands*,
618 F.3d 232 (3d Cir. 2010) ............................................................ 42

*Morrison v. Madison Dearborn*,
463 F.3d 312 (3d Cir. 2006) .................................................. 5, 18, 23

*N.Y.C. Emps.' Ret. Sys. v. Brunswick Corp.*,
789 F. Supp. 144 (S.D.N.Y. 1992) ...................................... 40, 41, 44

*Ruiz v. New Garden Twp.*,
376 F.3d 203 (3d Cir. 2004) .............................................................20

*S &D Trading Academy, LLC v. AAFIS Inc.*,
336 F. App'x 443 (5th Cir. 2009) .....................................................39

*Thomas Jefferson Univ. v. Shalala*,
512 U.S. 504 (1994).............................................................. 5, 18, 23

## Rules & Statutes

15 U.S.C. § 78n(a) .............................................................................23

15 U.S.C. § 78aa ..................................................................................8

17 C.F.R. § 202.1(d) .................................................................... 37, 38

17 C.F.R. § 240.14a-3 .......................................................................16

17 C.F.R. § 240.14a-8 ................................................... 2, 10, 12, 14

17 C.F.R. § 240.14a-8(c) ...................................................................15

17 C.F.R. § 240.14a-8(g) ...................................................................36

17 C.F.R. § 240.14a-8(i)(3) ................................................... *passim*

17 C.F.R. § 240.14a-8(i)(7) ................................................... *passim*

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

17 C.F.R. § 240.14a-8(j) ..........................................................................11

28 U.S.C. § 1291 .......................................................................................8

28 U.S.C. § 1292 .....................................................................................13

28 U.S.C. § 1331 .......................................................................................8

### SEC Releases & SEC Staff Bulletins

SEC Release No. 34-12598,
    1976 WL 160410 (July 7, 1976)............................................... 4, 24, 25

SEC Release No. 34-12599,
    1976 WL 160411 (July 7, 1976).......................................................39

SEC Release No. 34-12999,
    1976 WL 160347 (Nov. 22, 1976)............................... 4, 12, 21, 24, 25

SEC Release No. 34-19135,
    1982 WL 600869 (Oct. 14, 1982)...................................... 7, 19, 25, 26

SEC Release No. 34-20091,
    1983 WL 33272 (Aug. 16, 1983).................................................. 5, 26

SEC Release No. 34-39093,
    1997 WL 578696 (Sept. 18, 1997) ...................................... 5, 21, 28, 30

SEC Release No. 34-40018,
    1998 WL 254809 (May 21, 1998) ............................... 5, 21, 25, 30, 34

SEC Staff Legal Bulletin No. 14,
    2001 WL 34886112 (July 13, 2001)........................................... 12, 36

SEC Staff Legal Bulletin No. 14B,
    2004 WL 3711971 (Sept. 15, 2004) ...........................................7, 19

SEC Staff Legal Bulletin No. 14E,
    2009 WL 4363205 (Oct. 27, 2009)........................................... 27, 34

# TABLE OF AUTHORITIES
## (continued)

### SEC Staff No-Action Letters

*Amazon.com, Inc.*,
  2013 WL 326335 (Mar. 20, 2013) ....................................................................22

*Apache Corp.*,
  2008 WL 615894 (Mar. 5, 2008) ...................................................................... 34

*Bank of America Corp.*,
  2010 WL 4922465 (Feb. 24, 2010) ..................................................................33

*Berkshire Hathaway*,
  2011 WL 6859125 (Jan. 31, 2012) ................................................................... 41

*Cent. Fed. Corp.*,
  2010 WL 943083 (Mar. 8, 2010) ...................................................................... 34

*Dean Foods Co.*,
  2007 WL 754960 (Mar. 9, 2007) ......................................................................33

*Dillard's, Inc.*,
  2000 WL 382060 (Apr. 3, 2000) .......................................................................39

*Dillard's, Inc.*,
  2012 WL 173764 (Feb. 27, 2012) .....................................................................35

*Family Dollar Stores, Inc.*,
  2007 WL 3317923 (Nov. 6, 2007) .................................................................... 36

*Fuqua Indus., Inc.*,
  1991 WL 178684 (Mar. 12 1991) ..................................................................... 45

*Gen. Elec. Co.*,
  2010 WL 5067922 (Jan. 7, 2011) ............................................................... 22, 36

*Gen. Elec. Co.*,
  2012 WL 272127 (Jan. 25, 2012) .....................................................................22

*Gen. Elec. Co.*,
  2013 WL 6576737 (Jan. 23, 2014) ...................................................................15

*JPMorgan Chase & Co.*,
  2010 WL 147293 (Mar. 12, 2010) .............................................................. 31, 34

## TABLE OF AUTHORITIES
### (continued)

Page

*Loews Corp.*,
2006 WL 760438 (Mar. 22, 2006)......................................................39

*Marriott Int'l, Inc.*,
2010 WL 197267 (Mar. 17, 2010).....................................................22

*Mattel, Inc.*,
2012 WL 483197 (Feb. 10, 2012) ............................................... 32, 34

*NetApp, Inc.*,
2014 WL 1878421 (June 27, 2014) ...................................................44

*PepsiCo, Inc.*,
2012 WL 542708 (Feb. 16, 2012) .....................................................29

*PetSmart, Inc.*,
2011 WL 528414 (Mar. 24, 2011)................................................ 32, 34

*Philip Morris Cos. Inc.*,
1990 WL 286063 (Feb. 22, 1990) .................................................. 35

*Puget Energy, Inc.*,
2002 WL 523341 (Mar. 7, 2002).......................................................41

*Rite Aid Corp.*,
2009 WL 829472 (Mar. 26, 2009).................................................. 35

*Sempra Energy*,
2011 WL 6425347 (Jan. 12, 2012) ....................................................27

*Staples, Inc.*,
2012 WL 748854 (Mar. 5, 2012)........................................................41

*Sturm, Ruger & Co.*,
2001 WL 258493 (Mar. 5, 2001)................................................... 35

*The Boeing Co. (Recon.)*,
2011 WL 757455 (Mar. 2, 2011).......................................................41

*The Home Depot, Inc.*,
2008 WL 257307 (Jan. 25, 2008) ............................................... 22, 36

## TABLE OF AUTHORITIES
### (continued)

**Page**

*The Warnaco Group, Inc.*,
   1999 WL 152445 (Mar. 12, 1999)......................................................................31

*The Western Union Co.*,
   2011 WL 916163 (Mar. 14, 2011).....................................................................29

*The Western Union Co.*,
   2013 WL 368364 (Mar. 4, 2013).......................................................................44

*Walgreen Co.*,
   2006 WL 5381376 (Oct. 13, 2006)....................................................................37

*Walgreen Co.*,
   1997 WL 599903 (Sept. 29, 1997) ................................................................... 35

*Wal-Mart Stores, Inc.*,
   1999 WL 152447 (Mar. 15, 1999).....................................................................31

*Wal-Mart Stores, Inc.*,
   2001 WL 253625 (Mar. 9, 2001).......................................................................35

*Wal-Mart Stores, Inc.*,
   2008 WL 5622715 (Feb. 27, 2008) ...................................................................36

*Walt Disney Co.*,
   2010 WL 4312760 (Dec. 22, 2010) ............................................................. 22, 36

### Other Authorities

Keir D. Gumbs and Neel Maitra, "Shareholder Proposals,"
   83-3rd Corp. Prac. Ser. (BNA), at 83.IV.B (2014)............................................37

# INTRODUCTION

For decades, the U.S. Securities and Exchange Commission ("SEC" or "Commission") has carefully regulated the shareholder proposal process, and provided guidance to both public companies and their shareholders on its ground rules for shareholder proposals submitted for inclusion in a company's proxy materials.  The District Court's final judgment in this case, however, threatens to undo nearly 40 years of SEC guidance on its own rule and to interfere with the business operations of public companies by creating an exception to an SEC rule that the SEC has never adopted or endorsed and significantly expanding an otherwise limited exception to the SEC rule.

Defendant-Appellant Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company") brings this appeal to restore the SEC's ground rules for the shareholder proposal process and to vacate (i) a mandatory injunction that requires Wal-Mart to include in the Company's proxy materials for its 2015 annual meeting of shareholders a proposal that the SEC staff  agreed was excludable under the SEC's rules; and (ii) a declaration that Wal-Mart should not have excluded the proposal from the Company's proxy materials for its 2014 annual meeting of shareholders.

The important issues presented by this case arose in December 2013, when Plaintiff-Appellee Trinity Wall Street ("Trinity"), a religious corporation, requested that Wal-Mart include in its 2014 proxy materials a proposal (the

"Proposal") to amend a board committee charter to provide for "oversight" concerning the "formulation and implementation of, and the public reporting of the formulation and implementation of, policies and standards that determine whether or not the Company should sell" certain products, including products that would be considered "offensive" to "family and community values." (A-268). Although Wal-Mart sells hundreds of thousands of different products, Trinity's Proposal provided only "one example" of the products it was intended to cover – "guns equipped with high capacity magazines." (A-269).

A shareholder of a public company such as Wal-Mart is entitled to have a proposal included in the company's proxy materials only if the proposal complies with the requirements of SEC Rule 14a-8, 17 C.F.R. § 240.14a-8, which provides, among other things, that an issuer may exclude a shareholder proposal that "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). Here, after the SEC staff advised Trinity and Wal-Mart that it concurred with Wal-Mart's view that the Proposal was excludable from the Company's proxy materials under this rule, Trinity filed this lawsuit and a motion for preliminary injunction to compel Wal-Mart to include the Proposal in its 2014 proxy materials. The District Court denied Trinity's preliminary injunction motion, finding that "Trinity was not likely to succeed on the merits of its claims."

(A-24).  Trinity opted not to appeal the court's ruling, and Wal-Mart distributed its 2014 proxy materials without Trinity's Proposal.

But when it came time to address the merits on summary judgment, the District Court changed its view, ruling that "Trinity's Proposal was not properly excluded from Wal-Mart's 2014 proxy materials," and permanently enjoining Wal-Mart from "excluding Trinity's Proposal from its 2015 proxy materials . . . provided Trinity makes a proposal not materially dissimilar from its 2014 Proposal."  (A-19; A-29 to A-30).  The court entered final judgment on December 8, 2014.  (A-31).

Then, on December 18, 2014, Trinity submitted for inclusion in Wal-Mart's 2015 proxy materials a shareholder proposal that is "identical" to the Proposal that was submitted for Wal-Mart's 2014 proxy materials.  (A-440).  Accordingly, absent relief from this Court, the District Court's injunction mandates that Wal-Mart include Trinity's latest proposal in the Company's 2015 proxy materials, which must go to the printer in mid-April 2015.

This Court should reverse.  As the SEC staff itself explained, Trinity's Proposal is excludable under Rule 14a-8(i)(7) because  it "relates to the products and services offered for sale by the company" and thus deals with matters relating to Wal-Mart's ordinary business operations.  (A-288).  Indeed, as the District Court acknowledged, Trinity's Proposal seeks to have a board committee address policies

3

that "could (and almost certainly would) shape what products are sold by Wal-Mart."  (A-19).

In holding that the Proposal is not excludable, the District Court contradicted Rule 14a-8(i)(7) and contravened longstanding SEC guidance on and interpretation of the rule.  For example:

●    The District Court opined that "Trinity's Proposal was not properly excluded from Wal-Mart's 2014 proxy materials" because it does not "dictate to management," but instead "seeks to have Wal-Mart's ***Board*** oversee the development and effectuation of a Wal-Mart policy."  (A-19) (emphasis in original).  Nearly 40 years ago, however, the SEC rejected a standard under which shareholder proposals involving "matters that would be handled by management personnel without referral to the board of directors generally would be excludable," but proposals involving "matters that would require action by the board would not be."  SEC Release No. 34-12598, 1976 WL 160410, at *8 (July 7, 1976) ("1976 Proposing Release"); SEC Release No. 34-12999, 1976 WL 160347, at *11 (Nov. 22, 1976) ("1976 Adopting Release").

●    The District Court decided that "Trinity's 2014 Proposal is best viewed as dealing with matters that are not related to Wal-Mart's ordinary business operations," even though the Proposal sought to have a board committee address policies regarding "whether or not the Company should sell" certain products.  (A-

4

19).  More than 30 years ago, however, the SEC explained that a shareholder proposal is excludable under Rule 14a-8(i)(7) if the underlying "subject matter" that it seeks to have a committee review "involves a matter of ordinary business." SEC Release No. 34-20091, 1983 WL 33272, at *7 (Aug. 16, 1983) ("1983 Adopting Release").

● The District Court determined that Trinity's Proposal was not excludable under Rule 14a-8(i)(7) because it "implicates significant policy issues," including the potential "impact" to "Wal-Mart's reputation" from "sales of high capacity firearms."  (A-21).  More than 15 years ago, however, the SEC made clear that a proposal must *focus on*, not merely "implicate," a significant policy issue to avoid exclusion.  *See* SEC Release No. 34-39093, 1997 WL 578696, at *12-14 (Sept. 18, 1997) ("1997 Proposing Release"); SEC Release No. 34-40018, 1998 WL 254809, at *4 (May 21, 1998) ("1998 Adopting Release").  Where a proposal "implicates" a significant policy issue, but also addresses ordinary business matters, the proposal is excludable.  Here, Trinity's Proposal is drafted broadly and does not "focus" on the sale of firearms.  (A-268).

The SEC's guidance on Rule 14a-8(i)(7) "'must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  *Morrison v. Madison Dearborn*, 463 F.3d 312, 315 (3d Cir. 2006) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *see also Director, Office of Workers'*

*Comp. Programs, U.S. Dep't of Labor v. Eastern Assoc. Coal Corp.*, 54 F.3d 141, 147 (3d Cir. 1995) ("We accord greater deference to an administrative agency's interpretation of its own regulations than to its interpretation of a statute.") (citing *Facchiano Constr. Co. v. U.S. Dep't of Labor*, 987 F.2d 206, 213 (3d Cir. 1993)).

Here, the District Court did not find that the SEC's guidance was "plainly erroneous" or "inconsistent" with Rule 14a-8(i)(7). Instead, the court (i) wholly ignored the SEC's guidance from 1976 and 1983 making clear that it is the underlying subject matter of a shareholder proposal, not the form of requested action, that is dispositive in determining whether a proposal is excludable under Rule 14a-8(i)(7); and (ii) recited, but misconstrued, the SEC's guidance from 1998 on what it means for a proposal to "focus" on a significant policy issue.

Absent reversal, the District Court's erroneous ruling will leave the Rule 14a-8(i)(7) ordinary business exclusion in tatters. By holding that Trinity's Proposal is not excludable because it does not "dictate to management" and instead "would be felt at the Board level," the court has created what amounts to a board action exception to Rule 14a-8(i)(7), notwithstanding the SEC's plain guidance that no such exception exists. (A-20). And by holding that Trinity's Proposal is not excludable because it "includes" or "implicates" a significant policy issue, the court has expanded the significant policy issue exception to Rule 14a-8(i)(7) far beyond the boundaries established by the SEC. The exceptions created by the

6

court swallow the Rule 14a-8(i)(7) ordinary business exclusion, and threaten to open the floodgates to shareholder proposals that improperly conflate the "spheres of authority for the board of directors on one hand, and the company's shareholders on the other." 1997 Proposing Release, 1997 WL 578696, at *4.

The District Court also erred in holding that Trinity's Proposal is not excludable under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), which renders a proposal excludable if it is "vague" or "indefinite." SEC Release No. 34-19135, 1982 WL 600869, at *13 (Oct. 14, 1982) ("1982 Proposing Release"); SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *4 (Sept. 15, 2004) ("SLB 14B"). Here, key terms of the Proposal are hopelessly vague and indefinite. For example, the Proposal asks that a board committee address policies regarding whether or not Wal-Mart should sell a product that would be considered "offensive to the family and community values integral to the Company's promotion of its brand," but neither identifies any specific "values" nor any "family or community" whose values should be considered in determining whether a product is "offensive." (A-268).

Because of the vast variety of products offered by Wal-Mart and the numerous customers, employees, and communities around the world with whom Wal-Mart works, there is no single set of "family and community values" that would be readily and objectively identifiable as being "integral to the Company's

7

promotion of its brand." Given the vagueness, subjectivity, and ambiguity of these and other key terms, neither shareholders voting on the Proposal nor the Company in deciding how to implement the Proposal would be able to determine which of the hundreds of thousands of products that Wal-Mart sells would be swept within the ambit of the Proposal.

