No. 14-4764

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**TRINITY WALL STREET,**

*Plaintiff-Appellee*,

v.

**WAL-MART STORES, INC., A DELAWARE CORPORATION,**

*Defendant-Appellant*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Case No. 14-405-LPS
The Honorable Leonard P. Stark, United States District Judge

## BRIEF OF *AMICUS CURIAE* RETAIL LITIGATION CENTER, INC.
## SUPPORTING APPELLANT AND SUPPORTING REVERSAL

WILLIAM B. CHANDLER III (DE BAR NO. 116)
BRADLEY D. SORRELS (DE BAR NO. 5233)
IAN R. LISTON (DE BAR NO. 5507)
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
Tel.: (302) 304-7600
wchandler@wsgr.com

DEBORAH R. WHITE
RETAIL LITIGATION CENTER, INC.
1700 North Moore Street
Suite 2250
Arlington, VA 22209
Tel.: (703) 600-2067
deborah.white@rila.com

GIDEON A. SCHOR
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Fl.
New York, NY 10019
Tel.: (212) 497-7753
gschor@wsgr.com

*Attorneys for* Amicus Curiae

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 29(c), *amicus curiae* Retail Litigation Center, Inc. discloses the following:

Retail Litigation Center, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of the stock of the Retail Litigation Center, Inc.

/s/ *William B. Chandler III*
WILLIAM B. CHANDLER III (DE BAR NO. 116)
BRADLEY D. SORRELS (DE BAR NO. 5233)
IAN R. LISTON (DE BAR NO. 5507)
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
Tel.:  (302) 304-7600
wchandler@wsgr.com

DEBORAH R. WHITE                    GIDEON A. SCHOR
RETAIL LITIGATION CENTER, INC.      WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 North Moore Street             1301 Avenue of the Americas, 40th Fl.
Suite 2250                          New York, NY  10019
Arlington, VA  22209                Tel.:  (212) 497-7753
Tel.:  (703) 600-2067               gschor@wsgr.com
deborah.white@rila.com

                                    *Attorneys for* Amicus Curiae

January 21, 2015

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..............................................1

ARGUMENT ...................................................................................................2

    A.  Background..........................................................................................2

    B.  The SEC's Prior Guidance ...........................................................5

    C.  The Judgment Should Be Reversed Because It Upsets the Careful Balance Struck by the SEC's Guidance Between the Desires of Stockholders and the Needs of Management .................................................7

    D.  The SEC Staff's Sensitivity to Retail Business Structure............................10

CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723 (S.D. Tex. 2010) ...................... 8

*Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Eastern Assoc. Coal Corp.*, 54 F.3d 141 (3d Cir. 1995) ............................... 8

*Donaghue v. Accenture Ltd.*, No. 03 Civ. 8329, 2004 WL 1823448 (S.D.N.Y. Aug. 16, 2004) ................................................................. 8

*Facchiano Constr. Co. v. U.S. Dep't of Labor*, 987 F.2d 206 (3d Cir. 1993) .......................................................................................... 8

*Gryl v. Shire Pharm. Group, PLC*, 298 F.3d 136 (2d Cir. 2002) ............................ 3

*Morrison v. Madison Dearborn*, 463 F.3d 312 (3d Cir. 2006) ................................ 8

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) ......................................... 8

## Rules

17 C.F.R. § 240.14a-8(i)(3) ......................................................................................... 9

17 C.F.R. § 240.14a-8(i)(7) ......................................................................................... 3

Rule 14a-8(i)(3).............................................................................................................. 9

Rule 14a-8(i)(7).................................................................................................... 1, 3, 12

## SEC Releases & SEC Staff Bulletins

SEC Release No. 34-12598, 1976 WL 160410 (July 7, 1976)................................... 5

SEC Release No. 34-12999, 1976 WL 160347 (Nov. 22, 1976) ............................. 5

SEC Release No. 34-19135, 1982 WL 600869 (Oct. 14, 1982)............................... 9

SEC Release No. 34-20091, 1983 WL 33272 (Aug. 16, 1983) ............................ 5, 6

