# United States Court of Appeals

*for the*

# Third Circuit

---

Case No. 14-4764

WAL-MART STORES, INC.,

*Defendant-Appellant,*

– v. –

TRINITY WALL STREET,

*Plaintiff-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
NO. 1:14-CV-00405-LPS

## BRIEF FOR THE SOCIETY OF CORPORATE SECRETARIES AND GOVERNANCE PROFESSIONALS AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT

DARLA C. STUCKEY
SOCIETY OF CORPORATE SECRETARIES AND
  GOVERNANCE PROFESSIONALS, INC.
240 West 35th Street
New York, New York 10001
(212) 681-2000

PAUL J. LOCKWOOD
ELISA M.C. KLEIN
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
920 North King Street
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

BRIAN V. BREHENY
HAGEN J. GANEM
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7000

*Attorneys for Amicus Curiae*

January 21, 2015

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amicus Curiae* the Society of Corporate Secretaries and Governance Professionals, Inc. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.  It is a not-for-profit corporation organized under the laws of New York.

# **TABLE OF CONTENTS**

TABLE OF CASES AND AUTHORITIES ................................................................... ii

STATEMENT OF INTEREST OF THE *AMICUS CURIAE* ................................... 1

SUMMARY OF ARGUMENT ................................................................ 4

ARGUMENT .................................................................................. 7

I.    SHAREHOLDER PROPOSALS REQUESTING BOARD
      OVERSIGHT OF A COMPANY'S PRODUCTS DEAL WITH A
      MATTER RELATING TO A COMPANY'S ORDINARY
      BUSINESS OPERATIONS. ........................................................ 7

      A.    Rule 14a-8(i)(7) And The Guidance Issued By The SEC And
            Its Staff Support Wal-Mart's Reliance On The Ordinary
            Business Exception ........................................................ 7

      B.    The District Court's Interpretation Of Rule 14a-8(i)(7) Is Too
            Broad. ........................................................................ 13

II.   THE SEC AND ITS STAFF HAVE PROPERLY CONSTRUED THE
      APPLICATION OF THE ORDINARY BUSINESS EXCEPTION ............. 19

III.  FAILURE TO REVERSE THE DISTRICT COURT'S RULING
      WILL HAVE A NEGATIVE IMPACT ON U.S. CORPORATIONS. ........ 23

CONCLUSION ................................................................................. 27

# TABLE OF CASES AND AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Allaire Corp. v. Okumus*,
　　433 F.3d 248 (2d Cir. 2006) ........................................................22

*Apache Corp. v. New York City Employees' Retirement System*,
　　621 F. Supp. 2d 444 (S.D. Tex. 2008)..........................................16

*Auer v. Robbins*,
　　519 U.S. 452 (1997)......................................................................20

*Facchiano Construction Co. v. United States Department of Labor*,
　　987 F.2d 206 (3d Cir. 1993) .........................................................20

*Federal Express Corp. v. Holowecki*,
　　552 U.S. 389 (2008)................................................................19, 22

*Good Samaritan Hospital v. Shalala*,
　　508 U.S. 402 (1993)......................................................................22

*TSC Industries, Inc. v. Northway, Inc.*,
　　426 U.S. 438 (1976)......................................................................25

## RULES & STATUTES

17 C.F.R. § 240.14a-8(i)(7) ............................................................*passim*

8 *Del. C.* § 141(a)....................................................................11, 12

## SEC RELEASES & SEC STAFF BULLETINS

Amendments to Rules on Shareholder Proposals,
　　Exchange Act Release No. 34-40018,
　　1998 WL 254809 (May 21, 1998).................................. 10, 12, 13, 14, 16, 22

Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934
　　Relating to Proposals by Security Holders,
　　Exchange Release No. 20091, 1983 WL 33272 (Aug. 16, 1983).................13

Staff Legal Bulletin No. 14A,
    2002 WL 32987526 (July 12, 2002)......................................................14, 16

Staff Legal Bulletin No. 14C,
    2005 WL 6283646 (June 28, 2005)......................................................14, 16

Staff Legal Bulletin No. 14E,
    2009 WL 4363205 (Oct. 27, 2009).......................................................14, 16

## SEC STAFF NO-ACTION LETTERS

*Capital One Financial Corp.*,
    2005 WL 293305 (Feb. 3, 2005).............................................................17, 18

*CIGNA Corp.*,
    2010 WL 5409431 (Feb. 23, 2011)................................................................17

*CVS Caremark Corp.*,
    2008 WL 308201 (Jan. 31, 2008),
    *reconsideration denied*, 2008 WL 591014 (Feb. 29, 2008).........................17

*Fifth Third Bancorp.*,
    2012 WL 6608262 (Jan. 28, 2013)..................................................................8

*J.P. Morgan Chase & Co.*,
    2010 WL 147293 (Mar. 12, 2010)................................................................17

