No. 14-4764

## IN THE

# United States Court of Appeals
## FOR THE THIRD CIRCUIT

_____

TRINITY WALL STREET,

*Plaintiff-Appellee*,

v.

WAL-MART STORES, INC.,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Delaware
Case No. 14-cv-0405 (Hon. Leonard P. Stark)

_____

## BRIEF OF WASHINGTON LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT, URGING REVERSAL

_____

Cory L. Andrews
Richard A. Samp
WASHINGTON LEGAL
  FOUNDATION
2009 Massachusetts Ave., N.W.
Washington, DC 20036
(202) 588-0302

*Counsel for Amicus Curiae*

January 21, 2015

## RULE 26.1 CORPORATE DISCLOSURE STATEMENTS

The Washington Legal Foundation (WLF) is a non-profit, tax-exempt corporation organized under Section 501(c)(3) of the Internal Revenue Code. WLF has no parent corporation, issues no stock, and no publicly held company has an ownership interest in WLF.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ...........................................1

STATEMENT OF THE CASE..................................................................................3

SUMMARY OF ARGUMENT ...............................................................................7

ARGUMENT .............................................................................................................9

I.    Trinity's Proposal Is Excludable Under Rule 14a-8(i)(7)'s Ordinary Business Exclusion .........................................................................................9

II.   Trinity's Proposal Is Excludable as Vague and Indefinite Under Rule 14a-8(i)(3)..................................................................................................15

     A.    By Narrowly Construing the Proposal so as to Deny Shareholders Authority to Regulate Sales of Any Specific Product, the District Court Left the Board with Insufficient Guidance Regarding What the Proposal Requires .............................17

     B.    Shareholders Lack Assurance that if the Proposal Is Adopted, Any Actions by the Committee Will Be Substantially Similar to the Actions Envisioned by Voting Shareholders .................................23

III.  The District Court's Ruling—if Allowed to Stand—Would Inject Even Greater Uncertainty Into Corporate Proxy Decision-Making..............25

CONCLUSION ........................................................................................................28

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Amgen, Inc. v. Conn. Ret. Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) ............................................................................1

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ............................................................................1

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................................1

*N.Y.C. Emps.' Ret. Sys. v. Brunswick Corp.*,
  789 F. Supp. 144 (S.D.N.Y. 1992) ........................................................23

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  No. 13-435 (U.S. argued Nov. 3 2014) ...................................................1

**REGULATIONS:**

17 C.F.R. § 240.14a-8 ........................................................................*passim*

17 C.F.R. § 240.14a-8(i) ....................................................................3, 9

17 C.F.R. § 240.14a-8(i)(3) ...............................................................*passim*

17 C.F.R. § 240.14a-8(i)(7) ...............................................................*passim*

17 C.F.R. § 240.14a-8(i)(9) ................................................................26

17 C.F.R. § 240.14a-8(j) ....................................................................4

**SEC RELEASES & STAFF BULLETINS:**

SEC Release No. 34-12598,
  1976 WL 160140 (July 7, 1976) ............................................................12

**Page(s)**

SEC Release No. 34-12999,
  1976 WL 160347 (Nov. 22, 1976)........................................................................12

SEC Release No. 34-20091,
  1983 WL 33272 (Aug. 16, 1983).........................................................................12

SEC Release No. 34-39093,
  1997 WL 578696 (Sept. 18, 1997)...........................................................7, 12, 27

SEC Release No. 23200,
  1998 WL 254809 (May 21, 1998) .......................................................................10

SEC Staff Legal Bulletin No. 14B,
  2004 WL 3711971 (Sep. 15, 2004)...............................................................16, 19

SEC Staff Legal Bulletin No. 14E,
  2009 WL 4363205 (Oct. 27, 2009)................................................................12, 14

**SEC STAFF NO-ACTION LETTERS:**

*Dean Foods Co.*,
2007 WL 754960, at *1 (Mar. 9, 2007) .................................................................13

*Dillard's, Inc.*,
  2012 WL 173764 (Feb. 27, 2012).........................................................................13

*Exxon Corp.*,
  1992 WL 18818 (Jan. 29, 1992) .....................................................................22, 24

*Fuqua Industries, Inc.*,
  1991 WL 178684 (Mar. 12, 1991) ........................................................................24

*Gen. Elec. Co.*,
  2010 WL 5067922 (Jan 7, 2011) ..........................................................................11

*Rite Aid Corp.*,
  2009 WL 829472 (Mar. 26, 2009) ........................................................................13

**Page(s)**

*Sempra Energy*,
  2011 WL 6425347 (Jan. 12, 2012) ........................................................15

*Staples, Inc.*,
  2012 WL 748854 (Mar. 5, 2012) ...........................................................22

*The Boeing Co.*,
  2011 WL 757455 (Mar. 2, 2011) ...........................................................24

*The Home Depot, Inc.*,
  2008 WL 257307 (Jan. 25, 2008) ........................................... 11, 17-18

*The Western Union Co.*,
  2011 WL 916163 (Mar. 4, 2011) ...........................................................14

*The Western Union Co.*,
  2013 WL 368364 (Mar. 14, 2013) .........................................................22

*Wal-Mart Stores, Inc.*,
  2008 WL 5622715 (Feb. 27, 2008)...................................................11, 17