For these and all the other reasons set forth herein, Wal-Mart respectfully requests that this Court vacate the permanent injunction relating to the 2015 proxy materials, vacate the declaratory judgment relating to the 2014 proxy materials, and enter judgment in Wal-Mart's favor.

## JURISDICTIONAL STATEMENT

The District Court entered final judgment on December 8, 2014. (A-31). On December 16, 2014, Wal-Mart filed its notice of appeal. (A-1). On December 29, 2014, this Court granted Wal-Mart's motion to expedite its appeal. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

The Amended Complaint asserted two counts under Section 14(a) of the Securities Exchange of 1934, and Trinity invoked the District Court's subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. (A-234). The District Court found that Count I relating to Wal-Mart's 2014 proxy materials presented a justiciable controversy under the "capable of repetition, but evades review" exception to the mootness doctrine, but dismissed Count II as unripe

8

because it sought relief regarding Wal-Mart's 2015 proxy materials when Trinity had not yet submitted a proposal for 2015. The court granted summary judgment in Trinity's favor on Count I, declared that the exclusion of Trinity's Proposal from the 2014 proxy materials was improper, and enjoined Wal-Mart from excluding the Proposal from its 2015 proxy materials.

On December 18, 2014, after entry of the District Court's final judgment, Trinity submitted for inclusion in Wal-Mart's 2015 proxy materials a proposal that, according to Trinity, is "identical" to the Proposal that was submitted for Wal-Mart's 2014 proxy materials (A-440), and which the District Court's Count I injunction mandates that Wal-Mart include in its 2015 proxy materials. (A-31). Because Wal-Mart's 2015 proxy materials must be distributed in mid-April 2015, the Count I injunction presents a live and immediate controversy over which this Court plainly has jurisdiction. Moreover, as a result of Trinity's submission of the "identical" proposal for the 2015 proxy materials, Count II of the Amended Complaint has now ripened and also presents a justiciable controversy that this Court can and should decide. *See Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 102, 139-47 & n.25 (1974) (adjudicating merits of claims that ripened subsequent to district court's ruling because "ripeness is peculiarly a question of timing" and "it is the situation now rather than the situation at the time of the District Court's decision that must govern," and explaining that remand "would be both

undesirable and unnecessary" in light of the tight timetable confronting the parties

and because the legal issues had already been "fully ventilated" by the parties).

## STATEMENT OF ISSUES PRESENTED

1.    Is Trinity's Proposal excludable from Wal-Mart's proxy materials

under SEC Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7), because it deals with a

matter relating to Wal-Mart's ordinary business operations?  (*See* A-18 to A-24; A-

111 to A-113; A-270 to A-289; District Court Dkt. 18, 38, 47, 55, 57).

2.    Is Trinity's Proposal excludable from Wal-Mart's proxy materials

under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3), because it is vague and

indefinite?  (*See* A-24 to A-27; District Court Dkt. 47, 55, 57).

## STATEMENT OF NO RELATED CASES OR PROCEEDINGS

There is no related case or proceeding that has previously been before this

Court or that is pending or is about to be presented before this Court or any other

court or agency.

## STATEMENT OF THE CASE

## I.    Trinity's Proposal For Wal-Mart's 2014 Proxy Materials

Wal-Mart is the world's largest retailer and sells hundreds of thousands of

different products.  (A-250).  Each year, Wal-Mart receives proposals that

shareholders seek to have included in the Company's proxy materials pursuant to

Rule 14a-8.  Over the last five years, Wal-Mart has included 21 shareholder

proposals in its proxy materials.  (*Id.*).

Trinity is a religious corporation with over $2 billion in assets.  On

December 18, 2013, Trinity submitted a shareholder proposal "for inclusion in

Wal-Mart Stores, Inc.'s Notice of 2014 Annual Shareholders' Meeting and Proxy

Statement."  (A-266).  The Proposal asked Wal-Mart's Board of Directors to

amend the charter of the Board's Compensation, Nominating and Governance

Committee to provide for "oversight" concerning the "formulation and

implementation" of "policies and standards that determine whether or not the

Company should sell a product" that "endangers public safety and well-being,"

"has the substantial potential to impair the reputation of the Company," or would

be considered "offensive" to "family and community values."  (A-268).

## II.    The SEC Staff Concurs With Wal-Mart's View That Trinity's Proposal Is Excludable From The Company's 2014 Proxy Materials

On January 30, 2014, as required by SEC Rule 14a-8(j), 17 C.F.R.

§ 240.14a-8(j), Wal-Mart advised both Trinity and the SEC staff by letter that it

intended to omit the Proposal from the Company's 2014 proxy materials.  (A-271).

Wal-Mart explained that "the Company may exclude the Proposal pursuant to Rule

14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7), because it deals with matters relating to

the Company's ordinary business operations, specifically, decisions concerning the

products offered for sale by the Company."  (A-273).  Wal-Mart "request[ed] that

the [SEC] Staff concur that it will take no action if the Company excludes the

Proposal from its 2014 Proxy Materials."  (A-276).

Trinity could have bypassed the "no-action" request process before the SEC staff by filing a lawsuit against Wal-Mart,[1] but decided instead to request that the SEC staff "deny the Company's request for no-action relief" by submitting to the SEC staff on February 4, 2014 six pages of "analysis" on why "the Proposal is not excludable."  (A-279 to A-285).

On March 20, 2014, the SEC staff issued a letter concurring with Wal-Mart's view that Trinity's Proposal was excludable under Rule 14a-8(i)(7) and stating that it would not recommend an enforcement action against Wal-Mart if the Proposal were excluded from the 2014 proxy materials because it "relates to the products and services offered for sale by the company."  (A-287 to A-289).

## III.  Trinity Files Suit, But Fails To Obtain A Preliminary Injunction Enjoining Wal-Mart From Printing, Filing, Or Distributing The Company's 2014 Proxy Materials

On April 1, 2014, Trinity filed a Complaint alleging that "Wal-Mart's stated decision to omit [Trinity's] Proposal from the 2014 Proxy Materials violates Section 14(a) of the 1934 Act and Rule 14a-8" (A-60), and a motion for a

---

[1]  *See* 1976 Adopting Release, 1976 WL 160347, at *4 (advancing deadline for the submission of shareholder proposals to provide shareholder proponents with additional time to "explore all possible alternatives in connection with a management's intention to omit their proposals," including "institut[ing] an action in a U.S. District Court"); SEC Staff Legal Bulletin No. 14, 2001 WL 34886112, at *5 (July 13, 2001) ("Where the arguments raised in the company's no-action request are before a court of law, our policy is not to comment on those arguments."); *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 732 (S.D. Tex. 2010) ("The S.E.C. staff will not provide no-action letters when litigation is pending.").

12

preliminary injunction seeking to enjoin Wal-Mart from "printing, issuing, filing, mailing or otherwise transmitting its 2014 proxy materials without Plaintiff's December 18, 2013 shareholder proposal." (District Court Dkt. 1).

On April 11, 2014, after hearing argument from the parties, the District Court denied Trinity's preliminary injunction motion because "Trinity's proposal deals with the matter relating to the company's business operations . . . . [*i.e.*,] what Wal-Mart sells on its shelves" and because Trinity "had not met its burden to show a likelihood of success on the merits." (A-107 to A-108). Trinity did not appeal the District Court's April 11, 2014 ruling. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 482 (1999) (explaining that rulings on preliminary injunction motions are "appealable as of right" under 28 U.S.C. § 1292(a)(1)).

## IV.    Wal-Mart Files Its 2014 Proxy Materials Without Trinity's Proposal

On April 23, 2014, Wal-Mart filed its definitive proxy materials for the Company's 2014 annual meeting of shareholders with the SEC and made its 2014 proxy materials available to shareholders. (A-119). The definitive proxy materials did not include Trinity's Proposal, but did include three Rule 14a-8-compliant proposals submitted by other shareholders. (A-199 to A-204).

**V.    Trinity Files An Amended Complaint Seeking Declaratory Relief Relating To Wal-Mart's 2014 And 2015 Proxy Materials And Injunctive Relief Relating To Wal-Mart's 2015 Proxy Materials**

On May 19, 2014, Trinity filed an Amended Complaint.  (A-231).  Count I of the Amended Complaint sought a hindsight declaration that "Wal-Mart's decision to omit the Proposal from the 2014 Proxy Materials violated Section 14(a) of the 1934 Act and Rule 14a-8" (A-244), and Count II sought a prospective declaration that "Wal-Mart's reasonably anticipated exclusion of the Proposal from the 2015 Proxy Materials would violate Section 14(a) of the 1934 Act and Rule 14a-8."  (A-246).  In addition, Trinity sought "[i]njunctive relief compelling Wal-Mart to include the Proposal in the 2015 Proxy Materials."  (*Id.*).

**VI.    The District Court Enters Final Judgment Declaring That Wal-Mart's Exclusion Of Trinity's Proposal From Its 2014 Proxy Materials Was Improper And Enjoining Wal-Mart From Excluding The Proposal From Its 2015 Proxy Materials**

On November 26, 2014, the District Court issued a Memorandum Opinion and Order.  (A-2 to A-29).  Although the District Court had "earlier concluded that Trinity was not likely to succeed on the merits of its claims," and although "no facts ha[d] changed since the time the [District] Court reviewed the preliminary injunction motion," the District Court granted summary judgment in Trinity's favor on Count I of the Amended Complaint.  (A-24).  The District Court

dismissed Count II as unripe because Trinity had "neither drafted nor submitted its 2015 proposal." (A-17).[2]

The District Court determined that "Trinity's 2014 Proposal is best viewed as dealing with matters that are not related to Wal-Mart's ordinary business operations" because "[a]ny direct impact of adoption of Trinity's Proposal would be felt at the Board level"; and that the Proposal was not excludable under Rule 14a-8(i)(7) even though it related to the products that Wal-Mart sells because it "implicates significant policy issues," including the potential "impact" to "Wal-Mart's reputation" from "sales of high capacity firearms." (A-19 to A-21).

The District Court also held that Trinity's Proposal was not excludable as vague or indefinite under Rule 14a-8(i)(3). The court acknowledged that there is "no single set of 'family and community values' that would be readily identifiable as being 'integral to [Wal-Mart's] promotion of its brand,'" but found the Proposal sufficient because it left the "specifics," including "what products" would be considered "offensive" to "family and community values," to a board committee to "evaluate in its discretion." (A-25).

---

[2]  "Each shareholder may submit no more than one proposal to a company for a particular shareholder's meeting," 17 C.F.R. § 240.14a-8(c), and a shareholder proposal submitted pursuant to Rule 14a-8 does not "carry over" from year to year. *See Gen. Elec. Co.*, 2013 WL 6576737, at *1 (Jan. 23, 2014).

The District Court entered final judgment on December 8, 2014.  (A-31).

The final judgment declared that "Trinity's proposal should not have been

excluded from Wal-Mart's 2014 proxy materials." (*Id.*).  In addition,

notwithstanding its dismissal of Count II on ripeness grounds, the District Court

"permanently enjoined" Wal-Mart from "excluding Trinity's proposal from Wal-

Mart's 2015 proxy materials, on the grounds addressed in the Court's Opinion,

provided Trinity makes a proposal not materially dissimilar from its 2014

proposal." (A-31).

## VII. Following The District Court's Final Judgment, Trinity Submits Its Proposal For Inclusion In Wal-Mart's 2015 Proxy Materials

On December 18, 2014, after entry of the District Court's final judgment and

injunction, Trinity submitted for inclusion in Wal-Mart's 2015 proxy materials a

shareholder proposal that is "identical to the proposal Trinity Wall Street submitted

to [Wal-Mart] on December 18, 2013 for inclusion in Wal-Mart Stores, Inc.'s

Notice of 2014 Annual Shareholders' Meeting and Proxy Statement." (A-440).

Wal-Mart's 2015 annual meeting of shareholders will occur on June 5, 2015.

(A-434, ¶ 3).  Wal-Mart is required to furnish its proxy materials to shareholders in

advance of the meeting.  *See* 17 C.F.R. § 240.14a-3.  To meet the applicable

deadlines under SEC rules, printing of Wal-Mart's 2015 proxy materials will begin

on or about April 16, 2015, and the proxy materials will be filed with the SEC on

or about April 22, 2015.  (A-435, ¶ 6).

16

**VIII. This Court Grants Wal-Mart's Motion To Expedite Appeal**

Wal-Mart filed its notice of appeal on December 16, 2014. (A-1). On December 23, 2014, Wal-Mart filed an unopposed motion to expedite its appeal. As explained in the motion, expedited resolution of this appeal is needed because there is no meaningful relief that this Court can provide unless there is a ruling on the merits *before* Wal-Mart's 2015 proxy materials are printed, filed, and distributed in mid-April 2015. On December 29, 2014, this Court granted the motion to expedite.

## SUMMARY OF ARGUMENT

The District Court's permanent injunction relating to the 2015 proxy materials and declaratory judgment relating to the 2014 proxy materials should be vacated, and judgment on Counts I and II of the Amended Complaint should be entered in Wal-Mart's favor, because the Proposal is excludable from Wal-Mart's proxy materials under both SEC Rule 14a-8(i)(7) and SEC Rule 14a-8(i)(3).

Under Rule 14a-8(i)(7), an issuer may exclude from its proxy materials a shareholder proposal that "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). Here, as the SEC staff explained in its no-action letter, Trinity's Proposal is excludable under Rule 14a-8(i)(7) because it "relates to the products and services offered for sale by the company." (A-288). The District Court acknowledged that Trinity's Proposal

17

seeks to have a board committee address policies that "could (and almost certainly would) shape what products are sold by Wal-Mart," but held that the Proposal is "best viewed as dealing with matters that are not related to Wal-Mart's ordinary business operations." (A-19).

The District Court's ruling is legally erroneous. In fact, it contravenes longstanding and consistent SEC guidance on and interpretation of Rule 14a-8(i)(7), which "'must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Morrison*, 463 F.3d at 315 (quoting *Thomas Jefferson*, 512 U.S. at 512); *see also Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) ("It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail. When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.") (internal quotation and citation omitted).

The District Court did not find that the SEC's guidance was "plainly erroneous" or "inconsistent" with Rule 14a-8(i)(7). Instead, the court relied on the fact that Proposal was directed at the Board, not management, simply ignoring SEC guidance that it is the underlying subject matter of a shareholder proposal, not the form of requested action, that is dispositive in determining whether a proposal is excludable under Rule 14a-8(i)(7). In addition, the court recited, but

18

misconstrued, the SEC's guidance on what it means for a proposal to "focus" on a significant policy issue. As a result, the court in effect created a board action exception to Rule 14a-8(i)(7) that the SEC has never adopted or endorsed and expanded the significant policy issue exception to Rule 14a-8(i)(7) far beyond the parameters established by the SEC. Absent reversal, the exceptions created by the court would swallow the rule, undo nearly 40 years of SEC guidance on Rule 14a-8(i)(7), and flood public companies with proposals that subject to shareholder vote decisions regarding ordinary business matters.

The District Court also erred in holding that Trinity's Proposal is not excludable under SEC Rule 14a-8(i)(3). A proposal is excludable under Rule 14a-8(i)(3) if the language of the proposal or its supporting statement is "vague" or "indefinite." 1982 Proposing Release, 1982 WL 600869, at *13; SLB 14B, 2004 WL 3711971, at *4. Because key terms of the Proposal – *e.g.*, "offensive to family and community values" – are vague, indefinite, or both, neither shareholders voting on the Proposal nor the Company in deciding how to implement the Proposal, would be able to determine which of the hundreds of thousands of products that Wal-Mart sells would be addressed by the Proposal.

## STANDARD OF REVIEW

This Court's review of the District Court's summary judgment rulings and the legal conclusions underlying the District Court's mandatory injunction is

plenary. *See*, *e.g.*, *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)

("Our review of the District Court's summary judgment is plenary."); *Ruiz v. New*

*Garden Twp.*, 376 F.3d 203, 206 (3d Cir. 2004) ("We review a district court's

decision to grant or deny a permanent injunction under an abuse of discretion

standard. However, because an abuse of discretion exists where the district court's

decision rests upon . . . an errant conclusion of law, or an improper application of

law to fact, we apply plenary review to the District Court's legal conclusions.").