SEC Release No. 34-39093, 1997 WL 578696 (Sept. 18, 1997) ......................... 6, 9

SEC Release No. 34-40018, 1998 WL 254809 (May 21, 1998) .......................... 6, 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971 (Sept. 15, 2004) ............................................................................................9, 10

SEC Staff Legal Bulletin No. 14E, 2009 WL 4363205 (Oct. 27, 2009) .................12

### SEC Staff No-Action Letters

*Apache Corp.*, 2008 WL 615894 (Mar. 5, 2008) .......................................................7

*Cent. Fed. Corp.*, 2010 WL 943083 (Mar. 8, 2010)..................................................7

*Dillard's, Inc.*, 2012 WL 173764 (Feb. 27, 2012)...................................................11

*Family Dollar Stores, Inc.*, 2007 WL 3317923 (Nov. 6, 2007) ..............................11

*Gen. Elec. Co.*, 2010 WL 5067922 (Jan. 7, 2011)...............................................3, 11

*JPMorgan Chase & Co.*, 2010 WL 147293 (Mar. 12, 2010)...................................7

*Rite Aid Corp.*, 2009 WL 829472 (Mar. 26, 2009)..................................................11

*The Home Depot, Inc.*, 2008 WL 257307 (Jan. 25, 2008)...................................3, 11

*The Western Union Co.*, 2011 WL 916163 (Mar. 14, 2011) ....................................6

*Wal-Mart Stores, Inc.*, 2008 WL 5622715 (Feb. 27, 2008)....................................11

*Walgreen Co.*, 2006 WL 5381376 (Oct. 13, 2006) .................................................11

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The Retail Litigation Center, Inc. ("RLC") is a public policy organization that identifies and engages in legal proceedings affecting the retail industry. The RLC's members include many of the country's largest and most innovative retailers. The member entities whose interests the RLC represents employ millions of people throughout the United States, provide goods and services to tens of millions more, and account for tens of billions of dollars in annual sales. The RLC seeks to provide courts with retail-industry perspectives on important legal issues and to highlight the potential industry-wide consequences of significant pending cases.

The RLC has a substantial interest in this case because many of its members and constituents are directly affected by Securities and Exchange Commission ("SEC") Rule 14a-8(i)(7) and the District Court's interpretation thereof. Over the course of decades, the SEC has issued guidance that struck a careful balance between a stockholder's desire to include the stockholder's own proposals in proxy materials and management's interest in running the corporation's ordinary business

---

[1] No counsel for a party authored this brief in whole or in part, and no party or entity, other than the RLC, its members, or its counsel, made a monetary contribution intended to fund the preparation or submission of this brief. The undersigned counsel provided appropriate notice to all counsel of record of its intention to file an *amicus curiae* brief. The parties have consented to the filing of this brief.

operations.  Moreover, the SEC staff has demonstrated a particular sensitivity to the retail industry's need for efficient day-to-day operations and to the fact that selling a great variety of products is at the heart of the retailer's ordinary business.

The District Court's reading of the rule, however, threatens to disrupt the SEC's careful balance by inventing a vast exception that will significantly divest management of long-held authority over such ordinary business operations.  To be clear, the RLC greatly values stockholder input.  But because the SEC's guidance, which the District Court rejected, soundly harmonizes the desires of stockholders and the interests of management, the RLC submits this brief urging reversal of the District Court's judgment.

## ARGUMENT

### A.    Background

On December 18, 2013, Plaintiff-Appellee Trinity Wall Street ("Trinity") requested that Defendant-Appellant Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company") include in the Company's 2014 proxy materials a proposal to amend a board committee charter (the "Proposal").  A-266-69.  The amendment would provide for "oversight" concerning the "formulation and implementation" of "policies and standards that determine whether or not the Company should sell a product" that (i) "endangers public safety and well-being," (ii) has the "potential to impair" the Company's reputation, or (iii) would be considered "offensive" to

"family and community values." A-268. Wal-Mart sells hundreds of thousands of different products; as "just one example" of the products purportedly covered by the Proposal, the Proposal's supporting statement cited "guns equipped with high capacity magazines." A-269; *see also* A-95, A-268.