*Mattel, Inc.*,
    2012 WL 483197 (Feb. 10, 2012)..................................................................17

*Pfizer Inc.*,
    2013 WL 6701966 (Feb. 18, 2014),
    *reconsideration denied*, 2013 WL 6189162 (Mar. 5, 2014)...................16, 17

*Prudential Financial Inc.*,
    2011 WL 6071962 (Dec. 23, 2011)..................................................................8

*Regions Financial Corp.*,
    2013 WL 1717720 (Jan. 28, 2013).............................................................7, 8

*United Technologies Corp.*,
　　2008 WL 308195 (Jan. 31, 2008) ................................................................18

*Wal-Mart Stores, Inc.*,
　　2010 WL 1371654 (Mar. 26, 2010) ...............................................................8

*Wal-Mart Stores, Inc.*,
　　2010 WL 543622 (Mar. 29, 2010) .................................................................15

*Wal-Mart Stores, Inc.*,
　　2011 WL 304197 (Mar. 28, 2011) .................................................................15

*Wal-Mart Stores, Inc.*,
　　2011 WL 304198 (Mar. 29, 2011) .................................................................14

*Wells Fargo & Co.*,
　　2013 WL 1718319 (Jan. 28, 2013),
　　*reconsideration denied*, 2013 WL 1718320 (Mar. 4, 2013) ..........................8

The Society of Corporate Secretaries and Governance Professionals, Inc. (the "Society") respectfully submits this brief as *amicus curiae* in support of defendants-appellants' appeal seeking reversal of the district court's order ruling that Wal-Mart Stores, Inc. ("Wal-Mart") was required to include a shareholder proposal in its annual proxy statement.[1]

## STATEMENT OF INTEREST OF THE *AMICUS CURIAE*

Founded in 1946, the Society is a New York not-for-profit professional association comprised of corporate secretaries and business executives in governance, ethics, and compliance functions at public, private, and not-for-profit organizations throughout the country. Its members support boards of directors and executive management in matters such as board practices, compliance, regulatory and legal matters, shareholder relations, annual meetings, and subsidiary management. The Society seeks to be a positive force for responsible corporate governance by providing assistance to its members and their organizations in implementing sound business practices.[2]

---

[1] Pursuant to Rule 29(c)(5) of the Federal Rules of Appellate Procedure, the Society represents that no party to this action or their counsel authored this brief in whole or in part, no party to this action or their counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than the Society, its members, and its counsel contributed money that was intended to fund preparing or submitting this brief.

[2] For more information, visit http://www.governanceprofessionals.org/home.

The Society believes it can provide the Court with a helpful perspective on the issue on appeal:  namely, whether Wal-Mart was required to include a shareholder proposal in its annual proxy statement that sought to amend a board committee charter to provide oversight for the formulation and implementation of policies related to what types of products Wal-Mart sells.  The Court's ruling on this issue will have a significant effect on the Society's members and their organizations because they are responsible for drafting proxy materials and making recommendations to their boards and senior management regarding whether or not to include proposals from shareholders and/or to seek no-action relief.  Society members are also responsible for engaging with shareholder proponents on their proposals.

Although the SEC's rules allow corporations to exclude from their proxy materials shareholder proposals relating to ordinary business operations, the District Court's ruling encourages shareholders to "dress them up" as issues of corporate governance by merely claiming that they are seeking board oversight of such matters.  As a result, the District Court's ruling effectively eliminates the use of the ordinary business exception from the shareholder proposal process.  This will in turn result in an increase in shareholder requests that would be costly to address and that would disrupt boards of directors' and management's ability to effectively govern the proxy process.  In contrast, the ruling that Wal-Mart seeks

will protect the Society's members and their organizations from the disruption and cost of addressing shareholder proposals that relate to ordinary business operations, which cannot practically be subject to management by shareholders.

## SUMMARY OF ARGUMENT

In this appeal, Defendant-Appellant, Wal-Mart, requests that the Court vacate a decision by the District Court below requiring Wal-Mart to include a proposal in its 2015 annual meeting proxy statement submitted by one of its shareholders, Plaintiff-Appellee, Trinity Wall Street ("Trinity"), that relates to the products that Wal-Mart offers for sale.  Wal-Mart contends that the District Court's decision conflicts with the SEC's interpretation of Rule 14a-8(i)(7), which permits corporations to exclude shareholder proposals that relate to their ordinary business operations because such proposals interfere with the authority granted to directors by state corporation law.  In addition to decades of consistent interpretation of the ordinary business exception by the SEC, Wal-Mart relies on a no-action letter that the SEC staff issued in this case, agreeing that Trinity's proposal falls within the ordinary business exception.