*Walt Disney Co.*,
  2010 WL 4312760 (Dec. 22, 2010) ........................................................11

## OTHER AUTHORITIES:

*Comments of Wash. L. Found. on Issues Raised at the Proxy Advisory Firm
  Roundtable* (File No. 4-4670, Jan. 10, 2014)..........................................2

*Complaint of Wash. L. Found. Requesting Investigation of Short-Selling*
  (SEC Jan. 21, 2003) ...............................................................................2

Andrew Ackerman & Joann S. Lublin, THE WALL STREET JOURNAL,
  *Whole Foods Dispute Prompts SEC Review of Corporate Ballots*,
  Jan. 19, 2015 ........................................................................................25

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The Washington Legal Foundation (WLF) is a non-profit, public-interest law firm and policy center with supporters in all 50 States. WLF devotes a substantial portion of its resources to defending and promoting free enterprise, individual rights, a limited, accountable government, and the rule of law. To that end, WLF regularly appears as *amicus curiae* before this and other federal courts in cases related to the proper scope of federal securities laws. In particular, WLF has litigated in support of corporate shareholders opposing abusive securities class-action litigation that imposes substantial costs on both the American economy and the shareholders who invest in our nation's publicly traded corporations. *See, e.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, No. 13-435 (U.S. argued Nov. 3, 2014); *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *Amgen, Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184 (2013); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010).

Through its Investor Protection Program, WLF seeks to protect employees, consumers, pensioners, and investors from stock losses caused by stock manipulation and abusive litigation practices—as well as losses caused by ill-

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c), *amicus* WLF states that no counsel for any party authored this brief in whole or in part, and that no person or entity, other than WLF and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief. All parties have consented to the filing of this brief.

conceived proxy proposals and the distracting proxy battles they generate.  WLF has petitioned the Securities and Exchange Commission (SEC) to crack down on manipulative trading schemes such as "naked" short-selling of securities, an activity that often causes substantial harm to shareholders. *See Complaint of Wash. L. Found. Requesting Investigation of Short-Selling* (SEC Jan. 21, 2003).  Most recently, WLF filed formal comments with the SEC regarding the use of proxy advisory services firms by fiduciaries such as investment advisors and institutional investors. *See Comments of Wash. L. Found. on Issues Raised at the Proxy Advisory Firm Roundtable* (File No. 4-4670, Jan. 10, 2014).

WLF is deeply concerned about the enormous uncertainty that the district court's decision in this case—if allowed to stand—would create for all publicly held companies.  WLF believes the decision below upsets long-settled expectations about the meaning of the proxy exclusions at issue here and exacerbates the growing uncertainty that surrounds the proxy ballot process, thereby substantially raising the costs of proxy voting for all public companies.  WLF opposes the inclusion of frivolous and inappropriate Rule 14a-8 shareholder proposals in proxy statements at the company's expense—and, therefore, at the expense of every other shareholder.  Although a shareholder may prefer to use the Rule 14a-8 mechanism because it is less expensive and more expedient than preparing and distributing independent proxy materials, a shareholder may not do so unless the proposal fully

satisfies Rule 14a-8's requirements.  In this case, Trinity Wall Street is perfectly free to distribute its own proxy materials at its own expense in order to solicit votes for its proposal.  But where, as here, such proposals concern matters relating to a corporation's ordinary business operations and are otherwise vague and indefinite, WLF opposes any effort to foist proxy costs onto all other shareholders.

## STATEMENT OF THE CASE

The world's largest retailer, Appellant Wal-Mart Stores, Inc. (Wal-Mart) sells hundreds of thousands of products each year in its more than 5,000 discount department and warehouse stores. A-250.  Like many publicly traded companies, Wal-Mart routinely receives proposals from shareholders to be included in the company's proxy materials pursuant to SEC Rule 14a-8. *Id.*  Over the last five years, Wal-Mart has included 21 such shareholder proposals in its proxy materials. *Id.*  Rule 14a-8 provides a means by which a shareholder owning a specified stake in the company may submit a proposal for inclusion in the company's proxy statement. *See* 17 C.F.R. § 240.14a-8.  In all cases, the proposal may be excluded by the company if it fails to satisfy the Rule's procedural requirements or falls within one of the Rule's thirteen exclusions. *See* 17 C.F.R. § 240.14a-8(i).

On December 18, 2013, Appellee Trinity Wall Street (Trinity), a shareholder of Wal-Mart, submitted a Rule 14a-8 proposal for inclusion in Wal-Mart's 2014 proxy materials (the Proposal). A-266.  The Proposal asked Wal-Mart's Board of

Directors to amend the Compensation, Nominating and Governance Committee's charter to provide for "oversight" concerning the "formulation and implementation" of "policies and standards that determine whether or not the Company should sell a product that . . . has the substantial potential to impair the reputation of the Company," including products that endanger "public safety and well-being" or that are potentially offensive to "family and community values." A-268.