## ARGUMENT

## I.    Trinity's Proposal Is Excludable Under SEC Rule 14a-8(i)(7) Because It Deals With A Matter Relating To Ordinary Business Operations

The District Court's permanent injunction relating to the 2015 proxy

materials and declaratory judgment relating to the 2014 materials should be

vacated, and judgment should be entered in Wal-Mart's favor, because Trinity's

Proposal addresses matters relating to Wal-Mart's ordinary business operations and

is therefore excludable under SEC Rule 14a-8(i)(7), as interpreted and applied by

the SEC itself for nearly 40 years.

### A.    Under Rule 14a-8(i)(7), A Proposal Is Excludable If Its Subject Matter Relates To A Company's Ordinary Business Operations

Under SEC Rule 14a-8(i)(7), an issuer may exclude a shareholder proposal

that "deals with a matter relating to the company's ordinary business operations."

17 C.F.R. § 240.14a-8(i)(7). The ordinary business exclusion is based on "spheres

of authority for the board of directors on one hand, and the company's

shareholders on the other." 1997 Proposing Release, 1997 WL 578696, at *4. Indeed, "[t]he general underlying policy of this exclusion is consistent with the policy of most state corporate laws: to confine the resolution of ordinary business problems to management and the board of directors . . . ." 1998 Adopting Release, 1998 WL 254809, at *4.

As the SEC has explained, a shareholder proposal is excludable under Rule 14a-8(i)(7) if either (i) the "subject matter of the proposal" relates to an area of the company's "day-to-day" business operations, such as "decisions on production quality and quantity," "the retention of suppliers," or "management of the workforce"; or (ii) "the proposal seeks to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment . . . such as where the proposal involves intricate detail, or seeks to impose specific time-frames or methods for implementing complex policies." *Id.* at *4-5.[3]

Here, Wal-Mart explained to the SEC staff its view that "the Company may exclude the Proposal pursuant to Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7),

---

[3]  *See also* 1976 Adopting Release, 1976 WL 160347, at *10-11 (rejecting proposed standard that would have limited the ordinary business exclusion to proposals whose subject matter relates to an area of a company's "day-to-day" business operations because the exclusion is also intended to apply to proposals that deal with "matters of a complex nature that shareholders, as a group, would not be qualified to make an informed judgment on, due to their lack of business expertise and their lack of intimate knowledge of the issuer's business").

because it deals with matters relating to the Company's ordinary business operations, specifically, decisions concerning the products offered for sale by the Company." (A-273). Wal-Mart did not argue that the Proposal seeks to micro-manage the Company. (A-270 to A-277).

The SEC staff concluded that Trinity's Proposal was excludable under Rule 14a-8(i)(7) because "the proposal relates to the products and services offered for sale by the company." (A-288).[4] The District Court agreed at first, when it denied Trinity's preliminary injunction motion on the ground that the Proposal "relates to what Wal-Mart sells on its shelves" (A-107), but then reversed course in its summary judgment ruling, notwithstanding "the SEC staff's expert decision." (A-

---

[4] Because there are two alternative grounds for exclusion under Rule 14a-8(i)(7), the SEC staff specifies the ground on which it is concurring when it grants an issuer's request for no-action relief. *Compare*, *e.g.*, *Gen. Elec. Co.*, 2010 WL 5067922, at *1 (Jan. 7, 2011) (concurring with exclusion because "the proposal appears to relate to the emphasis that the company places on the various products and services it offers for sale"); *Walt Disney Co.*, 2010 WL 4312760, at *1 (Dec. 22, 2010) (concurring with exclusion because "the proposal relates to the policies and procedures regarding the products and services that the company offers "); *The Home Depot, Inc.*, 2008 WL 257307, at *1 (Jan. 25, 2008) (concurring with exclusion because the proposal related to company's "sale of particular products"), *with Amazon.com, Inc.*, 2013 WL 326335, at *1 (Mar. 20, 2013) (stating that "the proposal seeks to micromanage the company to such a degree that exclusion of the proposal is appropriate"); *Gen. Elec. Co.*, 2012 WL 272127, at *1 (Jan. 25, 2012) (same); *Marriott Int'l, Inc.*, 2010 WL 197267, at *1 (Mar. 17, 2010) (same). Here, Wal-Mart argued that the Proposal is excludable because its subject matter relates to the products that the Company sells, not because it micro-manages the Company, and the SEC staff granted no-action relief on this basis. (A-273; A-288).

8).  As shown below, the SEC staff's "expert decision" was consistent with the

SEC's interpretation of Rule 14a-8(i)(7); the District Court's ruling is not.

### B.    The SEC's Interpretation Of, And Guidance On, The Meaning And Application Of Its Own Rule Is Entitled To Considerable Deference

Rule 14a-8 was promulgated by the SEC pursuant to Section 14(a) of the

Securities Exchange of 1934, which authorizes the SEC to make rules governing

proxy materials.  *See* 15 U.S.C. § 78n(a).  The SEC's interpretation of, and

guidance on, the meaning and application of Rule 14a-8(i)(7) is entitled to

considerable deference.  Indeed, as the Supreme Court has explained, "[j]ust as we

defer to an agency's reasonable interpretations of the statute when it issues

regulations in the first instance, . . . the agency is entitled to further deference when

it adopts a reasonable interpretation of the regulations it has put in force."  *Fed.*

*Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008); *see also Eastern Assoc.*, 54

F.3d at 147("We accord greater deference to an administrative agency's

interpretation of its own regulations than to its interpretation of a statute.")

(citations omitted).

Thus, the SEC's guidance on Rule 14a-8(i)(7) "'must be given *controlling*

*weight* unless it is plainly erroneous or inconsistent with the regulation.'"

*Morrison*, 463 F.3d at 315 (quoting *Thomas Jefferson*, 512 U.S. at 512) (emphasis

supplied); *see also Decker*, 133 S. Ct. at 1337 ("When an agency interprets its own

regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.").

### C. The District Court's Ruling Contravenes Longstanding SEC Guidance On Rule 14a-8(i)(7)'s Ordinary Business Exclusion

Here, the District Court did not find that the SEC's guidance was "plainly erroneous" or "inconsistent" with Rule 14a-8(i)(7). Instead, the court committed reversible error by both ignoring and misconstruing the SEC's guidance.

### 1. It Is The Underlying Subject Matter Of A Proposal, Not The Form Of Requested Action, That Is Dispositive In Determining Whether A Proposal Is Excludable

The District Court found it significant that the Proposal did not "dictate to management," but instead "seeks to have Wal-Mart's ***Board*** oversee the development and effectuation of a Wal-Mart policy." (A-19) (emphasis in original). The SEC has long made clear, however, that a shareholder cannot avoid exclusion by styling its proposal to request board action, rather than management action. Indeed, in 1976, the SEC specifically rejected a proposed standard under which shareholder proposals involving "matters that would be handled by management personnel without referral to the board of directors generally would be excludable," but proposals involving "matters that would require action by the board would not be." 1976 Proposing Release, 1976 WL 160410, at *8; 1976 Adopting Release, 1976 WL 160347, at *11.

Thus, it is irrelevant that Trinity's Proposal "leaves development of policy to the Board Committee" and does not "dictate to management specific products that Wal-Mart could or could not sell." (A-20). It is the underlying subject matter of a shareholder proposal, not the form of requested action, that is dispositive in determining whether a proposal is excludable under Rule 14a-8(i)(7). 1976 Proposing Release, 1976 WL 160410, at *8; 1976 Adopting Release, 1976 WL 160347, at *11; *see also* 1998 Adopting Release, 1998 WL 254809, at *4 (explaining that a "central" consideration of Rule 14a-8(i)(7) is "the subject matter of the proposal"). In this case, the subject matter of Trinity's Proposal is the sale of products. That the Proposal attempts to address this subject by directing action at a high level, *i.e.*, by requesting broadly-described policies to be adopted by a committee of Wal-Mart's Board of Directors, is irrelevant to the "subject matter" argument that Wal-Mart asserts.

In 1983, the SEC underscored this point by reversing an SEC staff position. On the one hand, the SEC staff had concurred in the exclusion of a proposal "requesting that [the company] alter its food production methods in underdeveloped countries . . . since the proposal specified the steps management should take." 1982 Proposing Release, 1982 WL 600869, at *17 n.49. On the other hand, however, the SEC staff had declined to concur that a proposal could be excluded when, rather than specifying in detail what the company should do, it

"asked the company to appoint a committee to review foreign agricultural operations with emphasis on the balance between labor and capital intensive production." *Id.* Because it "raise[d] form over substance and render[ed] the provisions of [Rule 14a-8(i)(7)'s predecessor] largely a nullity" to hold that the second proposal was not excludable merely because it sought action by a board-appointed committee, the SEC reversed the SEC staff's position and stated that "[h]enceforth, the staff will consider whether the subject matter of the special report or the committee involves a matter of ordinary business." 1983 Adopting Release, 1983 WL 33272, at *7.

The District Court's observation that the "task" of Trinity's Proposal is "the formulation and implementation of policy" (A-20), does not change the analysis. One of the SEC staff's grounds for concurring in the exclusion of the proposal that sought committee action was that "issuers do not . . . form committees to study particular aspects of its business as part of their ordinary business operations." 1982 Proposing Release, 1982 WL 600869, at *17. The SEC reversed the SEC staff's position because it raised form over substance and directed the staff to evaluate the underlying subject matter of the requested committee action. 1983 Adopting Release, 1983 WL 33272, at *7.

Nor does the analysis change because Trinity says the Proposal "seeks to ensure appropriate and transparent Board oversight of the sale by the company of

products that especially endanger public safety and well-being, risk impairing the

company's reputation, or offend the family and community values integral to the

company's brand." (A-268). Even where a shareholder proposal pertains to a

company's evaluation of risk, it is still the underlying subject matter of the

proposal that controls:

> [R]ather than focusing on whether a proposal and supporting
> statement relate to the company engaging in an evaluation of risk, we
> will instead focus on the subject matter to which the risk pertains or
> that gives rise to the risk. The fact that a proposal would require an
> evaluation of risk will not be dispositive of whether the proposal may
> be excluded under Rule 14a-8(i)(7). . . . [W]e will consider whether
> the underlying subject matter of the risk evaluation involves a matter
> of ordinary business to the company. . . . [I]n those cases in which a
> proposal's underlying subject matter involves an ordinary business
> matter to the company, the proposal generally will be excludable
> under Rule 14a-8(i)(7).

SEC Staff Legal Bulletin No. 14E, 2009 WL 4363205, at *2 (Oct. 27, 2009) (SLB

14E").

The SEC staff's no-action letter in *Sempra Energy*, 2011 WL 6425347 (Jan.

12, 2012) is instructive. There, the proposal asked the company's board to review

the company's management of risks posed by operations in certain countries. *Id.* at

*1. Like Trinity's Proposal, which the District Court argued "does not dictate any

particular outcome" (A-25), the proposal in *Sempra Energy* did not dictate any

particular outcome. 2011 WL 6425347, at *1. In concurring that the proposal

was excludable under Rule 14a-8(i)(7), the SEC staff stated that "although the

proposal requests the board to conduct an independent oversight review of Sempra's management of particular risks, the underlying subject matter of these risks appears to involve ordinary business matters." *Id*.

The District Court made no attempt to reconcile its holding with the plain pronouncements of both the SEC and the SEC staff that it is the underlying subject matter of a shareholder proposal, not the form of requested action, that is dispositive. Instead, the court effectively created a board action exception to Rule 14a-8(i)(7), by holding that Trinity's Proposal is not excludable under Rule 14a-8(i)(7) because it does not "dictate to management" and instead "would be felt at the Board level." (A-20).

The SEC has never recognized a board action exception to Rule 14a-8(i)(7). Moreover, in characterizing Trinity's Proposal as "well drafted" because it "does not dictate any particular outcome" (A-20), the District Court ignored that the Proposal directs the board to act on a specific ordinary business matter.[5] That is contrary to the distinction between the "spheres of authority for the board of directors on one hand, and the company's shareholders on the other" underlying the ordinary business exclusion. 1997 Proposing Release, 1997 WL 578696, at *4.

---

[5] The Proposal directs Wal-Mart's Compensation, Nominating and Governance Committee to "[p]rovid[e] oversight concerning the formulation and implementation of, and the public reporting of the formulation and implementation of, policies and standards that determine whether or not the Company should sell" certain products. (A-268).

On this point, the SEC staff's no-action letters in *PepsiCo, Inc.*, 2012 WL 542708 (Feb. 16, 2012) and *The Western Union Co.*, 2011 WL 916163 (Mar. 14, 2011), are instructive.  In *PepsiCo*, the SEC staff denied no-action relief where the proposal requested that the company "establish a risk oversight committee," but did not prescribe a specific ordinary business matter to be reviewed by the committee.  2012 WL 542708, at *1.  By contrast, in *Western Union*, the SEC staff granted no-action relief where the proposal not only requested that the company establish a risk oversight committee, but also prescribed an ordinary business matter to be reviewed by the committee:

> [A]lthough the proposal requests the establishment of a risk committee, which is a matter that focuses on the board's role in the oversight of Western Union's management of risk, the proposal also requests a report that describes how Western Union monitors and controls particular risks.  We note that the underlying subject matters of these risks appear to involve ordinary business matters.  Accordingly, we will not recommend enforcement action to the Commission if Western Union omits the proposal from its proxy materials in reliance on rule 14a-8(i)(7).

2011 WL 916163, at *1.

Because the underlying subject matter of Trinity's Proposal is the sale of products, and because the Proposal prescribes a specific ordinary business matter that is to be reviewed by an existing board committee, the Proposal is excludable under Rule 14a-8(i)(7).

### 2. A Proposal That Relates To An Area Of A Company's Ordinary Business Operations Must Focus On, Not Merely Implicate, A Significant Policy Issue To Avoid Exclusion

The District Court also erred in holding that the Proposal is not excludable under Rule 14a-8(i)(7) because it "*implicates* significant policy issues that are appropriate for a shareholder vote." (A-21) (emphasis supplied).

A shareholder proposal must focus on, not merely "implicate," a significant policy issue to avoid exclusion under Rule 14a-8(i)(7). As the SEC explained in its 1998 Adopting Release, a proposal "relating to [ordinary business] matters but *focusing* on sufficiently significant social policy issues (*e.g.,* significant discrimination matters) generally would not be considered to be excludable" because it would "transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote." 1998 Adopting Release, 1998 WL 254809, at *4 (emphasis supplied).[6]

The District Court recited the "focusing" language from the 1998 Adopting Release, but misconstrued the "focus" requirement by identifying a policy issue that the Proposal would "include" or "implicate," instead of analyzing the full breadth of the Proposal: "The significant social policy issues on which the

---

[6] *See also* 1997 Proposing Release, 1997 WL 578696, at *12-14 (noting "the emergence of proposals *focusing* on social policy issues beginning in the late 1960's" and explaining that proposals "*focusing* on significant social policy issues generally would not be considered to be excludable") (emphasis supplied).

Proposal focuses *include* the social and community effects of high capacity

firearms at the world's largest retailer and the impact this could have on Wal-

Mart's reputation . . . In this way, the Proposal *implicates* significant social policy

issues that are appropriate for a shareholder vote." (A-20 to A-21) (emphasis

supplied).

A proposal that "includes" or "implicates" a purported significant policy

issue, but also addresses ordinary business matters, does not "focus" on a

significant policy issue and is excludable. *See*, *e.g.*, *JPMorgan Chase & Co.*, 2010

WL 147293, at *1 (Mar. 12, 2010) (concurring with exclusion because "part of the

proposal addresses matters beyond the environmental impact of JPMorgan Chase's

project finance decisions, such as JP Morgan Chase's decision to extend  credit or

provide other financial services to particular types of customers"); *Wal-Mart*

*Stores, Inc.*, 1999 WL 152447, at *1  (Mar. 15, 1999) (concurring in exclusion of

proposal addressing a significant policy issue because "although the proposal

appears to address matters outside the scope of ordinary business, paragraph 3 of

the description of matters to be included in the report . . . relates to ordinary

business operations"); *The Warnaco Group, Inc.*, 1999 WL 152445, at *1 (Mar.

12, 1999) (same).