A public company's proxy materials need not include a stockholder proposal if the proposal "deals with a matter relating to the company's ordinary business operations," *see* Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7): "If I have complied with the procedural requirements [for inclusion of a stockholder proposal in a company's proxy materials], on what other bases may a company rely to exclude my proposal? . . . (7) *Management Functions:* If the proposal deals with a matter relating to the company's ordinary business operations . . . ." Wal-Mart determined that the Proposal was excludable under subsection (7) because it deals with "decisions concerning the products offered for sale by the Company." A-273.[2] Wal-Mart so advised the SEC staff and Trinity on January 30, 2014. A-271.

---

[2] *See, e.g.*, *The Home Depot, Inc.*, 2008 WL 257307, at *1 (Jan. 25, 2008) (no-action letter concurring in exclusion because proposal relates to company's "sale of particular products"); *see also Gen. Elec. Co.*, 2010 WL 5067922, at *1 (Jan. 7, 2011) (no-action letter concurring in exclusion because proposal relates to "the emphasis that the company places on the various products and services it offers for sale). The SEC staff's no-action letters are not binding on courts and deserve no deference beyond what persuasive value they may have, but they nonetheless provide useful instruction concerning how the SEC staff has interpreted a particular rule. *See Gryl v. Shire Pharm. Group, PLC*, 298 F.3d 136, 145 (2d Cir. 2002).

After receiving arguments from both Wal-Mart and Trinity, the SEC staff, in a no-action letter dated March 20, 2014, did not object to Wal-Mart's determination, explaining – consistent with numerous prior SEC rulings – that the SEC staff would not recommend enforcement action if Wal-Mart excluded the Proposal under subsection (7) because it "relates to the products and services offered for sale by the company." A-271-89. As the District Court itself acknowledged, the Proposal seeks to have a board committee address policies that "could (and almost certainly would) shape what products are sold by Wal-Mart." A-19. Upon Trinity's lawsuit, commenced on April 1, 2014, to prevent Wal-Mart from printing its 2014 proxy materials without including the Proposal therein, the District Court denied Trinity's motion for a preliminary injunction for failure to establish a likelihood of success on the merits. A-60, A-108. Wal-Mart's 2014 proxy materials duly omitted the Proposal. A-119, A-199-204. On May 19, 2014, Trinity filed an amended complaint seeking a declaration that the Proposal should not have been excluded under subsection (7). A-231, A-244. The District Court, essentially reversing itself, held that "Trinity's proposal should not have been excluded from Wal-Mart's 2014 proxy materials." A-31 (citation and internal quotation marks omitted). The District Court also enjoined Wal-Mart from "excluding Trinity's proposal from Wal-Mart's 2015 proxy materials . . . provided Trinity makes a proposal not materially dissimilar from [its] 2014 proposal." *Id.*

Judgment was entered on December 8, 2014. *Id.* On December 18, 2014, Trinity

submitted a proposal for the 2015 proxy materials that was "identical" to the

Proposal. A-440.

## B.    The SEC's Prior Guidance

Trinity's stratagems to sidestep the "ordinary business operations" exclusion

are hardly new and have long been rejected by the SEC.

In 1976, the SEC considered whether a stockholder proposal structured so as

to require action by the board but not action by management personnel alone

should not be excludable. The SEC determined that such a proposal could be

excluded because board actions can still relate to routine business matters. SEC

Release No. 34-12598, 1976 WL 160410, at *8 (July 7, 1976); SEC Release No.

34-12999, 1976 WL 160347, at *11 (Nov. 22, 1976) (collectively, the "1976

Releases").

In 1983, the SEC considered whether a stockholder proposal asking the

company to form a board committee to study a segment of the business did not

therefore relate to the company's ordinary business operations and thus could not

be excluded. The SEC ruled that such a proposal should still be excludable where

the underlying "subject matter" that the proposal would have a committee review

"involves a matter of ordinary business." SEC Release No. 34-20091, 1983 WL

33272, at *7 (Aug. 16, 1983) ("1983 Adopting Release").