The District Court initially deferred to the SEC staff's interpretation, acknowledging that "the SEC has had hundreds of opportunities to consider questions like this."  (A-108)  The District Court thus denied Trinity's motion for a preliminary injunction, concluding that "Trinity was not likely to succeed on the merits of its claims."  (A-24)  But it later reversed its view and issued a mandatory injunction requiring Wal-Mart to include Trinity's proposal in its 2015 proxy materials.

4

According to the District Court, Trinity's proposal does not relate to Wal-Mart's ordinary business operations because it does not dictate management's decision regarding what products Wal-Mart sells, but merely requests that the board oversee such decisions.  (A-17-19)  In addition, the District Court concluded that the ordinary business exception should not apply because Trinity's proposal "implicates" a significant policy issue in that it cites "guns equipped with high capacity magazines" as one of the products it intends to cover.  (A-19)  Wal-Mart challenges both of these conclusions in its appeal, and the Society submits this brief in support of Wal-Mart's position because the District Court's rationale conflicts with the SEC and its staff's own interpretation of Rule 14a-8(i)(7), which have resulted from years of consideration and involved the input of U.S. corporate and shareholder communities.

As a policy matter, the District Court's decision should be reversed because it threatens to disrupt the careful balance that the SEC struck between the rights of shareholders under Rule 14a-8 and the authority granted to directors to manage the business and affairs of corporations under state corporate law.  Its expansive interpretation of Rule 14a-8 encourages shareholders to flood corporations with proposals that relate to products for sale by artfully framing them as requests for corporate governance reform.  Given the expensive and time-consuming process of addressing shareholder proposals, expanding the availability

5

of Rule 14a-8 could seriously disrupt management and boards' efforts to effectively manage the proxy process and corporations' other business affairs.

## ARGUMENT

I. **SHAREHOLDER PROPOSALS REQUESTING BOARD OVERSIGHT OF A COMPANY'S PRODUCTS DEAL WITH A MATTER RELATING TO A COMPANY'S ORDINARY BUSINESS OPERATIONS.**

The U.S. Securities and Exchange Commission (the "SEC") adopted its shareholder proposal rule, Rule 14a-8 of the Securities Exchange Act of 1934, in a purposeful and deliberate manner because it was granting to shareholders rights that did not exist in, and could conflict with, state corporate law.  For this reason, when the SEC adopted Rule 14a-8(i)(7) (the "ordinary business exception"), the language it chose to include in the rule was broad enough to cover any "matter relating to the company's ordinary business operations."  17 C.F.R. § 240.14a-8(i)(7).  The District Court concurred in this view when it stated that "[i]t is true that the ordinary business exception of Rule 14a-8(i)(7) is written broadly …."  (A-22)

A. **Rule 14a-8(i)(7) And The Guidance Issued By The SEC And Its Staff Support Wal-Mart's Reliance On The Ordinary Business Exception.**

Since the adoption of the ordinary business exception, the SEC and its staff have been careful to interpret the exception in a way that uphols the provision's original intention.  *See, e.g.*, *Regions Financial Corp.*, 2013 WL 1717720 (Jan. 28, 2013) (granting no-action relief under Rule 14a-8(i)(7) to exclude a proposal that requested that the board to prepare a report discussing the adequacy of the

company's policies in addressing the social and financial impacts of direct deposit advance lending, noting in particular that the "proposal relate[d] to the products and services offered for sale by the company"); *Wells Fargo & Co.*, 2013 WL 1718319 (Jan. 28, 2013) (same), *reconsideration denied*, 2013 WL 1718320 (Mar. 4, 2013); *Fifth Third Bancorp.*, 2012 WL 6608262 (Jan. 28, 2013) (same); *Prudential Financial Inc.*, 2011 WL 6071962 (Dec. 23, 2011) (granting no-action relief under Rule 14a-8(i)(7) to exclude a proposal that requested that "annuity contracts not provide for any value other than the Account Value that is an accumulation of purchase payments and interest or other credits," noting in particular that "the proposal relate[d] to the products and services offered for sale by the company"); *Wal-Mart Stores, Inc.*, 2010 WL 1371654 (Mar. 26, 2010) (granting no-action relief under Rule 14a-8(i)(7) to exclude a proposal that urged "the Board of Directors to adopt a policy requiring all products and services offered for sale in the United States of America by Wal-Mart and Sam's Club stores shall be manufactured or produced in the United States of America," noting in particular that "proposal relate[d] to the products and services offered for sale by the company").  These interpretations offer an extensive record of the SEC staff's view that shareholder proposals related to a company's products interfere with a company's ordinary business operations.

Trinity's proposal, notwithstanding that it is couched in the form of a request to amend a board committee charter, interferes with Wal-Mart's ordinary business operations. As in the examples cited above, it seeks to impact the products and services for sale by the company.[3] As a result, Wal-Mart, with the SEC staff's concurrence, reasonably and properly relied on Rule 14a-8(i)(7) to exclude Trinity's proposal from Wal-Mart's proxy statement for its 2014 annual meeting. For these same reasons, Wal-Mart should be able to continue to rely on the ordinary business exception if a similar shareholder proposal is offered in future years.