As required by SEC Rule 14a-8(j), *see* 17 C.F.R. § 240.14a-8(j), Wal-Mart notified the SEC and Trinity that it intended to omit the Proposal from its 2014 proxy materials. A-271.  In a detailed letter requesting no-action relief, Wal-Mart explained that the Proposal fell within the exclusion provided by Rule 14a-8(i)(7) because it concerned matters relating to Wal-Mart's ordinary business operations, including decisions about which products should be offered for sale by the company. A-273 to A-276.  In response, Trinity submitted six pages of "analysis" arguing why the Proposal was not excludable and requesting the SEC to deny Wal-Mart's request for no-action relief. A-279 to A-285.

On March 20, 2014, the SEC staff issued a no-action letter to Wal-Mart stating that it agreed with Wal-Mart's view that the Proposal was excludable. A-287 to A-289.  Noting that the Proposal "relates to the products and services offered for sale by the company," the SEC staff explained that proposals

4

"concerning the sale of particular products and services are generally excludable under Rule 14a-8(i)(7)." *Id.*  Accordingly, the SEC staff advised Wal-Mart that it would not recommend an enforcement action if Wal-Mart omitted the Proposal from its 2014 proxy materials. *Id.*

On April 1, 2014, Trinity filed this lawsuit seeking to preliminarily enjoin Wal-Mart from printing, filing, or distributing its 2014 proxy materials without the Proposal. A-49 to A-63.  Following expedited briefing and hearing, the district court denied Trinity's motion for a preliminary injunction, citing Rule 14a-8(i)(7)'s "ordinary business exclusion" and concluding that Trinity had not satisfied its burden to show a likelihood of success on the merits. A-24.  On April 23, 2014, Wal-Mart filed its 2014 proxy materials with the SEC, but did not include Trinity's Proposal. A-122.

Trinity amended its complaint, seeking declarations that (1) Wal-Mart's exclusion of the Proposal from its 2014 proxy materials violated § 14(a) of the Securities Exchange Act of 1934 (the 1934 Act) and (2) Wal-Mart's anticipated exclusion of the Proposal from its 2015 proxy materials would violate § 14(a) of the 1934 Act. A-244 to A-246.  Trinity also sought injunctive relief compelling Wal-Mart to include the Proposal in its 2015 proxy materials. *Id.*

On November 26, 2014, the district court issued an order granting summary judgment for Trinity on Count I of the Amended Complaint, but dismissing Count

II as unripe because Trinity had not yet drafted or submitted its 2015 proposal. A-2 to A-29.  Although the district court had preliminarily concluded that Trinity was unlikely to prevail on the merits, the district court held that Trinity's Proposal was improperly excluded from Wal-Mart's 2014 proxy materials because the Proposal does not "dictate to management" but rather "seeks to have Wal-Mart's ***Board*** oversee the development and effectuation of Wal-Mart policy." A-19 (emphasis in original).   According to the district court, even though the Proposal sought to require a board committee to address whether or not Wal-Mart should sell certain products, "Trinity's 2014 Proposal is best viewed as dealing with matters that are not related to Wal-Mart's ordinary business operations" because it "implicates significant policy issues." A-19.   Finally, the district court rejected Wal-Mart's contention that the Proposal is excludable under Rule 14a-8(i)(3) as vague and indefinite, concluding that shareholders voting on the Proposal would be able "to determine with reasonable certainty what the Committee needs to do." A-22 to A-24.

The district court's December 8, 2014 final judgment declared that "Trinity's proposal should not have been excluded from Wal-Mart's 2014 proxy materials" and permanently enjoined Wal-Mart from excluding Trinity's proposal from its 2015 proxy materials. A-31.

## SUMMARY OF ARGUMENT

On its face, the Proposal directs the board to act on an ordinary business matter.  Specifically, the Proposal directs Wal-Mart's Compensation, Nominating and Governance Committee to "[p]rovid[e] oversight concerning the formulation and implementation of, and the public reporting of the formulation and implementation of, policies and standards that determine whether or not the Company should sell" products that have a "substantial potential to impair the reputation of the Company." A-268.  By doing so, the Proposal contravenes the important distinction the SEC has drawn between the "spheres of authority for the board of directors on one hand, and the company's shareholders on the other," a distinction that has long underscored the ordinary business exception. SEC Release No. 34-39093, 1997 WL 578696 (Sept. 18, 1997).

Not only does the Proposal's subject matter concern products that Wal-Mart sells, but it improperly focuses on the company's evaluation of risks and benefits. Matters concerning the evaluation of specific risks and benefits, the SEC has long recognized, lie at the very heart of Rule14a-8(i)(7)'s ordinary business exception. Here, Trinity's Proposal does not address any significant policy issue, but instead implicates only the internal considerations, financial consequences, impact, costs and benefits arising from the products that Wal-Mart offers for sale.  Such proposals, contrary to the district court's conclusion, do not raise significant policy

7

issues, but instead delve into the ordinary conduct of business.

The Court should reverse the decision below for the additional reason that the Proposal's vagueness renders it excludable under Rule 14a-8(i)(3).  Indeed, the district court's repeated efforts to make a virtue of the Proposal's indefiniteness— whereby the court stressed that the Proposal should not be deemed to deal with a matter relating to Wal-Mart's "ordinary business operations" precisely because it grants the Board such broad discretion in determining whether to adopt any new policies related to product sales—serve only to underscore why the Proposal is overly vague.