For example, in *Apache*, the district court held that the proposal at issue was

excludable under Rule 14a-8(i)(7), even though it sought to prohibit employment

discrimination because it also sought to have principles that were unrelated to employment discrimination incorporated into the company's ordinary business matters, including its marketing and selling of goods. *Apache Corp. v. N.Y.C. Emps.' Ret. Sys.*, 621 F. Supp. 2d 444, 452 (S.D. Tex. 2008). In *Mattel, Inc.*, 2012 WL 483197 (Feb. 10, 2012), the proposal at issue asked the board to require the company's suppliers to report on their compliance with a third-party code of business practices. The SEC staff concurred with the company's view that the proposal could be excluded because the code "has a broad scope that covers several topics that relate to the Company's ordinary business operations and are not significant policy issues." *Id.* at *1. In *PetSmart, Inc.*, 2011 WL 528414 (Mar. 24, 2011), the proposal at issue requested that the board require its suppliers to certify they had not violated "the Animal Welfare Act, the Lacey Act, or any state law equivalents." The SEC staff granted no-action relief under Rule 14a-8(i)(7) and stated: "Although the humane treatment of animals is a significant policy issue, we note your view that the scope of the laws covered by the proposal is 'fairly broad in nature from serious violations such as animal abuse to violations of administrative matters such as record keeping.'" *Id.* at *1.

Here, Trinity's Proposal is drafted broadly and does not "focus" on a policy issue concerning the sale of firearms. Indeed, the Proposal's supporting statement states that guns are "just one example" of the products that the Proposal addresses.

(A-268).  Far from "focusing" on the sale of firearms, Trinity's Proposal addresses

three broad categories of products: (i) products that endanger "public safety" or

"well-being"; (ii) products that have the "substantial potential to impair the

reputation of the Company;"[7] and (iii) products that are "offensive" to "family and

community values."  (*Id.*).  Thus, the Proposal could cover many products,

especially in light of the multitude of products Wal-Mart offers, including products

as diverse as movies, books, magazines, cosmetics, clothing, cigarettes, food

products, and pharmaceutical products.  (A-95).

By holding that the Proposal is not excludable because it "includes" or

"implicates" a  purported significant policy issue, the District Court turned the

SEC's guidance in its 1998 Adopting Release on its head and expanded the

significant policy issue exception to Rule 14a-8(i)(7) far beyond the boundaries

established by the SEC.  Indeed, "[t]o read the [SEC's] guidance as directing

---

[7] The SEC staff has repeatedly concurred in the exclusion of proposals concerning potential reputational harm to a company as relating to ordinary business matters.  *See, e.g.*, *Bank of America Corp.*, 2010 WL 4922465, at *1 (Feb. 24, 2010) (concurring in exclusion of proposal requesting board report on efficacy of a company policy "in protecting Bank of America's reputation" because "part of the proposal addresses matters beyond the environmental impact of Bank of America's project finance decisions, such as Bank of America's decisions to extend credit or provide other financial services to particular types of customers"); *Dean Foods Co.*, 2007 WL 754960, at *1 (Mar. 9, 2007) (concurring in exclusion of proposal requesting that a board committee review company policies for organic dairy products to "protect the company's brands and reputation" because it "relat[ed] to Dean Foods' ordinary business operations (*i.e.*, customer relations and decisions relating to supplier relationships)").

proper exclusion of shareholder proposals only when those proposals do not implicate a significant social policy would make much of the [SEC's] statement [in the 1998 Adopting Release] superfluous." *Apache*, 621 F. Supp. 2d at 451.

In short, because Trinity's Proposal does not focus on, and indeed extends far beyond, a policy issue concerning the sales of high capacity firearms, it is excludable under Rule 14a-8(i)(7). *See* 1998 Adopting Release, 1998 WL 254809, at *4; *Apache*, 621 F. Supp. 2d at 451-52; *Mattel*, 2012 WL 483197, at *1; *PetSmart*, 2011 WL 528414, at *1; *JPMorgan*, 2010 WL 147293, at *1; *Cent. Fed. Corp.*, 2010 WL 943083, at *1 (Mar. 8, 2010) (concurring with exclusion of proposal because it "relate[d] to both extraordinary transactions and non-extraordinary transactions"); *Apache Corp.*, 2008 WL 615894, at *1 (Mar. 5, 2008) (concurring with exclusion of proposal ostensibly dealing with employment discrimination because "some of the principles [in the proposal] relate to Apache's ordinary business operations").

### 3.    A Proposal That Does Focus On A Significant Policy Issue Cannot Avoid Exclusion If The Significant Policy Issue Does Not Have A Sufficient Nexus To The Company

Even if Trinity's Proposal were somehow construed, despite its broad wording, as "focusing" on a policy issue concerning the sales of high capacity firearms, it would still be excludable because Wal-Mart, as a retailer, does not have a "sufficient nexus" to the firearms that the Proposal references. *See* SLB 14E,

2009 WL 4363205, at *2 (explaining that a shareholder proposal focusing on a significant policy issue "generally will not be excludable under Rule 14a-8(i)(7) *as long as a sufficient nexus exists between the nature of the proposal and the company*") (emphasis supplied).

Indeed, while the SEC staff has denied the exclusion of proposals that relate to a *manufacturer's* products, it has repeatedly concurred in the exclusion of proposals that relate to a *retailer's* sale of even controversial products, including firearms and related products. *Compare Wal-Mart Stores, Inc.*, 2001 WL 253625, at *1 (Mar. 9, 2001) (concurring with the exclusion of a proposal that requested the retailer to stop selling "handguns and their accompanying ammunition"), *with Sturm, Ruger & Co.*, 2001 WL 258493, at *1 (Mar. 5, 2001) (declining to concur in exclusion of proposal that requested the gun manufacturer provide a "report on company policies and procedures aimed at stemming the incidence of gun violence in the United States"); *compare also Walgreen Co.*, 1997 WL 599903, at *1 (Sept. 29, 1997) (concurring in retailer's exclusion of proposal to stop the sale of tobacco products), *with Philip Morris Cos. Inc.*, 1990 WL 286063, at *1 (Feb. 22, 1990) (declining to concur in exclusion of proposal that requested the manufacturer of tobacco products to cease "conduct[ing] . . . business in tobacco or tobacco products"); *see also Dillard's, Inc.*, 2012 WL 173764, at *15 (Feb. 27, 2012) (concurring in retailer's exclusion of proposal "to develop a plan . . . to phase out

the sale of fur from raccoon dogs"); *Rite Aid Corp.*, 2009 WL 829472, at *1 (Mar. 26, 2009) (concurring in retailer's exclusion of proposal requesting the board to report on the company's response to regulatory and public pressure to end the sale of tobacco products).

> ### D. The SEC Staff Correctly Found That Trinity's Proposal Is Excludable Under Rule 14a-8(i)(7) Because It Relates To The Products That Wal-Mart Sells

In the "no-action" request process before the SEC staff, the company carries the burden of persuading the SEC staff that a shareholder proposal is excludable. *See* 17 C.F.R. § 240.14a-8(g). Here, the SEC staff concluded that Wal-Mart had carried its burden and concurred with Wal-Mart's view that Trinity's Proposal was excludable. (A-288).[8] The SEC staff's concurrence was not surprising. Consistent with text of Rule 14a-8(i)(7) and SEC guidance, the SEC staff has repeatedly concurred with the exclusion of shareholder proposals that relate to decisions by retailers concerning the sale of products. *See*, *e.g.*, *Gen. Elec. Co.*, 2010 WL 5067922, at *1 (Jan. 7, 2011); *Walt Disney Co.*, 2010 WL 4312760, at *1 (Dec. 22, 2010); *Wal-Mart Stores, Inc.*, 2008 WL 5622715, at *1 (Feb. 27, 2008); *The Home Depot, Inc.*, 2008 WL 257307, at *1 (Jan. 25, 2008); *Family Dollar*

---

[8] In the District Court proceedings, Trinity erroneously argued that the SEC staff's no-action letter should be discounted because it only stated that there was "some basis" for exclusion. (A-288). The "some basis" language is the SEC staff's standard language for exclusion. *See* SEC Staff Legal Bulletin No. 14, 2001 WL 34886112, at *5 (July 13, 2001); Declaration of Meredith B. Cross, dated July 11, 2014, ¶ 9 (A-300 to A-305).

*Stores, Inc.*, 2007 WL 3317923, at *1 (Nov. 6, 2007) (same); *Walgreen Co.*, 2006 WL 5381376, at *1 (Oct. 13, 2006) (same).[9]

Although non-binding, the SEC staff's no-action letter is "entitled to careful consideration as 'represent[ing] the views of persons who are continuously working with the provisions of the statute involved.'" *Donoghue v. Accenture Ltd.*, No. 03 Civ. 8329, 2004 WL 1823448, at *3 (S.D.N.Y. Aug. 16, 2004) (quoting 17 C.F.R. § 202.1(d)). Indeed, as explained by a recent former Director and Chief Counsel of the SEC's Division of Corporation Finance (A-301 to A-302, ¶¶ 6-7),[10] before the SEC staff makes a decision on a Rule 14a-8 no-action request, there are at least three levels of attorney review by a "task force" dedicated to reviewing Rule 14a-8 no-action requests:

● *First*, an "examiner" analyzes the arguments and precedent cited

by the parties and also conducts his or her own independent research of

---

[9] Thus, this case is unlike *Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877 (S.D.N.Y. 1993), where the court was confronted with inconsistent treatment of shareholder proposals by the SEC staff, and inconsistent interpretations of the SEC staff's no-action letters by the SEC, in the employment-related context. *Id.* at 886-92. There has been no such inconsistent treatment with regard to retailers' decisions concerning which products to sell. *See Austin v. Consol. Edison Co.*, 788 F. Supp. 192, 195 (S.D.N.Y. 1992) (relying on "SEC's long record of no-action letters on the precise subject at issue here").

[10] *See also Apache*, 621 F. Supp. 2d at 448 n.3 (describing multiple layers of review by the SEC staff); Keir D. Gumbs and Neel Maitra, "Shareholder Proposals," 83-3rd Corp. Prac. Ser. (BNA), at 83.IV.B (2014) (A-309) (same).

additional precedent, resulting in a legal memorandum that explains his or her findings and recommendations.

●    *Second*, a "manager" – a mid-level to senior attorney who has particular experience with Rule 14a-8 – reviews the parties' arguments and precedent and the examiner's research and analysis, conducts additional research as needed and recommends whether to grant or deny the request, also stating his or her reasoning for the recommendation.

●    *Third*, the "task force leader" – a senior attorney who has extensive Rule 14a-8 experience – reviews the parties' arguments and precedent and the internal research and analysis, consults with others in the SEC's Division of Corporation Finance as appropriate, and renders a final decision on behalf of the Division.  The decision is then communicated to both the company seeking to exclude the shareholder proposal and the proponent of the shareholder proposal in the form of a written letter.

In addition, the SEC staff "will generally present questions to the Commission  . . . where the issues are novel or highly complex," 17 C.F.R. § 202.1(d), and if circumstances warrant, the SEC staff will request that the Commission certify to a court questions of law that are pertinent to the consideration of a no-action request.  *See*, *e.g.*, *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 230-31 (Del. 2008).

Here, after considering the arguments and authorities in Wal-Mart's January 30, 2014 submission and the arguments and authorities in Trinity's February 4, 2014 submission, the SEC staff concluded that Trinity's Proposal was excludable under Rule 14a-8(i)(7) because "the proposal relates to the products and services offered for sale by the company." (A-288). Trinity could have sought the SEC staff's reconsideration or asked for Commission review of the SEC staff's response,[11] but did neither and filed this lawsuit instead.

Because the SEC staff's no-action letter here is consistent with both the SEC's guidance on Rule 14a-8(i)(7) and numerous other no-action letters where the SEC staff has concurred in the exclusion of shareholder proposals that relate to a retailer's sale of products, it is "persuasive" authority. *See S&D Trading Academy, LLC v. AAFIS Inc*., 336 F. App'x 443, 449 (5th Cir. 2009) (unpublished); *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 735 (S.D. Tex. 2010); *Donoghue*, 2004 WL 1823448, at *3; *Austin*, 788 F. Supp. at 195.

\* \* \*

Consistent with the SEC's longstanding guidance on Rule 14a-8(i)(7), and the text of the rule itself, Trinity's Proposal is excludable because the underlying

---

[11] *See* SEC Release No. 34-12599, 1976 WL 160411, at *5 (July 7, 1976) (SEC staff will "act upon a request for reconsideration" and forward requests for Commission review consistent with 17 C.F.R. § 202.1(d)); *Loews Corp.*, 2006 WL 760438, at *1 (Mar. 22, 2006) (granting reconsideration of no-action letter); *Dillard's Inc.*, 2000 WL 382060 (Apr. 3, 2000) (same).

subject matter of Trinity's Proposal is an area of Wal-Mart's ordinary business operations, and because Trinity's Proposal does not focus on a significant policy issue, let alone one that has a sufficient nexus to a retailer like Wal-Mart. Accordingly, the District Court's permanent injunction relating to the 2015 proxy materials and declaratory judgment relating to the 2014 proxy materials should be vacated, and judgment should be entered in Wal-Mart's favor.

## II.    Trinity's Proposal Is Vague And Indefinite And Thus Excludable Under SEC Rule 14a-8(i)(3)

Although the Court need not reach this issue because Trinity's Proposal is excludable under SEC Rule 14a-8(i)(7), the District Court's permanent injunction and declaratory judgment should be vacated, and judgment should be entered in Wal-Mart's favor, for the additional reason that Trinity's Proposal is excludable under SEC Rule 14a-8(i)(3).[12]

Because "shareholders are entitled to know precisely the breadth of the proposal on which they are asked to vote," *N.Y.C. Emps.' Ret. Sys. v. Brunswick Corp.*, 789 F. Supp. 144, 146 (S.D.N.Y. 1992), a proposal is excludable under Rule 14a-8(i)(3) if the language of the proposal or its supporting statement is "vague" or

---

[12]  The District Court criticized Wal-Mart for not raising Rule 14a-8(i)(3) before the SEC staff (A-24, n.11), but there is no requirement in Rule 14a-8 that an issuer present all possible grounds for exclusion in a no-action request.  Due to the strength of the Company's arguments under Rule 14a-8(i)(7) (with which the SEC staff ultimately concurred), Wal-Mart opted not to present its Rule 14a-8(i)(3) arguments to the SEC staff.

"indefinite," 1982 Proposing Release, 1982 WL 600869, at *13; SLB 14B, 2004

WL 3711971, at *4, or otherwise "lacks the clarity required of a proper shareholder

proposal." *Brunswick*, 789 F. Supp. at 146; *accord Dyer v. SEC*, 287 F.2d 773,

781 (8th Cir. 1961).

Thus, where key terms in a proposal are overly vague or indefinite,

exclusion under Rule 14a-8(i)(3) is proper. *See*, *e.g.*, *Staples, Inc.*, 2012 WL

748854, at *1, *6-7 (Mar. 5, 2012) (concurring in exclusion of proposal seeking to

limit accelerated vesting of equity awards in the event of "termination" or a

"change-in-control," subject to "pro rata vesting," where such terms were subject

to multiple interpretations); *Berkshire Hathaway*, 2011 WL 6859125, at *1, *8

(Jan. 31, 2012) (concurring in exclusion of proposal requiring the board of

directors to "sign-off b[y] means of an electronic key … [on] figures and policies

that show a high risk condition for the company" because "electronic key" and

"figures and policies" could each be construed in multiple ways); *The Boeing Co.

(Recon.)*, 2011 WL 757455, at *1-2 (Mar. 2, 2011) (concurring in exclusion of a

proposal asking the company to negotiate with senior executives to "request that

they relinquish . . . preexisting executive pay rights," because there were multiple

reasonable interpretations of "executive pay rights"); *Puget Energy, Inc.*, 2002 WL

523341, at *1, *8 (Mar. 7, 2002) (concurring in exclusion of a proposal requesting

that the company's board of directors "take the necessary steps to implement a

policy of improved corporate governance" where the proposal did not define "improved corporate governance" and the supporting statement included a nonexclusive list of examples).

Here, key terms of Trinity's Proposal are vague and indefinite. For example, the Proposal asks that a board committee provide oversight for the implementation of policies to determine whether or not Wal-Mart should sell "a product that would reasonably be considered by many offensive to the family and community values integral to the Company's promotion of its brand." (A-268). However, the Proposal neither identifies any specific "values" nor any "family or community" whose values should be considered in determining whether a product is "offensive." Because of the broad variety of products offered by Wal-Mart and the numerous customers, employees and communities around the world with whom Wal-Mart works,[13] there is no single set of "family and community values" that would be readily identifiable as being "integral to the Company's promotion of its brand," and the Proposal provides no further clarity on this point. *Cf. McCauley v. Univ. of Virgin Islands*, 618 F.3d 232, 248 (3d Cir. 2010) ("Paragraph R's use of 'offensive' is, 'on its face, sufficiently broad and subjective that [it] could conceivably be applied to cover any speech . . . th[at] offends someone.'") (quoting

---

[13] Wal-Mart employs more than two million associates around the world and operates in over 25 countries outside of the United States, with nearly 11,000 retail units internationally. (A-250).