5

In 1997, the SEC considered the scope of an exception to subsection (7) that had been recognized for proposals concerning significant policy issues. The SEC ruled that, to avoid exclusion, a proposal that otherwise relates to ordinary business matters must focus on, and not merely implicate, a significant policy issue. *See* SEC Release No. 34-39093, 1997 WL 578696, at *12-14 (Sept. 18, 1997) ("1997 Proposing Release"); SEC Release No. 34-40018, 1998 WL 254809, at *4 (May 21, 1998) ("1998 Adopting Release") (collectively, the "1997-98 Releases").

The District Court's rationales for its holding are contrary to this SEC guidance. First, the Proposal was made no less excludable by its request for board (rather than management) action. Thus, the 1976 Releases should have foreclosed the District Court's reliance on the assertion that the Proposal does not "dictate to management" but rather "seeks to have Wal-Mart's ***Board*** oversee the development and effectuation of a Wal-Mart policy." A-18-19 (emphasis retained).[3] Second, the underlying "subject matter" of the Proposal concerned

---

[3] The SEC itself, in reversing an SEC staff position, held that it "raises form over substance," and renders the ordinary business operations exclusion "largely a nullity," to hold that a proposal is rendered non-excludable merely by its request for action by a board committee. 1983 Adopting Release, 1983 WL 33272, at *7. The SEC held that the inquiry is whether the "subject matter" of the requested committee action "involves a matter of ordinary business." *Id. See also The Western Union Co.*, 2011 WL 916163, at *1 (Mar. 14, 2011) (no-action letter concurring in exclusion where proposal requested that company establish risk oversight committee *and* that committee review risks whose subject matters involve ordinary business matters).

"whether or not the Company should sell" certain products. Thus, the 1983 Adopting Release should have foreclosed the District Court's reliance on the assertion that the "Proposal is best viewed as dealing with matters that are not related to Wal-Mart's ordinary business operations." A-19. Third, the Proposal is drafted broadly to cover a multitude of products sold by Wal-Mart and does not "focus" on the sale of firearms. A-95. Thus, the 1997-98 Releases should have foreclosed the District Court's reliance on the assertion that the Proposal "implicates significant policy issues" such as "the social and community effects of sales of high capacity firearms at the world's largest retailer." A-21.[4]

## C.    The Judgment Should Be Reversed Because It Upsets the Careful Balance Struck by the SEC's Guidance Between the Desires of Stockholders and the Needs of Management

Even putting aside the SEC staff's no-action letters, the guidance provided by the SEC itself – the SEC Releases cited above – should have foreclosed the District Court's holdings not only because the holdings were directly contrary to

---

[4] *See, e.g.*, *JPMorgan Chase & Co.*, 2010 WL 147293, at *1 (Mar. 12, 2010) (no-action letter concurring in exclusion of proposal that addressed "matters beyond the environmental impact of JPMorgan Chase's project finance decisions"); *Cent. Fed. Corp.*, 2010 WL 943083, at *1 (Mar. 8, 2010) (no-action letter concurring in exclusion of proposal because it "relate[d] to both extraordinary transactions and non-extraordinary transactions"); *Apache Corp.*, 2008 WL 615894, at *1 (Mar. 5, 2008) (no-action letter concurring in exclusion of proposal purporting to deal with employment discrimination because "some of the principles [in the proposal] relate to Apache's ordinary business operations"); *supra* at 3 n.2.

the guidance but also because the guidance should have received deference from the District Court.  The SEC's interpretation of its own rules "'must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  *Morrison v. Madison Dearborn*, 463 F.3d 312, 315 (3d Cir. 2006) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *see also Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Eastern Assoc. Coal Corp.*, 54 F.3d 141, 147 (3d Cir. 1995) ("We accord greater deference to an administrative agency's interpretation of its own regulations than to its interpretation of a statute.") (citing *Facchiano Constr. Co. v. U.S. Dep't of Labor*, 987 F.2d 206, 213 (3d Cir. 1993)).  Far from finding that the SEC's guidance was "plainly erroneous" or "inconsistent" with subsection (7), the District Court simply ignored the guidance.  Had it appropriately deferred to the SEC's views, the District Court would have held that the determinant of excludability under subsection (7) is the proposal's underlying subject matter, not the form of requested action, and that exclusion may be avoided only if a proposal focuses on, rather than merely implicates, a significant policy issue.[5]