The determination of whether the ordinary business exception is available requires thoughtful consideration of the proposal's language, the rule and the guidance provided by the SEC. Such considerations are crucial to the proper application of the rule and, indeed, many members of the Society and their employers spend a substantial amount of time and other resources each year on these matters.

---

[3] Although not necessary for the Court's analysis, the District Court's point that the "direct impact of adoption of Trinity's Proposal would be felt at the Board level" also glosses over the reality of how U.S. companies are managed. (A-20) As the Society members know all too well, board members generally do not handle administrative matters, such as formulating, implementing or reporting on company policies and standards. Those tasks are very much day-to-day responsibilities of company management.

The SEC has explained that two considerations are central to an analysis of the availability of the ordinary business exception. *See* Amendments to Rules on Shareholder Proposals, Exchange Act Release No. 34-40018, 1998 WL 254809 (May 21, 1998) ("1998 Amendments"). The first consideration is whether the requested action is "so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight." *Id.* at *4 The second consideration requires an analysis of "the degree to which the proposal seeks to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Id.* at *5.

The SEC has also pointed out that when considering whether a matter is ordinary, the analysis should not focus on "the common meaning of the word." *Id.* at *2. Rather, the focus should be "rooted in the corporate law concept providing management with flexibility in directing certain core matters involving the company's business and operations." *Id.* The SEC explained further that "[t]he general underlying policy of [the ordinary business exception] is consistent with the policy of most state corporate laws: to confine the resolution of ordinary business problems to management and the board of directors, since it is impracticable for shareholders to decide how to solve such problems at an annual shareholders meeting." *Id.* at *4.

Trinity's proposal asks Wal-Mart's shareholders to vote to instruct the Board of Directors of Wal-Mart to revise the charter of one of its board committees, the Compensation, Nominating and Governance Committee (the "CNG Committee"). Specifically, Trinity has requested that the CNG Committee's charter be expanded to include oversight and reporting requirements concerning policies and standards that determine which products Wal-Mart sells, and further that those requirements cover "whether or not the company should sell guns equipped with magazines holding more than ten rounds of ammunition ('high capacity magazines') and to balance[e] the benefits of selling guns against the risks that these sales pose to the public and to [Wal-Mart's] reputation and brand value."  (A-5)

Delaware law, however, does not grant shareholders the right to amend board committee charters or the right to dictate the responsibilities and reporting requirements of boards or board committees.  Although there are rules and regulations that require certain provisions in board committee charters, the ultimate responsibility for determining the language of these charters rests solely with the board of directors.  Shareholders have a right to nominate persons for consideration as board members and to vote on the election of duly nominated directors. Thereafter, oversight of the corporation is squarely vested in the board of directors. *See, e.g.*, 8 *Del. C.* § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board

11

of directors …."). When board members exercise their oversight responsibilities, they must do so in accordance with the fiduciary duties that apply in those instances. Shareholders that believe a director may not be managing the corporation as required by law can raise an objection based on the director's applicable duties.

Trinity has chosen to not raise an objection under Delaware law as to the board of directors' oversight of Wal-Mart's product sales policies and procedures. Instead, Trinity has relied on an overly broad reading of Rule 14a-8 in an effort to change the responsibilities of one of the board's committees. This is exactly the type of core ordinary business matter that the SEC was trying to avoid shareholders having to decide at an annual meeting when it adopted the ordinary business exception. *See* 1998 Amendments.

Rule 14a-8 was not intended to offer shareholders an indirect way – via a proposal to amend a board committee charter – to interfere in a core ordinary business matter. And, there are few, if any, operations at Wal-Mart, the world's largest retailer, that are more central to its business than determining the products that it will sell. The structure of Trinity's proposal as a corporate governance matter, therefore, does not and should not alter the fact that its primary focus is to influence the sales practices at Wal-Mart. Indeed, the District Court acknowledged

that Trinity's proposal "could (and almost certainly would) shape what products are sold by Wal-Mart."  (A-19)

This indirect approach has been considered and rejected by the SEC when analyzing ordinary business exception questions.  *See* Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders, Exchange Release No. 20091, 1983 WL 33272, at *7 (Aug. 16, 1983).  In 1983, when announcing its views on this matter, the SEC stated that allowing corporate governance proposals, such as requests for reports or a review by a board committee, to address ordinary business matters "raises form over substance and renders the provisions of paragraph (c)(7) largely a nullity." *Id.*  As a result, the SEC allows companies to exclude from their proxy statements a shareholder proposal that seeks action by its board if "the subject matter of the special report or the committee involves a matter of ordinary business." *Id.*  The Court should concur with this thoughtful and considered approach, as it would be consistent with how the SEC intended the ordinary business exception to apply.