Rule 14a-8(i)(3) authorizes exclusion where, as here, neither the shareholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires.  The Proposal contains numerous ambiguous terms that, as the district court explicitly conceded in at least one instance, have numerous plausible interpretations.  For example, the Proposal fails to define the "family and community values" it has in mind, or which of those values are "integral" to promotion of the Wal-Mart brand.  Nor does it explain how many people must find a product offensive for the Committee to conclude that the product is considered offensive "by many."  Similarly, the Proposal fails to provide any guidance regarding how to measure Wal-Mart's "reputation or how to decide

whether the sale of a given product has "the substantial potential to impair" that reputation. Accordingly, shareholders face the prospect of voting on a proposal that they conclude has one meaning, only to discover—following stockholder approval—that Wal-Mart's Board has adopted a plausible, alternative meaning. Rule 14a-8(i)(3) grants shareholders the right to insist, before any proposal is included in proxy materials, that the proposal's meaning be clear.

## ARGUMENT

### I. Trinity's Proposal Is Excludable Under Rule 14a-8(i)(7)'s Ordinary Business Exclusion

Established in the 1940s and amended on several occasions since, Rule 14a-8 constitutes a narrowly-defined exception to the general rule that shareholders must prepare and distribute their own proxy materials, rather than utilize the company's materials. Even where Rule 14a-8's procedural requirements have been satisfied, a shareholder proposal may be excluded by the company if it falls within one of the Rule's thirteen exclusions. *See* 17 C.F.R. § 240.14a-8(i).

Rule 14a-8(i)(7) permits a company to exclude any shareholder proposal that merely "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). The SEC has long recognized that Rule 14a-8(1)(7) provides two alternative grounds for excluding a proposal. First, a proposal is excludable if "the subject matter of the proposal" concerns matters within the company's "day-to-day" business operations, including (for example)

9

"decisions on production quality and quantity" or "the retention of suppliers." SEC Release No. 23200, 1998 WL 254809, at *4 (May 21, 1998).  Second, a proposal is excludable if the proposal seeks to "micro-manage" the company by "probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment," including (for example) seeking to impose "specific time-frame or methods for implementing complex policies." *Id.* at *4-5.

In granting summary judgment for Trinity, the district court emphasized that the Proposal did not "dictate to management specific products that Wal-Mart could or could not sell" but rather sought "to have Wal-Mart's ***Board*** oversee the development and effectuation of Wal-Mart policy." A-19 to A-20 (emphasis in original).  But this observation is beside the point.  Indeed, Wal-Mart never argued that the Proposal sought to micro-manage the company.  Instead, Wal-Mart's summary-judgment briefing focused on the fact that the Proposal's underlying "subject matter" relates to "the products offered for sale by the company." *See* District Court Dkt. 48 at 15-19.  And the SEC staff agreed, explaining in its no-action letter that the Proposal is excludable under Rule 14a-8(i)(7) because it "relates to the products and services offered for sale by the company." A-288.  Rather than confront the merits of this "subject-matter" argument (or the ample SEC precedent supporting it), the district court chose to address—in order to knock

10

down—a straw-man argument that Wal-Mart never even raised. *See* A-19 to A-20.

The interpretation of Rule 14a-8(i)(7) advanced by Wal-Mart in this case is hardly idiosyncratic. The SEC staff has consistently and repeatedly granted no-action relief where a Rule 14a-8 shareholder proposal concerns the products or services that a company offers for sale. *See, e.g., Gen. Elec. Co.*, 2010 WL 5067922, at *1 (Jan 7, 2011) (granting no-action relief because "the proposal appears to relate to the emphasis that the company places on the various products and services it offers for sale"); *Walt Disney Co.*, 2010 WL 4312760, at *1 (Dec. 22, 2010) (granting no-action relief because "the proposal relates to the policies and procedures regarding the products and services that the company offers"); *Wal-Mart Stores, Inc.*, 2008 WL 5622715, at *11, 6-7 (Feb. 27, 2008) (granting no-action relief where the proposal requested a board summary of "which, if any, product lines and categories sold in Wal-Mart stores may be affected by . . . product safety concerns"); *The Home Depot, Inc.*, 2008 WL 257307, at *1 (Jan. 25, 2008) (granting no-action relief because the proposal "relat[es] to [the company's] ordinary business operations (*i.e.*, sale of particular products)").

The district court mistakenly focused on the fact that the "task" of Trinity's proposal is "the formulation and implementation of policy," which "would be felt at the Board level." A-20. But it is the underlying subject matter of a proposal, not the form of the action requested, that determines whether a proposal is

excludable. *See, e.g.,* SEC Staff Legal Bulletin No. 14E, 2009 WL 4363205, at *2 (Oct. 27, 2009) ("[I]n those cases in which a proposal's underlying subject matter involves an ordinary business matter to the company, the proposal generally will be excludable under Rule 14a-8(i)(7)."); SEC Release No. 34-20091, 1983 WL 33272, at *7 (Aug. 16, 1983) (explaining that a shareholder proposal is excludable if its "subject matter" concerns "a matter of ordinary business"). The Proposal thus effaces the crucial distinction the SEC has drawn between the "spheres of authority for the board of directors on one hand, and the company's shareholders on the other," a distinction that has long underscored the ordinary business exception. SEC Release No. 34-39093, 1997 WL 578696 (Sept. 18, 1997).