*DeJohn v. Temple Univ.*, 537 F.3d 301, 317 (3d Cir. 2008)); *Matwyuk v. Johnson*,

22 F. Supp. 3d 812, 824-26 (W.D. Mich. 2014) (finding statute prohibiting

combinations on vanity license plates that are "offensive to good taste and

decency" to be "unconstitutionally vague" because it "lacks objective criteria").

Moreover, the Proposal fails to explain who the "many" are in its statement

that "a product that would reasonably be considered by many offensive" should be

subject to board oversight, or whether these "many" are the same group whose

values should define the universe of "offensive" products.  In addition, the

Proposal states that the policies implemented by the Board should address a

product that "has the substantial potential to impair the reputation of the

Company."  However, the Proposal does not explain what "substantial . . .

impair[ment]" is, nor does it identify any constituency whose views should be

determinative in evaluating the Company's reputation.

Given the vagueness, subjectivity, and ambiguity of the key terms in the

Proposal, it would not be clear to either Wal-Mart or its shareholders which of the

hundreds of thousands of products that Wal-Mart sells are encompassed by the

Proposal.  While the Proposal's supporting statement discusses guns equipped with

high capacity magazines, it also states that such guns are "just one example" of the

types of products that the Proposal is intended to address.  The extent to which the

Proposal is intended to cover other, unidentified products is thus unclear, and the

possibilities are endless because of the Proposal's broad, open-ended and amorphous language.

Rather than view the indefinite nature of the Proposal and its supporting statement as a problem, the District Court embraced it as a virtue.[14]  Indeed, the court found the Proposal sufficient because it left the "specifics," including "what products" would be considered "offensive" to "family and community values," to a board committee to "evaluate in its discretion."  (A-23).  The problem with the court's approach is that "shareholders are entitled to know precisely the breadth of the proposal on which they are asked to vote."  *Brunswick*, 789 F. Supp. at 146.  Because the Proposal and its supporting statement fail to identify or sufficiently describe the products that "would reasonably be considered by many offensive to . . . family and community values" or have a "substantial potential to impair the reputation of the Company,"  the Proposal "lacks the clarity required of a proper shareholder proposal."  *Brunswick*, 789 F. Supp. at 146.

---

[14]  The District Court mistakenly relied on *The Western Union Co.*, 2013 WL 368364 (Mar. 4, 2013).  In stark contrast to Trinity's Proposal, which leaves "family and community values" wholly undefined, the proposal at issue in *Western Union* requested the implementation of a political contribution policy tied to "corporate values *as defined by Western Union's stated policies*."  *Id.* at *2 (emphasis supplied).  Similarly, in contrast to Trinity's Proposal which provides but "one example" of a product that it is intended to cover (from the hundreds of thousands of products that Wal-Mart sells), the proposal in *NetApp, Inc.*, 2014 WL 1878421 (June 27, 2014), provided a list of specific "public policy" issues that it was intended to cover.  *Id.* at *13.

Accordingly, the District Court's permanent injunction and declaratory judgment should be vacated, and judgment should be entered in Wal-Mart's favor, because Trinity's Proposal is excludable under Rule 14a-8(i)(3). *See Fuqua Indus., Inc.*, 1991 WL 178684, at *1 (Mar. 12, 1991) (concurring in exclusion of proposal where "the meaning and application of terms and conditions . . . in the proposal would have to be made without guidance from the proposal and would be subject to different interpretations").

## CONCLUSION

For all these reasons, Wal-Mart respectfully requests that this Court vacate the permanent injunction relating to the 2015 proxy materials, vacate the declaratory judgment relating to the 2014 proxy materials, and enter judgment in Wal-Mart's favor on Counts I and II of the Amended Complaint.

Dated:  January 14, 2015

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

POTTER ANDERSON & CORROON LLP
Philip A. Rovner
Matthew E. Fischer
Angela C. Whitesell
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
Tel:  (302) 984-6000
provner@potteranderson.com
mfischer@potteranderson.com
awhitesell@potteranderson.com

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel:  (213) 229-7000
tboutrous@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Adam H. Offenhartz
Aric H. Wu
200 Park Avenue
New York, New York 10166-0193
Tel:  (212) 351-4000
aoffenhartz@gibsondunn.com
awu@gibsondunn.com

*Attorneys for Defendant-Appellant*
*Wal-Mart Stores, Inc.*

## **<u>CERTIFICATE OF BAR MEMBERSHIP</u>**

I hereby certify that I am a member in good standing of the U.S. Court of

Appeals for the Third Circuit.

Dated:  January 14, 2015          /s/ Theodore J. Boutrous Jr.
                                  Theodore J. Boutrous Jr.

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b) because it contains 10,879 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2010.

Dated:  January 14, 2015          /s/ Theodore J. Boutrous Jr.
                                  Theodore J. Boutrous Jr.

## <u>CERTIFICATE OF DIGITAL SUBMISSION AND VIRUS CHECK</u>

I hereby certify that a copy of the foregoing document was submitted in digital format, is an exact copy of the written document filed with the Clerk of the U.S. Court of Appeals for the Third Circuit, and is free from viruses according to a scan for viruses conducted with Microsoft System Center Endpoint Protection Version 1.1.11302.0.

Dated:  January 14, 2015                    /s/ Theodore J. Boutrous Jr.
                                            Theodore J. Boutrous Jr.

## CERTIFICATE OF FILING AND SERVICE

I, Theodore J. Boutrous Jr., hereby certify that, on January 14, 2015,

Appellant's Opening Brief and the parties' Joint Appendix were electronically

filed with the Clerk of the United States Court of Appeals for the Third Circuit

using CM-ECF which will send notification to the registered participants

including:

> Joel E. Friedlander, Esq.
> FRIEDLANDER & GORRIS, P.A.
> 222 Delaware Avenue, Suite 1400
> Wilmington, DE 19801
> jfriedlander@friedlandergorris.com

I further certify that I caused the required number of copies of Appellant's

Opening Brief and the parties' Joint Appendix to be filed with the Clerk's Office

of the U.S. Court of Appeals for the Third Circuit, via Federal Express.

Dated:  January 14, 2015                    /s/ Theodore J. Boutrous Jr.
                                            Theodore J. Boutrous Jr.

# ADDENDUM

## TABLE OF CONTENTS

**Page**

15 U.S.C. § 78n .................................................................................. Add-1

15 U.S.C. § 78aa ............................................................................... Add-12

28 U.S.C. § 1291 ............................................................................... Add-14

28 U.S.C. § 1292 ............................................................................... Add-15

28 U.S.C. § 1331 ............................................................................... Add-18

17 C.F.R. § 202.1 .............................................................................. Add-19

17 C.F.R. § 240.14a-3 ...................................................................... Add-21

17 C.F.R. § 240.14a-8 ...................................................................... Add-28

Westlaw.



**Effective: April 5, 2012**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    Chapter 2B. Securities Exchanges (Refs & Annos)
      **§ 78n. Proxies**

(a)(1) Solicitation of proxies in violation of rules and regulations

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

(2) The rules and regulations prescribed by the Commission under paragraph (1) may include

  (A) a requirement that a solicitation of proxy, consent, or authorization by (or on behalf of) an issuer include a nominee submitted by a shareholder to serve on the board of directors of the issuer; and

  (B) a requirement that an issuer follow a certain procedure in relation to a solicitation described in subparagraph (A).

(b) Giving or refraining from giving proxy in respect of any security carried for account of customer

(1) It shall be unlawful for any member of a national securities exchange, or any broker or dealer registered under this chapter, or any bank, association, or other entity that exercises fiduciary powers, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to give, or to refrain from giving a proxy, consent, authorization, or information statement in respect of any security registered pursuant to section 78l of this title, or any security issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.], carried for the account of a customer.

(2) With respect to banks, the rules and regulations prescribed by the Commission under paragraph (1) shall not require the disclosure of the names of beneficial owners of securities in an account held by the bank on December 28, 1985, unless the beneficial owner consents to the disclosure. The provisions of this paragraph shall not apply in the case of a bank which the Commission finds has not made a good faith effort to obtain such consent

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Add-1

from such beneficial owners.

(c) Information to holders of record prior to annual or other meeting

Unless proxies, consents, or authorizations in respect of a security registered pursuant to section 78*l* of this title, or a security issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.], are solicited by or on behalf of the management of the issuer from the holders of record of such security in accordance with the rules and regulations prescribed under subsection (a) of this section, prior to any annual or other meeting of the holders of such security, such issuer shall, in accordance with rules and regulations prescribed by the Commission, file with the Commission and transmit to all holders of record of such security information substantially equivalent to the information which would be required to be transmitted if a solicitation were made, but no information shall be required to be filed or transmitted pursuant to this subsection before July 1, 1964.

(d) Tender offer by owner of more than five per centum of class of securities; exceptions

**(1)** It shall be unlawful for any person, directly or indirectly, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, to make a tender offer for, or a request or invitation for tenders of, any class of any equity security which is registered pursuant to section 78*l* of this title, or any equity security of an insurance company which would have been required to be so registered except for the exemption contained in section 78*l*(g)(2)(G) of this title, or any equity security issued by a closed-end investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.], if, after consummation thereof, such person would, directly or indirectly, be the beneficial owner of more than 5 per centum of such class, unless at the time copies of the offer or request or invitation are first published or sent or given to security holders such person has filed with the Commission a statement containing such of the information specified in section 78m(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. All requests or invitations for tenders or advertisements making a tender offer or requesting or inviting tenders of such a security shall be filed as a part of such statement and shall contain such of the information contained in such statement as the Commission may by rules and regulations prescribe. Copies of any additional material soliciting or requesting such tender offers subsequent to the initial solicitation or request shall contain such information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors, and shall be filed with the Commission not later than the time copies of such material are first published or sent or given to security holders. Copies of all statements, in the form in which such material is furnished to security holders and the Commission, shall be sent to the issuer not later than the date such material is first published or sent or given to any security holders.

**(2)** When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for purposes of this subsection.

**(3)** In determining, for purposes of this subsection, any percentage of a class of any security, such class shall be

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

deemed to consist of the amount of the outstanding securities of such class, exclusive of any securities of such class held by or for the account of the issuer or a subsidiary of the issuer.

**(4)** Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**(5)** Securities deposited pursuant to a tender offer or request or invitation for tenders may be withdrawn by or on behalf of the depositor at any time until the expiration of seven days after the time definitive copies of the offer or request or invitation are first published or sent or given to security holders, and at any time after sixty days from the date of the original tender offer or request or invitation, except as the Commission may otherwise prescribe by rules, regulations, or order as necessary or appropriate in the public interest or for the protection of investors.

**(6)** Where any person makes a tender offer, or request or invitation for tenders, for less than all the outstanding equity securities of a class, and where a greater number of securities is deposited pursuant thereto within ten days after copies of the offer or request or invitation are first published or sent or given to security holders than such person is bound or willing to take up and pay for, the securities taken up shall be taken up as nearly as may be pro rata, disregarding fractions, according to the number of securities deposited by each depositor. The provisions of this subsection shall also apply to securities deposited within ten days after notice of an increase in the consideration offered to security holders, as described in paragraph (7), is first published or sent or given to security holders.

**(7)** Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request or invitation.

**(8)** The provisions of this subsection shall not apply to any offer for, or request or invitation for tenders of, any security--

**(A)** if the acquisition of such security, together with all other acquisitions by the same person of securities of the same class during the preceding twelve months, would not exceed 2 per centum of that class;

**(B)** by the issuer of such security; or

**(C)** which the Commission, by rules or regulations or by order, shall exempt from the provisions of this subsection as not entered into for the purpose of, and not having the effect of, changing or influencing the control of the issuer or otherwise as not comprehended within the purposes of this subsection.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) Untrue statement of material fact or omission of fact with respect to tender offer

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

(f) Election or designation of majority of directors of issuer by owner of more than five per centum of class of securities at other than meeting of security holders

If, pursuant to any arrangement or understanding with the person or persons acquiring securities in a transaction subject to subsection (d) of this section or subsection (d) of section 78m of this title, any persons are to be elected or designated as directors of the issuer, otherwise than at a meeting of security holders, and the persons so elected or designated will constitute a majority of the directors of the issuer, then, prior to the time any such person takes office as a director, and in accordance with rules and regulations prescribed by the Commission, the issuer shall file with the Commission, and transmit to all holders of record of securities of the issuer who would be entitled to vote at a meeting for election of directors, information substantially equivalent to the information which would be required by subsection (a) or (c) of this section to be transmitted if such person or persons were nominees for election as directors at a meeting of such security holders.

(g) Filing fees

(1)(A) At the time of filing such preliminary proxy solicitation material as the Commission may require by rule pursuant to subsection (a) of this section that concerns an acquisition, merger, consolidation, or proposed sale or other disposition of substantially all the assets of a company, the person making such filing, other than a company registered under the Investment Company Act of 1940 [15 U.S.C.A. § 80a-1 et seq.], shall pay to the Commission the following fees:

(i) for preliminary proxy solicitation material involving an acquisition, merger, or consolidation, if there is a proposed payment of cash or transfer of securities or property to shareholders, a fee at a rate that, subject to paragraph (4), is equal to $92 per $1,000,000 of of such proposed payment, or of the value of such securities or other property proposed to be transferred; and

(ii) for preliminary proxy solicitation material involving a proposed sale or other disposition of substantially all of the assets of a company, a fee at a rate that, subject to paragraph (4), is equal to $92 per $1,000,000 of of the cash or of the value of any securities or other property proposed to be received upon such sale or disposition.

**(B)** The fee imposed under subparagraph (A) shall be reduced with respect to securities in an amount equal to any fee paid to the Commission with respect to such securities in connection with the proposed transaction under section 77f(b) of this title, or the fee paid under that section shall be reduced in an amount equal to the fee paid to the Commission in connection with such transaction under this subsection. Where two or more companies involved in an acquisition, merger, consolidation, sale, or other disposition of substantially all the assets of a company must file such proxy material with the Commission, each shall pay a proportionate share of such fee.

**(2)** At the time of filing such preliminary information statement as the Commission may require by rule pursuant to subsection (c) of this section, the issuer shall pay to the Commission the same fee as required for preliminary proxy solicitation material under paragraph (1) of this subsection.

**(3)** At the time of filing such statement as the Commission may require by rule pursuant to subsection (d)(1) of this section, the person making the filing shall pay to the Commission a fee at a rate that, subject to paragraph (4), is equal to $92 per $1,000,000 of the aggregate amount of cash or of the value of securities or other property proposed to be offered. The fee shall be reduced with respect to securities in an amount equal to any fee paid with respect to such securities in connection with the proposed transaction under section 77f(b) of this title, or the fee paid under that section shall be reduced in an amount equal to the fee paid to the Commission in connection with such transaction under this subsection.

(4) Annual adjustment

For each fiscal year, the Commission shall by order adjust the rate required by paragraphs (1) and (3) for such fiscal year to a rate that is equal to the rate (expressed in dollars per million) that is applicable under section 6(b) of the Securities Act of 1933 (15 U.S.C. 77f(b)) for such fiscal year.

(5) Fee collection

Fees collected pursuant to this subsection for fiscal year 2012 and each fiscal year thereafter shall be deposited and credited as general revenue of the Treasury and shall not be available for obligation.

(6) Review; effective date; publication

In exercising its authority under this subsection, the Commission shall not be required to comply with the provisions of section 553 of Title 5. An adjusted rate prescribed under paragraph (4) shall be published and take effect in accordance with section 6(b) of the Securities Act of 1933 (15 U.S.C. 77f(b)).

(7) Pro rata application

The rates per $1,000,000 required by this subsection shall be applied pro rata to amounts and balances of less than $1,000,000.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(8)** Notwithstanding any other provision of law, the Commission may impose fees, charges, or prices for matters not involving any acquisition, merger, consolidation, sale, or other disposition of assets described in this subsection, as authorized by section 9701 of Title 31, or otherwise.