---

[5] The SEC staff's no-action letter in this case was also persuasive because it was consistent with several other no-action letters in which the SEC staff concurred in the exclusion of proposals relating to a retailer's sale of products. *See Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 735 (S.D. Tex. 2010); *Donaghue v. Accenture Ltd.*, No. 03 Civ. 8329, 2004 WL 1823448, at *3 (S.D.N.Y. Aug. 16, 2004).

Even apart from deference, the content of the District Court's rulings requires reversal of the judgment. By holding that the Proposal is not excludable because it does not "dictate to management" and instead "would be felt at the Board level," the District Court created an unprecedented – and easily abused – "board action" exception to subsection (7). A-20. In addition, by holding that the Proposal is not excludable because it "includes" or "implicates" a significant policy issue, the District Court expanded beyond recognition the significant policy exception to subsection (7). In short, the District Court's decision upsets the careful balance struck by the SEC's guidance between the "spheres of authority for the board of directors on one hand, and the company's shareholders on the other." 1997 Proposing Release, 1997 WL 578696, at *4.[6]

The District Court also erred in holding that the Proposal is not excludable under SEC Rule 14a-8(i)(3), 17 C.F.R. § 240.14a-8(i)(3). Where a proposal's language is "vague" or "indefinite," the proposal may be excluded under subsection (3). SEC Release No. 34-19135, 1982 WL 600869, at *13 (Oct. 14, 1982); SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *4 (Sept. 15,

---

[6] *See also* 1998 Adopting Release, 1998 WL 254809, at *4 ("The general underlying policy of th[e ordinary business] exclusion is consistent with the policy of most state corporate laws: to confine the resolution of ordinary business problems to management and the board of directors, since it is impracticable for shareholders to decide how to solve such problems at an annual shareholders meeting.").

2004).  The Proposal's language is demonstrably vague and indefinite.  Under the Proposal, a board committee must address policies regarding whether Wal-Mart should sell a product that would be considered "offensive to the family and community values integral to the Company's promotion of its brand."  A-268.  But the Proposal does not explain or define the term "values" – whose content is famously in the eye of the beholder – and does not identify any "family or community" whose values are to determine whether a product is "offensive."  *Id.* Moreover, Wal-Mart sells hundreds of thousands of different products through vast numbers of employees to millions of customers throughout the world; there is no single set of "family and community values" by which to assess the offensiveness of any particular product.

Accordingly, the District Court's injunction should be vacated and its judgment reversed.

## D.    The SEC Staff's Sensitivity to Retail Business Structure

The SEC's decades of no-action letters (*see supra* at 3 n.2) demonstrate a particular and justified sensitivity to retailers' needs to run their companies efficiently.

In a number of no-action letters, the SEC staff has concurred in the exclusion of stockholder proposals that relate to decisions by retailers concerning

the sale of products.[7] These concurrences doubtless result from the fact that retailers, more than other marketplace sellers, are likely to sell a great variety of different products. That variety – the broadly inclusive sweep of the retailer's product offerings – is at the heart of the retailer's day-to-day business. Indeed, large retailers sell hundreds of thousands of different items, and product mix in a given geographic region (or even district or store) may be calibrated to the needs and desires of customers in the different locations in which the products are sold. This understanding of consumer behavior and careful tailoring of product mix is central to the success or failure of a given retailer.