**B.  The District Court's Interpretation Of Rule 14a-8(i)(7) Is Too Broad.**

There are occasions where a shareholder proposal that otherwise would be excludable from a company's proxy statement based on the ordinary business exception is determined to be not excludable because it focuses on a "sufficiently significant social policy issue[]." *See* 1998 Amendments, at *4; Staff Legal

Bulletin No. 14A, 2002 WL 32987526 (July 12, 2002) ("SLB 14A"); Staff Legal

Bulletin No. 14C, 2005 WL 6283646 (June 28, 2005) ("SLB 14C"); Staff Legal

Bulletin No. 14E, 2009 WL 4363205 (Oct. 27, 2009) ("SLB 14E").  Such

proposals fall into a small category of unique topics that qualify as significant

social policy issues because, as the SEC has described, they "transcend the day-to-

day business matters and raise policy issues so significant that it would be

appropriate for a shareholder vote."  *See* 1998 Amendments, at *4; SLB 14A, at *2

(observing that the SEC staff "has noted many times that the presence of

widespread public debate regarding an issue is among the factors to be considered

in determining whether proposals concerning that issue 'transcend the day-to-day

business matters'") (citations omitted).

Contrary to the District Court's suggestion that "***anything*** a company like

Wal-Mart does at least somewhat 'deals with' a matter 'relating to' the company's

business operations'" (A-22) (emphasis in original), there is a long list of examples

in which the SEC staff was unable to concur with the view that a proposal related

to Wal-Mart's ordinary business operations and instead concluded that the proposal

focused on a significant social policy issue.  *See, e.g.*, *Wal-Mart Stores, Inc.*, 2011

WL 304198 (Mar. 29, 2011) (denying no-action relief under Rule 14a-8(i)(7) to

exclude a proposal that requested the board to require the company's suppliers to

publish annually an independently verifiable sustainability report, noting in

14

particular that the proposal appeared to "focus on the significant policy issues of sustainability and human rights"); *Wal-Mart Stores, Inc.*, 2011 WL 304197 (Mar. 28, 2011) (denying no-action relief under Rule 14a-8(i)(7) to exclude a proposal that asked the board to prepare a report disclosing the business risks related to climate change, noting in particular that "the proposal focus[ed] on the significant policy issue of climate change"); *Wal-Mart Stores, Inc.*, 2010 WL 543622 (Mar. 29, 2010) (denying no-action relief under Rule 14a-8(i)(7) to exclude a proposal that requested a report on the company's process for identifying and prioritizing legislative and regulatory public policy advocacy activities, noting in particular that the "proposal focuse[d] primarily on Wal-Mart's general political activities").

The District Court recognized the SEC's approach to proposals that focus on significant social policy issues in its decision and determined that Trinity's proposal implicated a significant social policy – the "social and community effects of sales of high capacity firearms at the world's largest retailer and the impact this could have on Wal-Mart's reputation, particularly if such a product sold at Wal-Mart is misused and people are injured or killed as a result." (A-20-21) The District Court erred, however, by failing to acknowledge that because the scope of Trinity's proposal is broad enough to "shape what products are sold by Wal-Mart"

(A-19), the proposal relates to ordinary business matters that do not raise any significant social policy considerations.

The fact that a proposal may touch upon potential public policy considerations does not preclude exclusion under Rule 14a-8(i)(7). This is a long-held position of the SEC and its staff. *See* 1998 Amendments; SLB 14A; SLB 14C; SLB 14E. The key to determining when a matter that ordinarily would be considered a responsibility of management is appropriate for a shareholder vote is whether the proposal focuses primarily on a matter of broad public policy versus matters related to the company's ordinary business operations. *See* 1998 Amendments, at *4; SLB 14E. Federal district courts and the SEC staff have consistently permitted exclusion of shareholder proposals where the proposal focused on ordinary business matters, even though it also related to a potential significant policy issue. *See, e.g.*, *Apache Corp. v. N.Y.C. Emps.' Ret. Sys.*, 621 F. Supp. 2d 444, 452 (S.D. Tex. 2008) (holding that proposal was excludable because it related to matters beyond employment discrimination); *Pfizer Inc.*, 2013 WL 6701966 (Feb. 18, 2014) (granting no-action relief under Rule 14a-8(i)(7) when the proposal requested that the board adopt healthcare reform principles specified in the proposal, noting in particular "that, although the proposal ask[ed] the company to adopt principles of health care reform, it advocate[d] specific legislative initiatives, including the repeal of specific laws and government mandates and the

enactment of specific tax deductions or tax credits that appear[ed] to relate to

Pfizer's business operations"), *reconsideration denied*, 2013 WL 6189162 (Mar. 5,

2014); *Mattel, Inc.*, 2012 WL 483197 (Feb. 10, 2012) (concurring with company

that proposal was excludable because the code of business practices it related to

had "a broad scope that cover[ed] several topics that relate to the Company's

ordinary business operations and are not significant policy issues"); *CIGNA Corp.*,