Indeed, the SEC has squarely rejected a proposed construction of Rule 14a-8(i)(7) by which "matters that would be handled by management personnel without referral to the board of directors generally would be excludable . . . but matters that would require action by the board would not be." SEC Release No. 34-12598, 1976 WL 160140, at *8 (July 7, 1976); SEC Release No. 34-12999, 1976 WL 160347, at *11 (Nov. 22, 1976). Such an approach, as the SEC has made clear, "raises form over substance and renders the provisions of [Rule 14a-8(i)(7)] largely a nullity." SEC Release No. 34-20091, 1983 WL 33272, at *7 (Aug. 16, 1983).

Because the subject of Trinity's Proposal unquestionably concerns the products that Wal-Mart sells, it was properly excluded and the judgment below

should be vacated. *See, e.g., Dillard's, Inc.*, 2012 WL 173764, at *15 (Feb. 27, 2012) (concurring in a retailer's exclusion of a proposal "to develop a plan . . . to phase out the sale of fur or tobacco products"); *Rite Aid Corp.*, 2009 WL 829472, at *1 (Mar. 26, 2009) (concurring in a retailer's exclusion of a proposal requesting the board to report on the company's response to regulatory and public pressure to end the sale of tobacco products).

Contrary to the district court's conclusion, proposals concerning a company's assessment of the risks and benefits of aspects of its business operations do not raise significant policy issues, contrary to the district court's conclusion, but instead delve into the ordinary conduct of business. For example, the SEC staff has concurred in the exclusion of a proposal "to protect the company's brand and reputation" by requesting board review of the company's policies for selling organic dairy products, concluding that such matters relate to the company's "ordinary business operations (*i.e.*, customer relations and decisions relating to supplier relationships)." *Dean Foods Co.*, 2007 WL 754960, at *1 (Mar. 9, 2007).

Although, standing alone, "[t]he fact that a proposal would require an evaluation of risk will not be dispositive of whether the proposal may be excluded," the SEC staff "will consider whether the underlying subject matter of the risk evaluation involves a matter of ordinary business to the company." SEC

Staff Legal Bulletin No. 14E, 2009 WL 4363205, at *2 (Oct. 27, 2009). And where, as here, "a proposal's underlying subject matter involves an ordinary business matter to the company, the proposal generally will be excludable under Rule 14a-8(i)(7)." *Id.*

Indeed, the SEC has explained that Rule 14a-8(i)(7) often bars such shareholder efforts even when the efforts are focused on risk assessments *by the board of directors.* Thus, in *The Western Union Co.*, 2011 WL 916163, at *1 (Mar. 4, 2011), the SEC granted no-action relief where the proposal directed the board to establish a risk committee charged with reporting on how particular risks were being addressed. The SEC staff explained that Rule 14a-8(i)(7) required exclusion because, although shareholder proposals are permitted to provide for the creation of a risk-assessment committee, shareholders may not direct the committee to report on the monitoring and control of particular risks where "the underlying subject matters of these risks appear to involve ordinary business matters." *Id.*

Trinity's Proposal requests board action concerning "whether or not the Company should sell" products that have a "substantial potential to impair the reputation of the Company." A-268. The Proposal does not address any significant policy issue, but instead implicates only the internal considerations, financial consequences, impact, costs (reputational and otherwise) and benefits arising from

the products that Wal-Mart offers for sale.  Accordingly, the Proposal is excludable under Rule 14a-8(i)(7) because it improperly focuses on Wal-Mart's assessment of risks and benefits. *See, e.g., Sempra Energy*, 2011 WL 6425347, at *1 (Jan. 12, 2012) (granting no-action relief where "the proposal requests the board to conduct an independent oversight of Sempra's management of particular risks" and "the underlying subject matter of these risks appears to involve ordinary business matters").

## II.    Trinity's Proposal Is Excludable Because It Is Vague and Indefinite Under Rule 14a-8(i)(3)

In ruling that the Proposal did not relate to Wal-Mart's ordinary business operations—and thus was not subject to exclusion under SEC Rule 14a-8(i)(7)— the district court relied heavily on its conclusion that the Proposal did not require Wal-Mart's Board to adopt any particular policy, or even to *consider* adopting a policy with respect to any specific product offered for sale by the corporation. *See, e.g.,* A-20 ("Any direct impact of adoption of Trinity's Proposal would be felt at the Board level; it would then be for the Board to determine what, *if any*, policy should be formulated and implemented.") (emphasis added); A-21 (stating that the Proposal "does not dictate what products should be sold or how the policies regarding sales of certain types of products should be formulated or implemented" by the Board).

But by concluding that the Proposal was not subject to Rule 14a-8(i)(7) exclusion precisely because it left implementation of the Proposal to the virtually unlimited discretion of the Board, the district court unwittingly demonstrated that the Proposal is also subject to exclusion under Rule 14a-8(i)(3) because it is vague and indefinite. A shareholder proposal is subject to exclusion under Rule 14a-8(i)(3) if (when read in conjunction with the supporting statement) it is "so inherently vague or indefinite that neither the shareholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires." SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *4 (Sep. 15, 2004) ("SLB 14B"). If, as the district court concluded, the Proposal leaves it up to the Board to determine whether and how to adopt specific policies, then the Proposal cannot satisfy Rule 14a-8(i)(3)'s "reasonable certainty" requirement.