(9), (10) Repealed. Pub.L. 111-203, Title IX, § 991(b)(3), July 21, 2010, 124 Stat. 1953

**(11)** Redesignated (8)

(h) Proxy solicitations and tender offers in connection with limited partnership rollup transactions

(1) Proxy rules to contain special provisions

It shall be unlawful for any person to solicit any proxy, consent, or authorization concerning a limited partnership rollup transaction, or to make any tender offer in furtherance of a limited partnership rollup transaction, unless such transaction is conducted in accordance with rules prescribed by the Commission under subsections (a) and (d) of this section as required by this subsection. Such rules shall--

**(A)** permit any holder of a security that is the subject of the proposed limited partnership rollup transaction to engage in preliminary communications for the purpose of determining whether to solicit proxies, consents, or authorizations in opposition to the proposed limited partnership rollup transaction, without regard to whether any such communication would otherwise be considered a solicitation of proxies, and without being required to file soliciting material with the Commission prior to making that determination, except that--

**(i)** nothing in this subparagraph shall be construed to limit the application of any provision of this chapter prohibiting, or reasonably designed to prevent, fraudulent, deceptive, or manipulative acts or practices under this chapter; and

**(ii)** any holder of not less than 5 percent of the outstanding securities that are the subject of the proposed limited partnership rollup transaction who engages in the business of buying and selling limited partnership interests in the secondary market shall be required to disclose such ownership interests and any potential conflicts of interests in such preliminary communications;

**(B)** require the issuer to provide to holders of the securities that are the subject of the limited partnership rollup transaction such list of the holders of the issuer's securities as the Commission may determine in such form and subject to such terms and conditions as the Commission may specify;

**(C)** prohibit compensating any person soliciting proxies, consents, or authorizations directly from security holders concerning such a limited partnership rollup transaction--

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(i)** on the basis of whether the solicited proxy, consent, or authorization either approves or disapproves the proposed limited partnership rollup transaction; or

**(ii)** contingent on the approval, disapproval, or completion of the limited partnership rollup transaction;

**(D)** set forth disclosure requirements for soliciting material distributed in connection with a limited partnership rollup transaction, including requirements for clear, concise, and comprehensible disclosure with respect to--

**(i)** any changes in the business plan, voting rights, form of ownership interest, or the compensation of the general partner in the proposed limited partnership rollup transaction from each of the original limited partnerships;

**(ii)** the conflicts of interest, if any, of the general partner;

**(iii)** whether it is expected that there will be a significant difference between the exchange values of the limited partnerships and the trading price of the securities to be issued in the limited partnership rollup transaction;

**(iv)** the valuation of the limited partnerships and the method used to determine the value of the interests of the limited partners to be exchanged for the securities in the limited partnership rollup transaction;

**(v)** the differing risks and effects of the limited partnership rollup transaction for investors in different limited partnerships proposed to be included, and the risks and effects of completing the limited partnership rollup transaction with less than all limited partnerships;

**(vi)** the statement by the general partner required under subparagraph (E);

**(vii)** such other matters deemed necessary or appropriate by the Commission;

**(E)** require a statement by the general partner as to whether the proposed limited partnership rollup transaction is fair or unfair to investors in each limited partnership, a discussion of the basis for that conclusion, and an evaluation and a description by the general partner of alternatives to the limited partnership rollup transaction, such as liquidation;

**(F)** provide that, if the general partner or sponsor has obtained any opinion (other than an opinion of counsel), appraisal, or report that is prepared by an outside party and that is materially related to the limited partnership rollup transaction, such soliciting materials shall contain or be accompanied by clear, concise, and comprehensible disclosure with respect to--

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(i)** the analysis of the transaction, scope of review, preparation of the opinion, and basis for and methods of arriving at conclusions, and any representations and undertakings with respect thereto;

**(ii)** the identity and qualifications of the person who prepared the opinion, the method of selection of such person, and any material past, existing, or contemplated relationships between the person or any of its affiliates and the general partner, sponsor, successor, or any other affiliate;

**(iii)** any compensation of the preparer of such opinion, appraisal, or report that is contingent on the transaction's approval or completion; and

**(iv)** any limitations imposed by the issuer on the access afforded to such preparer to the issuer's personnel, premises, and relevant books and records;

**(G)** provide that, if the general partner or sponsor has obtained any opinion, appraisal, or report as described in subparagraph (F) from any person whose compensation is contingent on the transaction's approval or completion or who has not been given access by the issuer to its personnel and premises and relevant books and records, the general partner or sponsor shall state the reasons therefor;

**(H)** provide that, if the general partner or sponsor has not obtained any opinion on the fairness of the proposed limited partnership rollup transaction to investors in each of the affected partnerships, such soliciting materials shall contain or be accompanied by a statement of such partner's or sponsor's reasons for concluding that such an opinion is not necessary in order to permit the limited partners to make an informed decision on the proposed transaction;

**(I)** require that the soliciting material include a clear, concise, and comprehensible summary of the limited partnership rollup transaction (including a summary of the matters referred to in clauses (i) through (vii) of subparagraph (D) and a summary of the matter referred to in subparagraphs (F), (G), and (H)), with the risks of the limited partnership rollup transaction set forth prominently in the fore part thereof;

**(J)** provide that any solicitation or offering period with respect to any proxy solicitation, tender offer, or information statement in a limited partnership rollup transaction shall be for not less than the lesser of 60 calendar days or the maximum number of days permitted under applicable State law; and

**(K)** contain such other provisions as the Commission determines to be necessary or appropriate for the protection of investors in limited partnership rollup transactions.

(2) Exemptions

The Commission may, consistent with the public interest, the protection of investors, and the purposes of this chapter, exempt by rule or order any security or class of securities, any transaction or class of transactions, or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

any person or class of persons, in whole or in part, conditionally or unconditionally, from the requirements imposed pursuant to paragraph (1) or from the definition contained in paragraph (4).

(3) Effect on Commission authority

Nothing in this subsection limits the authority of the Commission under subsection (a) or (d) of this section or any other provision of this chapter or precludes the Commission from imposing, under subsection (a) or (d) of this section or any other provision of this chapter, a remedy or procedure required to be imposed under this subsection.

(4) "Limited partnership rollup transaction" defined

Except as provided in paragraph (5), as used in this subsection, the term "limited partnership rollup transaction" means a transaction involving the combination or reorganization of one or more limited partnerships, directly or indirectly, in which--

   (A) some or all of the investors in any of such limited partnerships will receive new securities, or securities in another entity, that will be reported under a transaction reporting plan declared effective before December 17, 1993, by the Commission under section 78k-1 of this title;

   (B) any of the investors' limited partnership securities are not, as of the date of filing, reported under a transaction reporting plan declared effective before December 17, 1993, by the Commission under section 78k-1 of this title;

   (C) investors in any of the limited partnerships involved in the transaction are subject to a significant adverse change with respect to voting rights, the term of existence of the entity, management compensation, or investment objectives; and

   (D) any of such investors are not provided an option to receive or retain a security under substantially the same terms and conditions as the original issue.

(5) Exclusions from definition

Notwithstanding paragraph (4), the term "limited partnership rollup transaction" does not include--

   (A) a transaction that involves only a limited partnership or partnerships having an operating policy or practice of retaining cash available for distribution and reinvesting proceeds from the sale, financing, or refinancing of assets in accordance with such criteria as the Commission determines appropriate;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(B)** a transaction involving only limited partnerships wherein the interests of the limited partners are repurchased, recalled, or exchanged in accordance with the terms of the preexisting limited partnership agreements for securities in an operating company specifically identified at the time of the formation of the original limited partnership;

**(C)** a transaction in which the securities to be issued or exchanged are not required to be and are not registered under the Securities Act of 1933 [15 U.S.C.A. § 77a et seq.];

**(D)** a transaction that involves only issuers that are not required to register or report under section 78*l* of this title, both before and after the transaction;

**(E)** a transaction, except as the Commission may otherwise provide by rule for the protection of investors, involving the combination or reorganization of one or more limited partnerships in which a non-affiliated party succeeds to the interests of a general partner or sponsor, if--

    **(i)** such action is approved by not less than 66   2/3 percent of the outstanding units of each of the participating limited partnerships; and

    **(ii)** as a result of the transaction, the existing general partners will receive only compensation to which they are entitled as expressly provided for in the preexisting limited partnership agreements; or

**(F)** a transaction, except as the Commission may otherwise provide by rule for the protection of investors, in which the securities offered to investors are securities of another entity that are reported under a transaction reporting plan declared effective before December 17, 1993, by the Commission under section 78k-1 of this title, if--

    **(i)** such other entity was formed, and such class of securities was reported and regularly traded, not less than 12 months before the date on which soliciting material is mailed to investors; and

    **(ii)** the securities of that entity issued to investors in the transaction do not exceed 20 percent of the total outstanding securities of the entity, exclusive of any securities of such class held by or for the account of the entity or a subsidiary of the entity.

(i) Disclosure of pay versus performance

The Commission shall, by rule, require each issuer to disclose in any proxy or consent solicitation material for an annual meeting of the shareholders of the issuer a clear description of any compensation required to be disclosed by the issuer under section 229.402 of title 17, Code of Federal Regulations (or any successor thereto), including, for any issuer other than an emerging growth company, information that shows the relationship between executive compensation actually paid and the financial performance of the issuer, taking into account

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

any change in the value of the shares of stock and dividends of the issuer and any distributions. The disclosure under this subsection may include a graphic representation of the information required to be disclosed.

(j) Disclosure of hedging by employees and directors

The Commission shall, by rule, require each issuer to disclose in any proxy or consent solicitation material for an annual meeting of the shareholders of the issuer whether any employee or member of the board of directors of the issuer, or any designee of such employee or member, is permitted to purchase financial instruments (including prepaid variable forward contracts, equity swaps, collars, and exchange funds) that are designed to hedge or offset any decrease in the market value of equity securities--

**(1)** granted to the employee or member of the board of directors by the issuer as part of the compensation of the employee or member of the board of directors; or

**(2)** held, directly or indirectly, by the employee or member of the board of directors.

CREDIT(S)

(June 6, 1934, c. 404, Title I, § 14, 48 Stat. 895; Aug. 20, 1964, Pub.L. 88-467, § 5, 78 Stat. 569, 570; July 29, 1968, Pub.L. 90-439, § 3, 82 Stat. 455; Dec. 22, 1970, Pub.L. 91-567, §§ 3 to 5, 84 Stat. 1497; June 6, 1983, Pub.L. 98-38, § 2(b), 97 Stat. 205; Dec. 28, 1985, Pub.L. 99-222, § 2, 99 Stat. 1737; Nov. 15, 1990, Pub.L. 101-550, Title III, § 302, 104 Stat. 2721; Dec. 17, 1993, Pub.L. 103-202, Title III, § 302(a), 107 Stat. 2359; Nov. 3, 1998, Pub.L. 105-353, Title III, § 301(b)(7), 112 Stat. 3236; Jan. 16, 2002, Pub.L. 107-123, § 6, 115 Stat. 2396; July 21, 2010, Pub.L. 111-203, Title IX, §§ 953(a), 955, 971(a), 991(b)(3), 124 Stat. 1903, 1904, 1915, 1953; Pub.L. 112-106, Title I, § 102(a)(2), Apr. 5, 2012, 126 Stat. 309.)

2002 Acts. Amendments to this section by Pub.L. 107-123, effective Oct. 1, 2001, except that authorities provided by subsec. (g)(9) of this section and 15 U.S.C.A. § 77f(b)(9), 15 U.S.C.A. § 78m(e)(9), and 15 U.S.C.A. § 78ee(k) applicable October 1, 2002, see section 11 of Pub.L. 107-123, set out as a note under 15 U.S.C.A. § 78ee.

Current through P.L. 113-234 approved 12-16-2014

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

c

**Effective: July 22, 2010**

United States Code Annotated Currentness
   Title 15. Commerce and Trade
      Chapter 2B. Securities Exchanges (Refs & Annos)
      ➡➡ **§ 78aa. Jurisdiction of offenses and suits**

(a) In general

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this chapter in a United States district court for any judicial district, a subpoena issued to compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing or trial may be served at any place within the United States. Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure shall not apply to a subpoena issued under the preceding sentence. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

(b) Extraterritorial jurisdiction

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter involving--

   **(1)** conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or

   **(2)** conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**CREDIT(S)**

(June 6, 1934, c. 404, Title I, § 27, 48 Stat. 902; June 25, 1936, c. 804, 49 Stat. 1921; June 25, 1948, c. 646, § 32(b), 62 Stat. 991; May 24, 1949, c. 139, § 127, 63 Stat. 107; Dec. 4, 1987, Pub.L. 100-181, Title III, § 326, 101 Stat. 1259; July 21, 2010, Pub.L. 111-203, Title IX, §§ 929E(b), 929P(b)(2), 124 Stat. 1853, 1865.)

Current through P.L. 113-209 approved 12-16-2014

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

Westlaw.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)
      → → **§ 1291. Final decisions of district courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.


CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

Current through P.L. 113-209 approved 12-16-2014

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

c

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)
    →→ **§ 1292. Interlocutory decisions**

**(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

  **(1)** Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

  **(2)** Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

  **(3)** Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

**(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**(c)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--

  **(1)** of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

  **(2)** of an appeal from a judgment in a civil action for patent infringement which would otherwise be appeal-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

able to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

**(d)(1)** When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(2)** When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(3)** Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

**(4)(A)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

**(B)** When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

**(e)** The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

CREDIT(S)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 49, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Sept. 2, 1958, Pub.L. 85-919, 72 Stat. 1770; Apr. 2, 1982, Pub.L. 97-164, Title I, § 125, 96 Stat. 36; Nov. 8, 1984, Pub.L. 98-620, Title IV, § 412, 98 Stat. 3362; Nov. 19, 1988, Pub.L. 100-702, Title V, § 501, 102 Stat. 4652; Oct. 29, 1992, Pub.L. 102-572, Title I, § 101, Title IX, §§ 902(b), 906(c), 106 Stat. 4506, 4516, 4518.)

Current through P.L. 113-209 approved 12-16-2014

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part IV. Jurisdiction and Venue (Refs & Annos)
         Chapter 85. District Courts; Jurisdiction (Refs & Annos)
         ➡➡ **§ 1331. Federal question**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 930; July 25, 1958, Pub.L. 85-554, § 1, 72 Stat. 415; Oct. 21, 1976, Pub.L. 94-574, § 2, 90 Stat. 2721; Dec. 1, 1980, Pub.L. 96-486, § 2(a), 94 Stat. 2369.)

Current through P.L. 113-209 approved 12-16-2014

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

C

**Effective: November 21, 2011**

Code of Federal Regulations Currentness
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 202. Informal and Other Procedures (Refs & Annos)
      → **§ 202.1 General.**

(a) The statutes administered by the Commission provide generally (1) for the filing with it of certain statements, such as registration statements, periodic and ownership reports, and proxy solicitation material, and for the filing of certain plans of reorganization, applications and declarations seeking Commission approvals; (2) for Commission determination through formal procedures of matters initiated by private parties or by the Commission; (3) for the investigation and examination of persons and records where necessary to carry out the purposes of the statutes and for enforcement of statutory provisions; and (4) for the adoption of rules and regulations where necessary to effectuate the purposes of the statutes.

(b) In addition to the Commission's rules of practice set forth in part 201 of this chapter, the Commission has promulgated rules and regulations pursuant to the several statutes it administers (parts 230, 240, 260, 270 and 275 of this chapter). These parts contain substantive provisions and include as well numerous provisions detailing the procedure for meeting specific standards embodied in the statutes. The Commission's rules and regulations under each of the statutes are available in pamphlet form upon request to the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402.

(c) The statutes and the published rules, regulations and forms thereunder prescribe the course and method of formal procedures to be followed in Commission proceedings. These are supplemented where feasible by certain informal procedures designed to aid the public and facilitate the execution of the Commission's functions. There follows a brief description of procedures generally followed by the Commission which have not been formalized in rules.

(d) The informal procedures of the Commission are largely concerned with the rendering of advice and assistance by the Commission's staff to members of the public dealing with the Commission. While opinions expressed by members of the staff do not constitute an official expression of the Commission's views, they represent the views of persons who are continuously working with the provisions of the statute involved. And any statement by the director, associate director, assistant director, chief accountant, chief counsel, or chief financial analyst of a division can be relied upon as representing the views of that division. In certain instances an informal statement of the views of the Commission may be obtained. The staff, upon request or on its own motion, will generally present questions to the Commission which involve matters of substantial importance and where the issues are novel or highly complex, although the granting of a request for an informal statement by the Commission is entirely within its discretion.