If the District Court's decision remains unchanged, however, the variety of retailers' product offerings creates a risk that retailers may receive a multitude of stockholder proposals that are as numerous and varied as the products that they sell. The SEC staff developed the nexus requirement to moderate that risk. The nexus requirement provides that, even where a stockholder proposal indisputably focuses on (rather than merely implicates) a significant policy issue, the proposal is still excludable if the significant policy issue lacks a sufficient nexus to the

---

[7] *See, e.g.*, *Gen. Elec. Co.*, 2010 WL 5067922, at *1; *Wal-Mart Stores, Inc.*, 2008 WL 5622715, at *1 (Feb. 27, 2008); *The Home Depot, Inc.*, 2008 WL 257307, at *1; *Family Dollar Stores, Inc.*, 2007 WL 3317923, at *1 (Nov. 6, 2007); *Walgreen Co.*, 2006 WL 5381376, at *1 (Oct. 13, 2006); *see also Dillard's, Inc.*, 2012 WL 173764, at *15 (Feb. 27, 2012); *Rite Aid Corp.*, 2009 WL 829472, at *1 (Mar. 26, 2009).

company.  *See* SEC Staff Legal Bulletin No. 14E, 2009 WL 4363205, at *2 (Oct. 27, 2009) (explaining that proposal focusing on significant policy issue "generally will not be excludable under Rule 14a-8(i)(7) as long as a sufficient nexus exists between the nature of the proposal and the company").

The District Court did not give due regard to the nexus requirement, and, for this additional reason, its holding upsets the balance between the desires of stockholders and the needs of management.  For all the foregoing reasons, the judgment of the District Court should be reversed.

## CONCLUSION

For the foregoing reasons, the District Court's injunction should be vacated and its judgment reversed.

Respectfully submitted,

/s/ *William B. Chandler III*
WILLIAM B. CHANDLER III (DE BAR NO. 116)
BRADLEY D. SORRELS (DE BAR NO. 5233)
IAN R. LISTON (DE BAR NO. 5507)
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
Tel.:  (302) 304-7600
wchandler@wsgr.com

DEBORAH R. WHITE
RETAIL LITIGATION CENTER, INC.
1700 North Moore Street
Suite 2250
Arlington, VA  22209
Tel.:  (703) 600-2067

GIDEON A. SCHOR
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Fl.
New York, NY  10019
Tel.:  (212) 497-7753
gschor@wsgr.com

deborah.white@rila.com

*Attorneys for* Amicus Curiae

January 21, 2015

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am a member in good standing of the U.S. Court of

Appeals for the Third Circuit.

Dated:  January 21, 2015                    /s/ *William B. Chandler III*
                                            WILLIAM B. CHANDLER III
                                            (DE BAR NO. 116)

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(d) and 32(a)(7)(B) because it contains 2,829 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2010.

Dated:  January 21, 2015          /s/ *William B. Chandler III*

WILLIAM B. CHANDLER III

## <u>CERTIFICATE OF DIGITAL SUBMISSION AND VIRUS CHECK</u>

I hereby certify that a copy of the foregoing document was submitted in digital format, is an exact copy of the written document filed with the Clerk of the U.S. Court of Appeals for the Third Circuit, and is free from viruses according to a scan for viruses conducted with Microsoft System Center Endpoint Protection Version 1.1.11302.0.

Dated:  January 21, 2015                    /s/ *Ian R. Liston*
                                            IAN R. LISTON

## CERTIFICATE OF FILING AND SERVICE

I, Ian R. Liston, hereby certify that, on January 21, 2015, the Brief of *Amicus Curiae* Retail Litigation Center, Inc. Supporting Appellant and Supporting Reversal was filed with the Clerk of the United States Court of Appeals for the Third Circuit and served upon the following counsel via CM-ECF:

> Joel E. Friedlander, Esq.
> FRIEDLANDER & GORRIS, P.A.
> 222 Delaware Avenue, Suite 1400
> Wilmington, DE 19801
> jfriedlander@friedlandergorris.com
>
> Theodore J. Boutrous Jr.
> 333 South Grand Avenue
> Los Angeles, CA 90071-3197
> tboutrous@gibsondunn.com

I further certify that, on January 21, 2015, I caused the required number of copies of the Brief of *Amicus Curiae* Retail Litigation Center, Inc. Supporting Appellant and Supporting Reversal to be filed with the Clerk's Office of the U.S. Court of Appeals for the Third Circuit, via Federal Express.

Dated:  January 21, 2015          /s/ *Ian R. Liston*
                                  IAN R. LISTON