2010 WL 5409431 (Feb. 23, 2011) (granting no-action relief under Rule 14a-8(i)(7)

when, although the proposal addressed the potential significant policy issue of

access to affordable health care, it also asked CIGNA to report on expense

management, an ordinary business matter); *J.P. Morgan Chase & Co.*, 2010 WL

147293 (Mar. 12, 2010) (concurring with exclusion of proposal because "part of

the proposal addresses matters beyond the environmental impact of JPMorgan

Chase's project finance decisions"); *CVS Caremark Corp.*, 2008 WL 308201

(Jan. 31, 2008) (granting no-action relief under Rule 14a-8(i)(7) when the proposal

urged the board to adopt general principles for healthcare and urged the board to

report annually on how it was implementing such principles; because

implementation of the healthcare principles necessarily focused on the company's

management of its employee benefits, the proposal was excludable as relating to

ordinary business operations), *reconsideration denied*, 2008 WL 591014 (Feb. 29,

2008); *Capital One Financial Corp.*, 2005 WL 293305 (Feb. 3, 2005) (granting

no-action relief under Rule 14a-8(i)(7) when, although the proposal addressed the significant policy issue of outsourcing, it also asked the company to disclose information about how it manages its workforce, an ordinary business matter). *Compare United Technologies Corp.*, 2008 WL 308195 (Jan. 31, 2008) (denying no-action relief under Rule 14a-8(i)(7) when the proposal urged the board to adopt principles for health care reform but did not ask for a report on how the company was implementing such principles).

In this case, Trinity's proposal is not focused on a potential significant social policy. Assuming that gun sales qualifies as a significant social policy issue, Trinity's proposal is not confined to that issue. Rather, Trinity's proposal focuses more broadly on the CNG Committee's oversight and reporting responsibilities with respect to all product sales at Wal-Mart. Shareholders voting on Trinity's proposal would, therefore, be expressing a view on all Wal-Mart sales policies and standards, not just those related to gun sales. The District Court itself observed that "'[a]s Trinity acknowledges, the outcome of the Board's deliberations regarding dangerous products is beyond the scope of the Proposal." (A-19-20) As a result, Wal-Mart would have no way of discerning a clear shareholder view about gun sales from the voting results on Trinity's proposal. If the proposal were supported by shareholders, perhaps that should be viewed as meaning that Wal-Mart's shareholders wanted more scrutiny of gun sale policies and procedures. Or

perhaps it should be viewed as meaning that shareholders wanted more input into all of Wal-Mart's sales policies and procedures.  Given that the scope of Trinity's proposal encompasses all of Wal-Mart's sales policies and procedures, which clearly is an ordinary business matter, Trinity's proposal is properly excludable under Rule 14a-8(i)(7).

## II.    THE SEC AND ITS STAFF HAVE PROPERLY CONSTRUED THE APPLICATION OF THE ORDINARY BUSINESS EXCEPTION.

As explained above, the District Court's decision to require Wal-Mart to include Trinity's proposal in its 2015 proxy statement is contrary to the plain language of the ordinary business exception and the long-standing views and approach of the SEC and its staff.  The District Court erred in not deferring to those views.

An interpretation of an agency regulation by that agency, such as the SEC, is entitled to considerable deference by federal courts.  As the Supreme Court has explained, "[j]ust as we defer to an agency's reasonable interpretations of the statute when it issues regulations in the first instance, *see Chevron*, … the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force."  *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008).  The SEC's interpretation of the ordinary business exception, therefore, is controlling, unless the interpretation is "'plainly erroneous or inconsistent with

the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)); *Facchiano Constr. Co. v. U.S. Dep't of Labor*, 987 F.2d 206, 213 (3d Cir. 1993) ("[A]n administrative agency's interpretation of its own regulation receives even greater deference than that accorded to its interpretation of a statute.").

Moreover, although the SEC staff's interpretation was not binding on the District Court, there was a strong basis for the District Court to defer to its views on its ordinary business exception, particularly in light of the amount of time and resources the SEC and its staff have dedicated to developing its reasonable and consistent views over the last three decades, after many opportunities for public input and comment from the U.S. corporate and shareholder communities. Indeed, the SEC, its staff, many of the members of the U.S. corporate community, such as members of the Society, and shareholders have considered countless questions about the availability of the ordinary business exception. Consideration of these questions consumes significant time and attention by these parties. In the case of considerations of ordinary business exceptions by the SEC staff, there are multiple levels of review of these questions. (A-300, Declaration of Meredith B. Cross) In the corporate community, decisions about these questions also generally involve personnel from numerous departments, such as executive management, business operations, legal and investor relations, in addition to the board room. Companies,

as well as proponents of shareholder proposals, also often seek advice from outside legal counsel and other advisors. The product of the input and consideration by these many parties is a thoughtful and balanced application of the ordinary business exception.