The Proposal is replete with vague terms—*e.g.*, products that "would reasonably be considered by many offensive to the family and community values integral to the Company's promotion of its brand"—whose meaning cannot be ascertained with "reasonable certainty" by either the Board or Wal-Mart's shareholders. The supporting statement suggests that Trinity anticipates that, if the Proposal were adopted, the Board's Compensation, Nominating and Governance

Committee ("the Committee") would promulgate a policy/standard applicable to a determination regarding whether to sell one particular product to which Trinity specifically objects.

But given that Wal-Mart sells hundreds of thousands of different products, the Committee cannot be expected to adopt policies directly applicable to more than a minute fraction of those products. Yet, the Proposal provides no meaningful guidance for singling out products to which the new policies/standards would be applicable. Indeed, given the broad discretion that the district court determined that the Proposal grants to the Committee, it is unclear whether the Committee even would be expected to establish a policy applicable to the specific product sales to which Trinity objects. Nor will Wal-Mart have the discretion to tweak the Proposal's language to eliminate its inherent vagueness: unlike many shareholder proposals, Trinity's Proposal specifies the precise language that Wal-Mart must use in amending the committee's charter.

### A. By Narrowly Construing the Proposal so as to Deny Shareholders Authority to Regulate Sales of Any Specific Product, the District Court Left the Board with Insufficient Guidance Regarding What the Proposal Requires

As noted above, the SEC has consistently concurred with corporate retailers' decisions to exclude, under Rule 14a-8(i)(7), shareholder proposals that seek to influence decisions to sell specific products. *See, e.g., Wal-Mart Stores, Inc.*, 2008 WL 5622715, at *1 (Feb. 27, 2008); *The Home Depot, Inc.*, 2008 WL 257307, at

*1 (Jan. 25, 2008). The district court did not challenge that understanding of Rule 14(a)-8(i)(7). *See* A-20 (stating that Rule 14a-8(i)(7) likely barred efforts by shareholders "to dictate to management specific products that Wal-Mart could or could not sell").

The district court concluded, however, that Rule 14a-8(i)(7) is inapplicable here because the Proposal is not product-specific but rather merely directs "the formulation and implementation of policy" by the Committee. A-20. "It would then be for the Board to determine what, if any, policy should be formulated and implemented," the court explained. *Id.* But by making a virtue of the Proposal's indefiniteness—indeed, by stressing that the Committee might properly determine that the appropriate course of action was to formulate *no* policies—the district court highlighted the Proposal's vagueness and starkly illustrated why the Proposal is excludable under Rule 14a-8(i)(3).

The Proposal does not direct the Committee to provide oversight and reporting with respect to all risks that might arise from Wal-Mart's product sales. Rather, it directs the Committee to provide oversight and reporting with respect to the sale of three categories of products:

(1) a product that "especially endangers public safety and well-being";

(2) a product that "has the substantial potential to impair the reputation of the company; and/or

(3) a product that "would reasonably be considered by many offensive

18

> to the family and community values integral to the Company's
> promotion of its brand."

A-272.

In other words, the Proposal directs the Committee to sift through the hundreds of thousands of separate products sold world-wide by Wal-Mart, identify the subset of products that fall within one or more of the three enumerated categories, and then consider whether to establish "policies and standards that determine whether or not the Company should sell those products." *Id.* WLF deems it self-evident, in light of the numerous vague terms used by the Proposal to describe the subset of products subject to its proposed directive, that the Committee would be unable to determine with any reasonable certainty exactly what actions or measures the Proposal required—and thus that the Proposal is excludable under Rule 14a-8(i)(3).[2]

For example, the third product category requires the Committee to identify products "that would reasonably be considered by many to be offensive to the family and community values integral to the Company's promotion of its brand." But the Proposal fails to explain the "family and community values" it has in mind,

---

[2] Rule 14a-8(i)(3) states that a proposal is excludable if "the proposal or supporting statement is contrary to any of the Commission's proxy rules, including § 240.14a-9, which prohibits materially false or misleading statements in proxy solicitation materials." The SEC has consistently interpreted that prohibition as encompassing proxy solicitation materials that are "inherently vague or indefinite." *See, e.g.,* SLB 14B at *4.

or which of those values might be deemed "integral" to promotion of the Wal-Mart brand.  Nor does it explain who and how many people must find a product offensive (*e.g.,* a majority of U.S. citizens, a majority of regular Wal-Mart shoppers, more than 10% of such shoppers) for the Committee to conclude that the product is considered offensive "by many."  Similarly, with respect to the second category of products, the Proposal fails to provide any guidance regarding how to measure Wal-Mart's "reputation" (*e.g.*, among regular Wal-Mart customers or within a broader population) or how to decide whether the sale of a product is likely to "impair" that reputation.  With respect to the first category of products, the Proposal fails to define "public well-being" or explain how to determine whether a product "especially endangers public . . . well-being."  In the absence of further guidance, the Committee lacks "reasonable certainty" regarding the products for which it is being directed to provide oversight.