[76 FR 71875, Nov. 21, 2011]

SOURCE: 25 FR 6736, July 15, 1960; 54 FR 24332, June 7, 1989; 57 FR 18216, April 29, 1992; 58 FR 14659, March 18, 1993; 62 FR 16079, April 4, 1997; 71 FR 42001, July 24, 2006; 73 FR 32227, June 5, 2008; 75 FR 47449, Aug. 6, 2010; 76 FR 71875, Nov. 21, 2011, unless otherwise noted.

AUTHORITY: 15 U.S.C. 77s, 77t, 77sss, 77uuu, 78d–1, 78u, 78w, 78ll(d), 80a–37, 80a–41, 80b–9, 80b–11, 7201 et seq., unless otherwise noted.; Section 202.9 is also issued under sec. 223, 110 Stat. 859 (Mar. 29, 1996).

17 C. F. R. § 202.1, 17 CFR § 202.1

Current through Jan. 1, 2015; 79 FR 79066.

© 2015 Thomson Reuters.
END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: April 1, 2008**

Code of Federal Regulations Currentness
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 240. General Rules and Regulations, Securities Exchange Act of 1934 (Refs & Annos)
        Subpart A. Rules and Regulations Under the Securities Exchange Act of 1934
          Regulation 14A: Solicitation of Proxies (Refs & Annos)
            ➤ **§ 240.14a–3 Information to be furnished to security holders.**

(a) No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with:

(1) A publicly-filed preliminary or definitive proxy statement, in the form and manner described in § 240.14a–16, containing the information specified in Schedule 14A ( § 240.14a–101);

(2) A preliminary or definitive written proxy statement included in a registration statement filed under the Securities Act of 1933 on Form S–4 or F–4 ( § 239.25 or § 239.34 of this chapter) or Form N–14 ( § 239.23 of this chapter) and containing the information specified in such Form; or

(3) A publicly-filed preliminary or definitive proxy statement, not in the form and manner described in § 240.14a–16, containing the information specified in Schedule 14A ( § 240.14a–101), if:

(i) The solicitation relates to a business combination transaction as defined in § 230.165 of this chapter, as well as transactions for cash consideration requiring disclosure under Item 14 of § 240.14a–101.

(ii) The solicitation may not follow the form and manner described in § 240.14a–16 pursuant to the laws of the state of incorporation of the registrant;

(b) If the solicitation is made on behalf of the registrant, other than an investment company registered under the Investment Company Act of 1940, and relates to an annual (or special meeting in lieu of the annual) meeting of security holders, or written consent in lieu of such meeting, at which directors are to be elected, each proxy statement furnished pursuant to paragraph (a) of this section shall be accompanied or preceded by an annual report to security holders as follows:

(1) The report shall include, for the registrant and its subsidiaries, consolidated and audited balance sheets as of the end of the two most recent fiscal years and audited statements of income and cash flows for each of the three most recent fiscal years prepared in accordance with Regulation S–X (part 210 of this chapter), except that the provisions of Article 3 (other than §§ 210.3–03(e), 210.3–04 and 210.3–20) and Article 11 shall not apply. Any financial statement schedules or exhibits or separate financial statements which may otherwise be required in filings with the Commission may be omitted. If the financial statements of the registrant and its subsidiaries consolidated in the annual report filed or to be filed with the Commission are not required to be audited, the financial statements required by this paragraph may be unaudited. A smaller reporting company may provide the information in Article 8 of Regulation S–X (§

210.8 of this chapter) in lieu of the financial information required by this paragraph 9(b)(1).

Note 1 to paragraph (b)(1): If the financial statements for a period prior to the most recently completed fiscal year have been examined by a predecessor accountant, the separate report of the predecessor accountant may be omitted in the report to security holders, provided the registrant has obtained from the predecessor accountant a reissued report covering the prior period presented and the successor accountant clearly indicates in the scope paragraph of his or her report (a) that the financial statements of the prior period were examined by other accountants, (b) the date of their report, (c) the type of opinion expressed by the predecessor accountant and (d) the substantive reasons therefore, if it was other than unqualified. It should be noted, however, that the separate report of any predecessor accountant is required in filings with the Commission. If, for instance, the financial statements in the annual report to security holders are incorporated by reference in a Form 10–K, the separate report of a predecessor accountant shall be filed in Part II or in Part IV as a financial statement schedule.

Note 2 to paragraph (b)(1): For purposes of complying with § 240.14a–3, if the registrant has changed its fiscal closing date, financial statements covering two years and one period of 9 to 12 months shall be deemed to satisfy the requirements for statements of income and cash flows for the three most recent fiscal years.

(2)(i) Financial statements and notes thereto shall be presented in roman type at least as large and as legible as 10–point modern type. If necessary for convenient presentation, the financial statements may be in roman type as large and as legible as 8–point modern type. All type shall be leaded at least 2 points.

(ii) Where the annual report to security holders is delivered through an electronic medium, issuers may satisfy legibility requirements applicable to printed documents, such as type size and font, by presenting all required information in a format readily communicated to investors.

(3) The report shall contain the supplementary financial information required by item 302 of Regulation S–K (§ 229.302 of this chapter).

(4) The report shall contain information concerning changes in and disagreements with accountants on accounting and financial disclosure required by Item 304 of Regulation S–K (§ 229.304 of this chapter).

(5)(i) The report shall contain the selected financial data required by Item 301 of Regulation S–K (§ 229.301 of this chapter).

(ii) The report shall contain management's discussion and analysis of financial condition and results of operations required by Item 303 of Regulation S–K (§ 229.303 of this chapter).

(iii) The report shall contain the quantitative and qualitative disclosures about market risk required by Item 305 of Regulation S–K (§ 229.305 of this chapter).

(6) The report shall contain a brief description of the business done by the registrant and its subsidiaries during the most recent fiscal year which will, in the opinion of management, indicate the general nature and scope of the business of the registrant and its subsidiaries.

(7) The report shall contain information relating to the registrant's industry segments, classes of similar products or services, foreign

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

and domestic operations and exports sales required by paragraphs (b), (c)(1)(i) and (d) of Item 101 of Regulation S–K (§ 229.101 of this chapter).

(8) The report shall identify each of the registrant's directors and executive officers, and shall indicate the principal occupation or employment of each such person and the name and principal business of any organization by which such person is employed.

(9) The report shall contain the market price of and dividends on the registrant's common equity and related security holder matters required by Items 201(a), (b) and (c) of Regulation S–K (§ 229.201(a), (b) and (c) of this chapter). If the report precedes or accompanies a proxy statement or information statement relating to an annual meeting of security holders at which directors are to be elected (or special meeting or written consents in lieu of such meeting), furnish the performance graph required by Item 201(e) (§ 229.201(e) of this chapter).

(10) The registrant's proxy statement, or the report, shall contain an undertaking in bold face or otherwise reasonably prominent type to provide without charge to each person solicited upon the written request of any such person, a copy of the registrant's annual report on Form 10–K, including the financial statements and the financial statement schedules, required to be filed with the Commission pursuant to Rule 13a–1 (§ 240.13a–1 of this chapter) under the Act for the registrant's most recent fiscal year, and shall indicate the name and address (including title or department) of the person to whom such a written request is to be directed. In the discretion of management, a registrant need not undertake to furnish without charge copies of all exhibits to its Form 10–K,

provided that the copy of the annual report on Form 10–K furnished without charge to requesting security holders is accompanied by a list briefly describing all the exhibits not contained therein and indicating that the registrant will furnish any exhibit upon the payment of a specified reasonable fee, which fee shall be limited to the registrant's reasonable expenses in furnishing such exhibit. If the registrant's annual report to security holders complies with all of the disclosure requirements of Form 10–K and is filed with the Commission in satisfaction of its Form 10–K filing requirements, such registrant need not furnish a separate Form 10–K to security holders who receive a copy of such annual report.

Note to paragraph (b)(10): Pursuant to the undertaking required by paragraph (b)(10) of this section, a registrant shall furnish a copy of its annual report on Form 10–K (§ 249.310 of this chapter) to a beneficial owner of its securities upon receipt of a written request from such person. Each request must set forth a good faith representation that, as of the record date for the solicitation requiring the furnishing of the annual report to security holders pursuant to paragraph (b) of this section, the person making the request was a beneficial owner of securities entitled to vote.

(11) Subject to the foregoing requirements, the report may be in any form deemed suitable by management and the information required by paragraphs (b)(5) to (10) of this section may be presented in an appendix or other separate section of the report, provided that the attention of security holders is called to such presentation.

Note: Registrants are encouraged to utilize tables, schedules, charts and graphic illustrations of present financial information in an understandable manner. Any presentation of financial information must be consistent with the data in the financial

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

statements contained in the report and, if appropriate, should refer to relevant portions of the financial statements and notes thereto.

(12) [Reserved]

(13) Paragraph (b) of this section shall not apply, however, to solicitations made on behalf of the registrant before the financial statements are available if a solicitation is being made at the same time in opposition to the registrant and if the registrant's proxy statement includes an undertaking in bold face type to furnish such annual report to security holders to all persons being solicited at least 20 calendar days before the date of the meeting or, if the solicitation refers to a written consent or authorization in lieu of a meeting, at least 20 calendar days prior to the earliest date on which it may be used to effect corporate action.

(c) Seven copies of the report sent to security holders pursuant to this rule shall be mailed to the Commission, solely for its information, not later than the date on which such report is first sent or given to security holders or the date on which preliminary copies, or definitive copies, if preliminary filing was not required, of solicitation material are filed with the Commission pursuant to Rule 14a–6, whichever date is later. The report is not deemed to be "soliciting material" or to be "filed" with the Commission or subject to this regulation otherwise than as provided in this Rule, or to the liabilities of section 18 of the Act, except to the extent that the registrant specifically requests that it be treated as a part of the proxy soliciting material or incorporates it in the proxy statement or other filed report by reference.

(d) An annual report to security holders prepared on an integrated basis pursuant to General Instruction H to Form 10–K (§ 249.310 of this chapter) may also be submitted in satisfaction of this section.

When filed as the annual report on Form 10–K, responses to the Items of that form are subject to section 18 of the Act notwithstanding paragraph (c) of this section.

(e)(1)(i) A registrant will be considered to have delivered an annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as described in § 240.14a–16, to all security holders of record who share an address if:

(A) The registrant delivers one annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as applicable, to the shared address;

(B) The registrant addresses the annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as applicable, to the security holders as a group (for example, "ABC Fund [or Corporation] Security Holders," "Jane Doe and Household," "The Smith Family"), to each of the security holders individually (for example, "John Doe and Richard Jones") or to the security holders in a form to which each of the security holders has consented in writing;

Note to paragraph (e)(1)(i)(B): Unless the registrant addresses the annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials to the security holders as a group or to each of the security holders individually, it must obtain, from each security holder to be included in the household group, a separate affirmative written consent to the specific form of address the registrant will use.

(C) The security holders consent, in ac-

cordance with paragraph (e)(1)(ii) of this section, to delivery of one annual report to security holders or proxy statement, as applicable;

(D) With respect to delivery of the proxy statement or Notice of Internet Availability of Proxy Materials, the registrant delivers, together with or subsequent to delivery of the proxy statement, a separate proxy card for each security holder at the shared address; and

(E) The registrant includes an undertaking in the proxy statement to deliver promptly upon written or oral request a separate copy of the annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as applicable, to a security holder at a shared address to which a single copy of the document was delivered.

(ii) Consent—

(A) Affirmative written consent. Each security holder must affirmatively consent, in writing, to delivery of one annual report to security holders or proxy statement, as applicable. A security holder's affirmative written consent will be considered valid only if the security holder has been informed of:

(1) The duration of the consent;

(2) The specific types of documents to which the consent will apply;

(3) The procedures the security holder must follow to revoke consent; and

(4) The registrant's obligation to begin sending individual copies to a security holder within thirty days after the security holder revokes consent.

(B) Implied consent. The registrant need not obtain affirmative written consent from a security holder for purposes of paragraph (e)(1)(ii)(A) of this section if all of the following conditions are met:

(1) The security holder has the same last name as the other security holders at the shared address or the registrant reasonably believes that the security holders are members of the same family;

(2) The registrant has sent the security holder a notice at least 60 days before the registrant begins to rely on this section concerning delivery of annual reports to security holders, proxy statements or Notices of Internet Availability of Proxy Materials to that security holder. The notice must:

(i) Be a separate written document;

(ii) State that only one annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as applicable, will be delivered to the shared address unless the registrant receives contrary instructions;

(iii) Include a toll-free telephone number, or be accompanied by a reply form that is pre-addressed with postage provided, that the security holder can use to notify the registrant that the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

security holder wishes to receive a separate annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials;

(iv) State the duration of the consent;

(v) Explain how a security holder can revoke consent;

(vi) State that the registrant will begin sending individual copies to a security holder within thirty days after the security holder revokes consent; and

(vii) Contain the following prominent statement, or similar clear and understandable statement, in bold-face type: "Important Notice Regarding Delivery of Security Holder Documents." This statement also must appear on the envelope in which the notice is delivered. Alternatively, if the notice is delivered separately from other communications to security holders, this statement may appear either on the notice or on the envelope in which the notice is delivered.

Note to paragraph (e)(1)(ii)(B)(2): The notice should be written in plain English. See § 230.421(d)(2) of this chapter for a discussion of plain English principles.

(3) The registrant has not received the reply form or other notification indicating that the security holder wishes to continue to receive an individual copy of the annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials, as applicable, within 60 days after the re-

gistrant sent the notice required by paragraph (e)(1)(ii)(B)(2) of this section; and

(4) The registrant delivers the document to a post office box or residential street address.

Note to paragraph (e)(1)(ii)(B)(4): The registrant can assume that a street address is residential unless the registrant has information that indicates the street address is a business.

(iii) Revocation of consent. If a security holder, orally or in writing, revokes consent to delivery of one annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials to a shared address, the registrant must begin sending individual copies to that security holder within 30 days after the registrant receives revocation of the security holder's consent.

(iv) Definition of address. Unless otherwise indicated, for purposes of this section, address means a street address, a post office box number, an electronic mail address, a facsimile telephone number or other similar destination to which paper or electronic documents are delivered, unless otherwise provided in this section. If the registrant has reason to believe that the address is a street address of a multi-unit building, the address must include the unit number.

Note to paragraph (e)(1): A person other than the registrant making a proxy solicitation may deliver a single proxy statement to security holders of record or beneficial owners who have separate accounts and share an address if: (a) the registrant or intermediary has followed the procedures in this section; and (b) the registrant or intermediary makes avail-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

able the shared address information to the person in accordance with § 240.14a–7(a)(2)(i) and (ii).

(2) Notwithstanding paragraphs (a) and (b) of this section, unless state law requires otherwise, a registrant is not required to send an annual report to security holders, proxy statement or Notice of Internet Availability of Proxy Materials to a security holder if:

(i) An annual report to security holders and a proxy statement, or a Notice of Internet Availability of Proxy Materials, for two consecutive annual meetings; or

(ii) All, and at least two, payments (if sent by first class mail) of dividends or interest on securities, or dividend reinvestment confirmations, during a twelve month period, have been mailed to such security holder's address and have been returned as undeliverable. If any such security holder delivers or causes to be delivered to the registrant written notice setting forth his then current address for security holder communications purposes, the registrant's obligation to deliver an annual report to security holders, a proxy statement or a Notice of Internet Availability of Proxy Materials under this section is reinstated.

(f) The provisions of paragraph (a) of this section shall not apply to a communication made by means of speeches in public forums, press releases, published or broadcast opinions, statements, or advertisements appearing in a broadcast media, newspaper, magazine or other bona fide publication disseminated on a regular basis, provided that:

(1) No form of proxy, consent or authorization or means to execute the same is provided to a security holder in connection with the communication; and

(2) At the time the communication is made, a definitive proxy statement is on file with the Commission pursuant to § 240.14a–6(b).