Moreover, the District Court acknowledged that the SEC staff possessed vastly more expertise in the consideration of ordinary business exception questions when it denied Trinity's motion for a preliminary injunction. (A-108) And Wal-Mart's decision to rely on the ordinary business exception to exclude Trinity's proposal from its 2014 annual meeting proxy statement, with which the SEC staff concurred, was consistent with well over a thousand other similar decisions made by the SEC staff.[4] Wal-Mart cited several of these staff decisions to the District Court, but the District Court dismissed them because it believed that the proposals advanced in those letters were not comparable to Trinity's proposal. However, the SEC staff's position in those letters was applicable to the proposal at issue here,

---

[4] There have been approximately 1,700 requests (based on a LexisNexis search) submitted to the SEC staff since 1983 that sought the staff's concurrence of ordinary business exception decisions related to shareholder proposals that requested a variety of board actions. The SEC staff concurred with approximately 1,000 of these decisions, or approximately 59%, and disagreed with approximately 620 of these decisions, or approximately 36%. Certain of the requests were not decided by the staff for various reasons. These staff decisions appear to generally be consistent with the guidance the SEC issued in its 1983 release – focusing the decision on the subject matter of the proposal, not the corporate governance action requested.

and the District Court should have granted them more persuasive weight. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 254 (2d Cir. 2006) ("The SEC no-action letter does not bind us, but we find it persuasive."); *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399-401 (2008) (deferring to an informal agency interpretation because it was consistent with the agency's responsibilities and had bound staff members for over five years); *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) ("[T]he consistency of an agency's position is a factor in assessing the weight that position is due.").

The District Court also provided little, if any, rationale for its decision to overrule the SEC and its staff's historical view that merely implicating a potential significant social policy was not sufficient to overcome the presumption that ordinary business matters should not be subject to shareholder approval. The District Court likewise provided no rationale for its conclusion that sales of high capacity firearms by a retailer are focused on a "sufficiently significant social policy issue[]," the SEC's test for determining whether a proposal that relates to an ordinary business matter would be appropriate for a shareholder vote. *See* 1998 Amendments. Admittedly, gun violence in the U.S. continues to be the subject of intense debate. The focus of that debate recently, however, has generally been on the federal and state laws that apply to gun sales. A watershed decision by a court

to change a long-standing and rational precedent should be accompanied by a

clearly articulated basis for that conclusion.

### III.    FAILURE TO REVERSE THE DISTRICT COURT'S RULING WILL HAVE A NEGATIVE IMPACT ON U.S. CORPORATIONS.

The Society respectfully submits that a failure to reverse the District Court's

ruling will have a significant negative impact on both corporations and their

shareholders.  As explained above, the District Court broadly interpreted Rule

14a-8 to require inclusion of shareholder proposals in proxy statements – even if

they relate to a *subject matter* that is excludable – as long as the shareholder

artfully drafts the proposal to request that the board of directors take action with

respect to that subject matter.  In addition, the District Court interpreted the social

policy exception to require inclusion of shareholder proposals that merely involve,

rather than focus on, significant policy issues.  In doing so, the District Court

considerably expanded the availability of Rule 14a-8 beyond the SEC's intent in

enacting the Rule.

Rule 14a-8 was narrowly tailored to balance the SEC's desire to promote

shareholder democracy with the bedrock principle of state corporation law that

places the responsibility and discretion for managing a corporation in the hands of

the board of directors.  The ordinary business exception is an important factor in

maintaining that balance.  And any modification of that balance ought to be

accomplished through the SEC's rule-making process.  Were the Court to uphold the District Court's decision, it would upset the careful balance that the SEC struck, to the detriment of corporations and their shareholders, by causing corporations to become inundated with proposals from shareholders seeking to take advantage of the District Court's expansive view of Rule 14a-8.

Moreover, it is no small matter that the District Court's decision will encourage an increase in shareholder proposals.  Addressing a shareholder proposal can be a time-consuming and expensive endeavor.[5]  When a corporation receives a proposal from a shareholder to be included in its materials for its annual shareholder meeting, both management and the board of directors must spend significant time and resources to consider the proposal and determine whether it should be included, acted upon, or excluded.  If management and the board believe that the proposal should be excluded, they must then determine whether to seek the SEC's guidance in the form of a no-action letter.  To obtain a no-action letter, they must submit, in writing, the reasons why they believe they are entitled to exclude the proposal and authority supporting their position.  Furthermore, as the District Court itself acknowledged, this must all occur within a short period of time.

---

[5]  The Society recently conducted an informal, anonymous poll of their membership and found that, in the last five years, companies that have received proposals and have sought to exclude them on Rule 14a-8(i)(7) grounds spent anywhere from 10-40 hours of internal staff time and another $9,000 to $50,000 on outside counsel time per proposal.