Trinity argued below that the Proposal is not overly vague because "[t]here can be no dispute that Wal-Mart's Board knows what values are integral to its brand."  *See* District Court Dkt. 51 at 14.  But Trinity cited no evidence to support that assertion, other than to cite random statements by Wal-Mart officials expressing support for "family and community."  *Id.* at 14 n.9.  Quite obviously, such statements of support for American families and communities do not constitute evidence that Wal-Mart can readily comprehend what the Proposal

means when it refers to "family and community values integral to the Company's promotion of its brand."

> The district court conceded that:
>
> > Wal-Mart is undoubtedly correct that the "broad variety of products offered by Wal-Mart and the numerous customers, employees, and communities around the world with whom Wal-Mart works" means that "there is no single set of 'family and community values' that would be readily identifiable as being 'integral to the company's promotion of its brand.'"

A-25.  But the district court nonetheless concluded that the absence of a single set of identifiable "family and community values" did not render the Proposal subject to exclusion under Rule 14a-8(i)(3).  Despite the existence of multiple sets of "family and community values," the court expressed confidence that the Committee would be able "to determine with reasonable certainty" what it would need to do to implement the policy. *Id.*  It based that confidence on its understanding that the Proposal grants the Committee broad "discretion" to determine how best to implement the Proposal.  *Id.*

But to suggest that the Committee is free to interpret the proposal on the fly is no answer to Wal-Mart's Rule 14a-8(i)(3) objection.  If, as Wal-Mart has demonstrated, the Committee would not be able to determine with any reasonable certainty exactly what measures the Proposal requires, it is subject to exclusion.  Thus, the district court's evident desire to avoid a conclusion that the Proposal is excludable under Rule 14a-8(i)(7) has led the court to interpret the Proposal as not

directing the Committee to consider or adopt any specific product-sale policy—and has thereby confirmed that the Proposal is excludable for vagueness under Rule 14a-8(i)(3).

The SEC has routinely issued Rule 14a-8(i)(3) no-action letters under similar circumstances. *See, e.g., Staples, Inc.*, 2012 WL 748854, at *1, 3 (Mar. 5, 2012) (proposal excludable because it included overly vague terms, despite proponents' insistence that they had proposed broad language to avoid micromanaging Staples' ordinary business decisions and that "the issues of interpretation raised by Staples' letter are best decided by the Board of Directors"); *Exxon Corp.*, 1992 WL 18818, at *1 (Jan. 29, 1992) (same).

The district court's reliance on *The Western Union Co.*, 2013 WL 368364, at *1 (Mar. 14, 2013), was misplaced. There, the SEC declined to concur in Western Union's view that a shareholder proposal was excludable under Rule 14a-8(i)(3) where the company had already adopted a formal set of corporate "values" and a shareholder proposed that the board adopt a policy requiring consistent application of those values to the company's operations. Thus, the "values" at issue in *Western Union* were not vague precisely because they had been well defined and adopted by the company itself. That situation contrasts sharply with the Proposal at issue here, which refers to "family and community values" that remain

undefined and, as the district court conceded, differ from community to community throughout the world.

**B.    Shareholders Lack Assurance that if the Proposal Is Adopted, Any Actions by the Committee Will Be Substantially Similar to the Actions Envisioned by Voting Shareholders**

The very same vagueness concerns that would confront the Committee were the Proposal to be adopted also apply to Wal-Mart shareholders.  The Proposal's failure to define key terms means that shareholders voting on the Proposal would not "be able to determine with any reasonable certainty exactly what actions or measures the proposal requires."  SLB 14B at *4.  Federal courts have confirmed that "shareholders are entitled to know precisely the breadth of the proposal on which they are asked to vote."  *N.Y.C. Emps.' Ret. Sys. v. Brunswick Corp.*, 789 F. Supp. 144, 146 (S.D.N.Y. 1992).

Indeed, the plight of Wal-Mart shareholders provides an even stronger basis for permitting exclusion of the Proposal under Rule 14a-8(i)(3).  The district court concluded that, if the Proposal is adopted, the Committee should be afforded considerable discretion in ascribing meaning to indeterminate terms such as "family and community values." A-25.  But shareholders, at the time they are asked to vote on the Proposal, will have no way of knowing what meaning the Committee might ultimately ascribe to those terms.  Accordingly, shareholders face the prospect of voting on a Proposal that they conclude has one meaning (or

that each of them concludes has a different meaning), only to later discover that the Committee subsequently has concluded that the Proposal has an altogether different meaning.

The SEC has repeatedly issued no-action letters to prevent shareholders from being misled in this manner. *See, e.g., Fuqua Industries, Inc.*, 1991 WL 178684, at *1 (Mar. 12, 1991) (a proposal is vague and indefinite where "any action ultimately taken by the Company upon implementation [of the proposal] could be significantly different from the actions envisioned by the shareholders voting on the proposal"). The SEC staff has subsequently relied on its *Fuqua Industries* rationale on numerous occasions as a basis for granting no-action letters under Rule 14a-8(i)(3). *See, e.g., The Boeing Co.*, 2011 WL 757455, at *1 (Mar. 2, 2011); *Exxon Corp.*, 1992 WL 18818, at *1 (Jan. 29, 1992).