[39 FR 40768, Nov. 20, 1974, as amended at 42 FR 26064, May 12, 1977; 42 FR 35955, July 13, 1977; 42 FR 65566, Dec. 30, 1977; 44 FR 68456, Nov. 29, 1979; 44 FR 72583, Dec. 14, 1979; 45 FR 63645, 63659, 63681 and 63692, Sept. 25, 1980; 46 FR 54338, Nov. 2, 1981; 47 FR 11467, March 16, 1982; 47 FR 57915, Dec. 19, 1982; 48 FR 11113, March 16, 1983; 48 FR 35086, Aug. 3, 1983; 50 FR 19009, May 6, 1985; 50 FR 42678, Oct. 22, 1985; 50 FR 48383, Nov. 25, 1985; 51 FR 42059, Nov. 20, 1986; 51 FR 44275, Dec. 9, 1986; 51 FR 45576, Dec. 19, 1986; 52 FR 48982, Dec. 29, 1987; 54 FR 10318, March 13, 1989; 57 FR 36495, Aug. 13, 1992; 57 FR 45294, Oct. 1, 1992; 57 FR 48291, Oct. 22, 1992; 58 FR 14683, March 18, 1993; 58 FR 26519, May 4, 1993; 59 FR 52696, Oct. 19, 1994; 61 FR 24656, May 15, 1996; 62 FR 6071, Feb. 10, 1997; 64 FR 62546, Nov. 16, 1999; 65 FR 65750, Nov. 2, 2000; 67 FR 247, Jan. 2, 2002; 71 FR 53261, Sept. 8, 2006; 72 FR 4166, Jan. 29, 2007; 72 FR 42237, Aug. 1, 2007; 73 FR 976, Jan. 4, 2008; 73 FR 17814, April 1, 2008]

SOURCE: 50 FR 27946, July 9, 1985; 50 FR 28394, July 12, 1985; 50 FR 37654, Sept. 17, 1985; 50 FR 41870, Oct. 16, 1985; 50 FR 42678, Oct. 22, 1985; 51 FR 8801, March 14, 1986; 51 FR 12127, April 9, 1986; 51 FR 14982, April 22, 1986; 51 FR 18580, May 21, 1986; 51 FR 25882, July 17, 1986; 51 FR 36551, Oct. 14, 1986; 51 FR 44275, Dec. 9, 1986; 52 FR 3000, Jan. 30, 1987; 52 FR 8877, March 20, 1987; 52 FR 9154, March 23, 1987; 52 FR 16838, May 6, 1987; 52 FR 27969, July 24, 1987; 52 FR 42279, Nov. 4, 1987; 53 FR 26394, July 12, 1988; 53 FR 33459, Aug. 31, 1988; 53 FR 37289, Sept. 26, 1988; 54 FR 23976, June 5, 1989; 54 FR 28813, July 10, 1989; 54 FR 30031, July 18, 1989; 54 FR 35481, Aug. 28, 1989; 54 FR 37789, Sept. 13, 1989; 55 FR 23929, June 13, 1990; 55 FR 50320, Dec. 6, 1990; 56 FR 7265, Feb. 21, 1991; 56

**C**

**Effective: September 20, 2011**

Code of Federal Regulations Currentness
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 240. General Rules and Regulations, Securities Exchange Act of 1934 (Refs & Annos)
        Subpart A. Rules and Regulations Under the Securities Exchange Act of 1934
          Regulation 14A: Solicitation of Proxies (Refs & Annos)
           ➤ **§ 240.14a–8 Shareholder proposals.**

This section addresses when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders. In summary, in order to have your shareholder proposal included on a company's proxy card, and included along with any supporting statement in its proxy statement, you must be eligible and follow certain procedures. Under a few specific circumstances, the company is permitted to exclude your proposal, but only after submitting its reasons to the Commission. We structured this section in a question-and-answer format so that it is easier to understand. The references to "you" are to a shareholder seeking to submit the proposal.

(a) Question 1: What is a proposal? A shareholder proposal is your recommendation or requirement that the company and/or its board of directors take action, which you intend to present at a meeting of the company's shareholders. Your proposal should state as clearly as possible the course of action that you believe the company should follow. If your proposal is placed on the company's proxy card, the company must also provide in the form of proxy

means for shareholders to specify by boxes a choice between approval or disapproval, or abstention. Unless otherwise indicated, the word "proposal" as used in this section refers both to your proposal, and to your corresponding statement in support of your proposal (if any).

(b) Question 2: Who is eligible to submit a proposal, and how do I demonstrate to the company that I am eligible?

(1) In order to be eligible to submit a proposal, you must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date you submit the proposal. You must continue to hold those securities through the date of the meeting.

(2) If you are the registered holder of your securities, which means that your name appears in the company's records as a shareholder, the company can verify your eligibility on its own, although you will still have to provide the company with a written statement that you intend to continue to hold the securities through the date of the meeting of shareholders. However, if like many shareholders you are not a registered holder, the company likely does not know that you are a shareholder, or how many shares you own. In this case, at the time you submit your proposal, you must prove your eligibility to the company in one of two ways:

(i) The first way is to submit to the company a written statement from the "record" holder of your securities (usually a broker or bank) verifying that, at the time you submitted your proposal, you continuously held the securities for at least one year. You must also include your

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

own written statement that you intend to continue to hold the securities through the date of the meeting of shareholders; or

(ii) The second way to prove ownership applies only if you have filed a Schedule 13D ( § 240.13d–101), Schedule 13G (§ 240.13d–102), Form 3 (§ 249.103 of this chapter), Form 4 (§ 249.104 of this chapter) and/or Form 5 ( § 249.105 of this chapter), or amendments to those documents or updated forms, reflecting your ownership of the shares as of or before the date on which the one-year eligibility period begins. If you have filed one of these documents with the SEC, you may demonstrate your eligibility by submitting to the company:

(A) A copy of the schedule and/or form, and any subsequent amendments reporting a change in your ownership level;

(B) Your written statement that you continuously held the required number of shares for the one-year period as of the date of the statement; and

(C) Your written statement that you intend to continue ownership of the shares through the date of the company's annual or special meeting.

(c) Question 3: How many proposals may I submit? Each shareholder may submit no more than one proposal to a company for a particular shareholders' meeting.

(d) Question 4: How long can my proposal be? The proposal, including any accompanying supporting statement, may not exceed 500 words.

(e) Question 5: What is the deadline for submitting a proposal?

(1) If you are submitting your proposal for the company's annual meeting, you can in most cases find the deadline in last year's proxy statement. However, if the company did not hold an annual meeting last year, or has changed the date of its meeting for this year more than 30 days from last year's meeting, you can usually find the deadline in one of the company's quarterly reports on Form 10–Q (§ 249.308a of this chapter), or in shareholder reports of investment companies under § 270.30d–1 of this chapter of the Investment Company Act of 1940. In order to avoid controversy, shareholders should submit their proposals by means, including electronic means, that permit them to prove the date of delivery.

(2) The deadline is calculated in the following manner if the proposal is submitted for a regularly scheduled annual meeting. The proposal must be received at the company's principal executive offices not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting. However, if the company did not hold an annual meeting the previous year, or if the date of this year's annual meeting has been changed by more than 30 days from the date of the previous year's meeting, then the deadline is a reasonable time before the company begins to print and send its proxy materials.

(3) If you are submitting your proposal for a meeting of shareholders other than a regularly scheduled annual meeting, the deadline is a reasonable time before the company begins to print and send its proxy materials.

(f) Question 6: What if I fail to follow one of the eligibility or procedural requirements explained in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

answers to Questions 1 through 4 of this section?

(1) The company may exclude your proposal, but only after it has notified you of the problem, and you have failed adequately to correct it. Within 14 calendar days of receiving your proposal, the company must notify you in writing of any procedural or eligibility deficiencies, as well as of the time frame for your response. Your response must be postmarked, or transmitted electronically, no later than 14 days from the date you received the company's notification. A company need not provide you such notice of a deficiency if the deficiency cannot be remedied, such as if you fail to submit a proposal by the company's properly determined deadline. If the company intends to exclude the proposal, it will later have to make a submission under § 240.14a–8 and provide you with a copy under Question 10 below, § 240.14a–8(j).

(2) If you fail in your promise to hold the required number of securities through the date of the meeting of shareholders, then the company will be permitted to exclude all of your proposals from its proxy materials for any meeting held in the following two calendar years.

(g) Question 7: Who has the burden of persuading the Commission or its staff that my proposal can be excluded? Except as otherwise noted, the burden is on the company to demonstrate that it is entitled to exclude a proposal.

(h) Question 8: Must I appear personally at the shareholders' meeting to present the proposal?

(1) Either you, or your representative who is qualified under state law to present the proposal on your behalf, must attend the meeting to present the proposal. Whether you attend the meeting yourself or send a qualified represent-ative to the meeting in your place, you should make sure that you, or your representative, follow the proper state law procedures for attending the meeting and/or presenting your proposal.

(2) If the company holds its shareholder meeting in whole or in part via electronic media, and the company permits you or your representative to present your proposal via such media, then you may appear through electronic media rather than traveling to the meeting to appear in person.

(3) If you or your qualified representative fail to appear and present the proposal, without good cause, the company will be permitted to exclude all of your proposals from its proxy materials for any meetings held in the following two calendar years.

(i) Question 9: If I have complied with the procedural requirements, on what other bases may a company rely to exclude my proposal?

(1) Improper under state law: If the proposal is not a proper subject for action by shareholders under the laws of the jurisdiction of the company's organization;

Note to paragraph (i)(1): Depending on the subject matter, some proposals are not considered proper under state law if they would be binding on the company if approved by shareholders. In our experience, most proposals that are cast as recommendations or requests that the board of directors take specified action are proper under state law. Accordingly, we will assume that a proposal drafted as a recommendation or suggestion is proper unless the company demonstrates otherwise.

(2) Violation of law: If the proposal would, if

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

implemented, cause the company to violate any state, federal, or foreign law to which it is subject;

Note to paragraph (i)(2): We will not apply this basis for exclusion to permit exclusion of a proposal on grounds that it would violate foreign law if compliance with the foreign law would result in a violation of any state or federal law.

(3) Violation of proxy rules: If the proposal or supporting statement is contrary to any of the Commission's proxy rules, including § 240.14a–9, which prohibits materially false or misleading statements in proxy soliciting materials;

(4) Personal grievance; special interest: If the proposal relates to the redress of a personal claim or grievance against the company or any other person, or if it is designed to result in a benefit to you, or to further a personal interest, which is not shared by the other shareholders at large;

(5) Relevance: If the proposal relates to operations which account for less than 5 percent of the company's total assets at the end of its most recent fiscal year, and for less than 5 percent of its net earnings and gross sales for its most recent fiscal year, and is not otherwise significantly related to the company's business;

(6) Absence of power/authority: If the company would lack the power or authority to implement the proposal;

(7) Management functions: If the proposal deals with a matter relating to the company's ordinary business operations;

(8) Director elections: If the proposal:

(i) Would disqualify a nominee who is standing for election;

(ii) Would remove a director from office before his or her term expired;

(iii) Questions the competence, business judgment, or character of one or more nominees or directors;

(iv) Seeks to include a specific individual in the company's proxy materials for election to the board of directors; or

(v) Otherwise could affect the outcome of the upcoming election of directors.

(9) Conflicts with company's proposal: If the proposal directly conflicts with one of the company's own proposals to be submitted to shareholders at the same meeting;

Note to paragraph (i)(9): A company's submission to the Commission under this section should specify the points of conflict with the company's proposal.

(10) Substantially implemented: If the company has already substantially implemented the proposal;

Note to paragraph (i)(10): A company may exclude a shareholder proposal that would provide an advisory vote or seek future advisory votes to approve the compensation of executives as disclosed pursuant to Item 402 of Regulation S–K (§ 229.402 of this chapter) or any successor to Item 402 (a "say-on-pay vote") or that relates to the frequency

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

of say-on-pay votes, provided that in the most re-cent shareholder vote required by § 240.14a–21(b) of this chapter a single year (i.e., one, two, or three years) received approval of a majority of votes cast on the matter and the company has adopted a policy on the frequency of say-on-pay votes that is con-sistent with the choice of the majority of votes cast in the most recent shareholder vote required by § 240.14a–21(b) of this chapter.

(11) Duplication: If the proposal substantially duplicates another proposal previously submit-ted to the company by another proponent that will be included in the company's proxy mater-ials for the same meeting;

(12) Resubmissions: If the proposal deals with substantially the same subject matter as another proposal or proposals that has or have been previously included in the company's proxy materials within the preceding 5 calendar years, a company may exclude it from its proxy materials for any meeting held within 3 calen-dar years of the last time it was included if the proposal received:

(i) Less than 3% of the vote if proposed once within the preceding 5 calendar years;

(ii) Less than 6% of the vote on its last submis-sion to shareholders if proposed twice previ-ously within the preceding 5 calendar years; or

(iii) Less than 10% of the vote on its last sub-mission to shareholders if proposed three times or more previously within the preceding 5 cal-endar years; and

(13) Specific amount of dividends: If the pro-posal relates to specific amounts of cash or stock dividends.

(j) Question 10: What procedures must the com-pany follow if it intends to exclude my proposal?

(1) If the company intends to exclude a propos-al from its proxy materials, it must file its reas-ons with the Commission no later than 80 cal-endar days before it files its definitive proxy statement and form of proxy with the Commis-sion. The company must simultaneously provide you with a copy of its submission. The Commission staff may permit the company to make its submission later than 80 days before the company files its definitive proxy statement and form of proxy, if the company demon-strates good cause for missing the deadline.

(2) The company must file six paper copies of the following:

(i) The proposal;

(ii) An explanation of why the company be-lieves that it may exclude the proposal, which should, if possible, refer to the most recent ap-plicable authority, such as prior Division letters issued under the rule; and

(iii) A supporting opinion of counsel when such reasons are based on matters of state or foreign law.

(k) Question 11: May I submit my own statement to the Commission responding to the company's argu-ments?

Yes, you may submit a response, but it is not re-quired. You should try to submit any response to us, with a copy to the company, as soon as possible after the company makes its submission. This way, the Commission staff will have time to consider fully your submission before it issues its response.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

You should submit six paper copies of your response.

(l) Question 12: If the company includes my shareholder proposal in its proxy materials, what information about me must it include along with the proposal itself?

(1) The company's proxy statement must include your name and address, as well as the number of the company's voting securities that you hold. However, instead of providing that information, the company may instead include a statement that it will provide the information to shareholders promptly upon receiving an oral or written request.

(2) The company is not responsible for the contents of your proposal or supporting statement.

(m) Question 13: What can I do if the company includes in its proxy statement reasons why it believes shareholders should not vote in favor of my proposal, and I disagree with some of its statements?

(1) The company may elect to include in its proxy statement reasons why it believes shareholders should vote against your proposal. The company is allowed to make arguments reflecting its own point of view, just as you may express your own point of view in your proposal's supporting statement.

(2) However, if you believe that the company's opposition to your proposal contains materially false or misleading statements that may violate our anti-fraud rule, § 240.14a–9, you should promptly send to the Commission staff and the company a letter explaining the reasons for your view, along with a copy of the company's statements opposing your proposal. To the extent possible, your letter should include specific factual information demonstrating the inaccuracy of the company's claims. Time permitting, you may wish to try to work out your differences with the company by yourself before contacting the Commission staff.

(3) We require the company to send you a copy of its statements opposing your proposal before it sends its proxy materials, so that you may bring to our attention any materially false or misleading statements, under the following timeframes:

(i) If our no-action response requires that you make revisions to your proposal or supporting statement as a condition to requiring the company to include it in its proxy materials, then the company must provide you with a copy of its opposition statements no later than 5 calendar days after the company receives a copy of your revised proposal; or

(ii) In all other cases, the company must provide you with a copy of its opposition statements no later than 30 calendar days before its files definitive copies of its proxy statement and form of proxy under § 240.14a–6.

[41 FR 53000, Dec. 3, 1976, as amended at 43 FR 58530, Dec. 14, 1978; 44 FR 68456, 68770, Nov. 29, 1979; 48 FR 38222, Aug. 23, 1983; 50 FR 48181, Nov. 22, 1985; 51 FR 42062, Nov. 20, 1986; 52 FR 21936, June 10, 1987; 52 FR 48983, Dec. 29, 1987; 63 FR 29119, May 28, 1998; 63 FR 50622, Sept. 22, 1998; 72 FR 4168, Jan. 29, 2007; 72 FR 70456, Dec. 11, 2007; 73 FR 977, Jan. 4, 2008; 75 FR 56782, Sept. 16, 2010; 75 FR 64641, Oct. 20, 2010; 76 FR 6045, Feb. 2, 2011; 76 FR 58100, Sept. 20, 2011]

SOURCE: 50 FR 27946, July 9, 1985; 50 FR 28394

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.