(A-13)  Thus, the District Court's unrestricted interpretation of Rule 14a-8 risks

flooding corporations with shareholder proposals and disrupting directors' ability to

effectively manage their corporations' other business affairs.

In addition, the over-inclusion of proposals in proxy materials – particularly

those that address matters falling within the ambit of the board and management's

discretion – can negatively impact shareholders by creating cluttered proxy

statements that will lead to shareholder confusion and, ultimately, less shareholder

participation.  Indeed, federal courts have recognized that proxy materials can be

so voluminous that they cease to be of value to shareholders.  *See, e.g.*, *TSC Indus.,*

*Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49 (1976) (holding that standard for

materiality of disclosures in proxy statements should not be so low that it causes

management "simply to bury the shareholders in an avalanche of trivial

information" which would "hardly [be] conducive to informed decisionmaking").

And asking shareholders to consider too many proposals could deter them from

voting on matters that require their approval, for instance, the annual election of

directors.

Moreover, a corporation's decision to exclude a shareholder's proposal from

its proxy materials does not prevent that shareholder from communicating his/her

concerns to the corporation's board or management.  If a shareholder, such as

Trinity, wants to suggest that Wal-Mart's management and board consider changes

25

to the company's sales practices, there are avenues other than Rule 14a-8 to do so. Indeed, Society members are at the forefront of advancing best practices in corporate governance matters, such as facilitating ways for shareholders to engage with companies and their boards.

In short, the negative impact that an increase in shareholder proposals could have on corporations and their shareholders counsels against upholding the District Court's decision.

## **CONCLUSION**

For all of the foregoing reasons, the Court should reverse the District Court's ruling that Wal-Mart is required to include the shareholder proposal in its annual proxy statement.

DATED:    Wilmington, Delaware
            January 21, 2015

                            Respectfully submitted,

                        /s/ Paul J. Lockwood

Darla C. Stuckey                Paul J. Lockwood
dstuckey@governanceprofessionals.org  paul.lockwood@skadden.com
Society of Corporate Secretaries    Elisa M.C. Klein
   and Governance Professionals, Inc.  elisa.klein@skadden.com
240 West 35th Street            Skadden, Arps, Slate,
New York, New York  10001       Meagher & Flom LLP
(212) 681-2000                 920 North King Street
                         P.O. Box 636
                         Wilmington, Delaware  19899
                         (302) 651-3000

                         Brian V. Breheny
                         brian.breheny@skadden.com
                         Hagen J. Ganem
                         hagen.ganem@skadden.com
                         Skadden, Arps, Slate,
                          Meagher & Flom LLP
                         1440 New York Avenue, N.W.
                         Washington, D.C.  20005-2111

                         *Attorneys for Amicus Curiae the*
                         *Society of Corporate Secretaries and*
                         *Governance Professionals, Inc.*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the United

States Court of Appeals for the Third Circuit.


DATED:     Wilmington, Delaware
           January 21, 2015


                                        /s/ Paul J. Lockwood
                                        Paul J. Lockwood

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,483 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

3.    The text of the electronic brief, filed in accordance with Local Appellate Rule 31.1, is identical to the text in the paper copies.

DATED:    Wilmington, Delaware
          January 21, 2015

                                    /s/ Paul J. Lockwood
                                    Paul J. Lockwood

## CERTIFICATE OF FILING AND SERVICE

I, Paul J. Lockwood, hereby certify that, on January 21, 2015, the

Motion for Leave to File *Amicus Curiae* Brief and the Brief for the Society of

Corporate Secretaries and Governance Professionals as *Amicus Curiae* in Support

of Defendant-Appellant were electronically filed with the Clerk of the United

States Court of Appeals for the Third Circuit using CM-ECF which will send

notification to the registered participants including:

Joel E. Friedlander, Esquire
FRIEDLANDER & GORRIS, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, Delaware  19801
jfriedland@friedlandergorris.com

Philip A. Rovner, Esquire
Matthew E. Fischer, Esquire
Angela C. Whitesell, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware  19899-0951
provner@potteranderson.com
mfischer@potteranderson.com
awhitesell@potteranderson.com

Theodore J. Boutrous Jr., Esquire
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
tboutrous@gibsondunn.com

Adam H. Offenhartz, Esquire
Aric H. Wu, Esquire
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166-0193
aoffenhartz@gibsondunn.com
awu@gibsondunn.com

I further certify that I caused the required number of copies of Motion

for Leave to File *Amicus Curiae* Brief and the Brief for the Society of Corporate

Secretaries and Governance Professionals as *Amicus Curiae* in Support of

Defendant-Appellant to be filed with the Clerk's Office of the United States Court

of Appeals for the Third Circuit, via express mail.


DATED:     Wilmington, Delaware
           January 21, 2015

                                          /s/ Paul J. Lockwood
                                          Paul J. Lockwood