The potential for a mismatch between Committee actions and what some shareholders envision is exacerbated in this case by inconsistencies between the Proposal and Trinity's supporting statement. The latter states that the oversight and reporting mandated by the Proposal are "intended to cover policies and standards that would be applicable to determining whether or not the company should sell" certain types of firearms. A-272. Based on that statement, some shareholders who support continued sales may vote against the Proposal, while other shareholders who question continued sales may vote for the Proposal. But,

as construed by the district court, the Proposal (if adopted) would not require the Committee to adopt any policy or even consider adoption of a policy relating to any given product sold by Wal-Mart. *See* A-21 (stating that it is "for the Board to determine what, *if any*, policy should be formulated and implemented") (emphasis added). Accordingly, adoption of the Proposal will not necessarily lead to adoption of policies that some shareholders may have come to expect based on their reading of the supporting statement.

In sum, the judgment below should be reversed on the alternate ground that the Proposal's vagueness renders it excludable under Rule 14a-8(i)(3).

## III. The District Court's Ruling—if Allowed to Stand—Would Inject Even Greater Uncertainty Into Corporate Proxy Decision-Making

The issues presented in this appeal arrive "amid a growing frustration by some public companies that the SEC has abdicated its traditional role as referee separating frivolous shareholder proposals from legitimate ones." *See* Andrew Ackerman & Joann S. Lublin, THE WALL STREET JOURNAL, *Whole Foods Dispute Prompts SEC Review of Corporate Ballots*, Jan. 19, 2015. Last week, the SEC announced that it was reversing a December 1, 2014 no-action letter that had agreed Whole Foods Market, Inc. could exclude a shareholder proposal that would have allowed any shareholder owning at least 3% of the company's stock to nominate candidates for election to the board. On January 16, 2015, the SEC's Division of Corporation Finance released a statement announcing that, going

forward, it would "express no views" on the application of Rule 14a-8(i)(9), which allows a company to exclude a shareholder proposal that "directly conflicts" with a management proposal. *See* SEC, Announcement of the Division of Corporation Finance Related to Exchange Act Rule 14a-8(i)(9) for Current Proxy Season (Jan. 16, 2015), available at www.sec.gov/news/statement-on-conflicting-proxy-proposals.html#.

Throughout the SEC's history, the ability of public companies to solicit informal guidance from the staff on the correct interpretation of federal securities laws and regulations has been cited as a real strength of the agency. Staff no-action letters in the Rule 14a-8 context are especially valuable because of the impending external deadline for action—the date of the annual shareholder meeting. But, if activist shareholders can now rely on district court judges to ignore longstanding SEC guidance, and if the SEC staff itself is going to back away from its traditional role in providing that guidance, then public companies will no longer be able to prepare their proxy materials with any reasonable degree of confidence, but will be left adrift in a sea of uncertainty.

The district court's decision in this case threatens to unravel decades of SEC guidance. If left in place, the district court's holding will provide a blueprint for other activist shareholders to foist the costs of their proposals onto the company (and other shareholders) without regard to well-recognized "spheres of authority

for the board of directors on one hand, and the company's shareholders on the other."  SEC Release No. 34-39093, 1997 WL 578696 (Sept. 18, 1997).  The activist shareholder in this case sought to craft a proposal that is deliberately vague enough to avoid being struck down under the ordinary business exclusion by stopping just short of dictating what products Wal-Mart may sell.  Surely Rule 14a-8(i)(3) prohibits precisely the kind of gamesmanship.  Otherwise, vague proposals will become a vogue strategy to make an end-run around the exclusion contained in Rule 14a-8(i)(7).

Neither district judges, nor activist shareholders, should be permitted to interfere with the business operations of public companies by crafting such vaguely worded proposals whose meanings neither the board nor the company's shareholders can ascertain with "reasonable certainty."  To hold otherwise would render Rule 14a-8(i)(7)'s ordinary business exclusion a dead letter.

## CONCLUSION

For the foregoing reasons, *amicus* Washington Legal Foundation respectfully requests that the Court reverse the judgment below and vacate the district court's permanent injunction regarding Wal-Mart's 2015 proxy materials and declaratory judgment regarding Wal-Mart's 2014 proxy materials.

Respectfully submitted,

/s/ Cory L. Andrews
Cory L. Andrews
Richard A. Samp
WASHINGTON LEGAL
 FOUNDATION
2009 Mass. Ave., N.W.
Washington, DC 20036
(202) 588-0302

*Counsel for Amicus Curiae*

## COMBINED CERTIFICATIONS

I hereby certify that:

1.   This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,203 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.

3.   Pursuant to Local Rule 46.1, Cory L. Andrews is a member in good standing of the bar for the United States Court of Appeals for the Third Circuit.

4.   The text of the electronically filed brief is identical to the text in the paper copies.

5.   A virus detection program (VIPRE Business, Version 5.0.4464) has scanned the electronic file and no virus was detected.

Dated:  January 19, 2015

/s/ Cory L. Andrews
Cory L. Andrews

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d), I hereby certify that on January 21, 2015, the foregoing *amicus curiae* brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system.  To the best of my knowledge, all parties to this case are represented by counsel who are registered CM/ECF users and will be served electronically by the appellate CM/ECF system.

/s/ Cory L. Andrews
Cory L. Andrews