# United States Court of Appeals

*for the*

# Third Circuit

Case No. 14-4764

WAL-MART STORES, INC.,

*Defendant-Appellant,*

– v. –

TRINITY WALL STREET,

*Plaintiff-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE
NO. 1:14-CV-00405-LPS

## BRIEF OF AMICI CURIAE CORPORATE AND SECURITIES LAW PROFESSORS

Professor Lynn Stout, Esq.
Cornell Law School
Myron Taylor Hall
Ithaca, NY 14853-4901
Telephone: (607) 255-8431
*Of Counsel*

Rolin P. Bissell (Del. Bar No. 4478)
John J. Paschetto (Del. Bar No. 3776)
Benjamin Potts (Del. Bar No. 6007)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Rodney Square
1000 N. King Street
Wilmington, DE 19801
Telephone: (302) 571-6560
*Attorneys for Amici Curiae*

Dated:  February 11, 2015

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1), the 38 corporate and securities law professors Amici listed below are appearing in their individual capacities and have no parent corporation and issue no stock.

### List of the Professor Amici

*Lynn Stout,* **Distinguished Professor of Corporate & Business Law, Clarke Business Law Institute, Cornell Law School**

*Jayne Barnard,* **Cutler Professor of Law, William & Mary Law School**

*William A. Birdthistle,* **Professor of Law Chicago-Kent College of Law**

*Norman D. Bishara,* **Associate Professor of Business Law and Ethics, Stephen M. Ross School of Business, University of Michigan**

*Dr. Margaret M. Blair,* **Professor of Law, Milton R. Underwood Chair in Free Enterprise, Vanderbilt University Law School**

*Douglas M. Branson,* **W. Edward Sell Chair in Business Law, University of Pittsburgh**

*James D. Cox,* **Brainerd Currie Professor of Law, School of Law, Duke University**

*Michael B. Dorff,* **Professor of Law, Southwestern Law School**

*Lisa M. Fairfax,* **Leroy Sorenson Merrifield Research Professor of Law, George Washington University Law School**

*Tamar Frankel,* **Professor of Law, Boston University School of Law**

*Brandon L. Garrett,* **Professor of Law, University of Virginia School of Law**

*Kent Greenfield,* **Professor of Law and Dean's Research Scholar, Boston College**

*Daniel JH Greenwood,* **Professor of Law, Deane School of Law, Hofstra University**

*Jon Hanson,* **Alfred Smart Professor of Law, Harvard Law School**

*Thomas Lee Hazen,* **Cary C. Boshamer Distinguished Professor, School of Law, The University of North Carolina at Chapel Hill**

*Robert C. Hockett,* **Edward Cornell Professor of Law, Cornell Law School**

*Robert J. Jackson, Jr.,* **Professor of Law and Milton Handler Fellow, Columbia Law School**

*Lyman Johnson,* **Robert O. Bentley Professor of Law, Washington and Lee University School of Law**

*Renee M. Jones,* **Professor, Boston College Law School**

*Thomas W. Joo,* **Professor of Law University of California, Davis School of Law**

*Donald C. Langevoort*, **Thomas Aquinas Reynolds Professor of Law, Georgetown Law**

*Patricia A. McCoy,* **Liberty Mutual Insurance Professor, Boston College Law School**

*Donna M. Nagy,* **Executive Associate Dean and C. Ben Dutton Professor of Law**, **Indiana University Maurer School of Law -- Bloomington**

*Lisa H. Nicholson,* **Professor of Law,  University of Louisville  Louis D. Brandeis School of Law**

*Charles R. T. O'Kelley,* **Professor and Director Adolf Berle Center on Corporations Law and Society, Seattle University**

*Saule T. Omarova, **Professor of Law**,* **Cornell University**

*Stefan J. Padfield,* **Professor of Law, University of Akron School of Law**

*Alan R. Palmiter,* **Howard L. Oleck Professor of Business Law, School of Law, Wake Forest University**

*Frank Partnoy,* **George E. Barrett Professor of Law and Finance, University of San Diego School of Law**

*Brian JM Quinn,* **Associate Professor of Law, Boston College Law School**

*Margaret V. Sachs,* **Robert Cotten Alston Professor of Law, University of Georgia School of Law**

*Cindy A. Schipani,* **Merwin H. Waterman Collegiate Professor of Business Administration and Professor of Business Law, Steven M. Ross School of Business, University of Michigan**

*Jennifer Taub,* **Professor of Law, Vermont Law School**

*Kellye Y. Testy,* **Dean and Judge James W. Mifflin University Professor, University of Washington School of Law**

*Cheryl L. Wade,* **Harold F. McNiece Professor of Law, Saint John's University School of Law**

*David H. Webber,* **Associate Professor of Law, Boston University Law School**

*Cynthia Williams,* **Osler Chair in Business Law, Osgoode Hall Law School, York University**

*Adam Winkler,* **Professor of Law, UCLA School of Law**

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST ..................................................................1

SUMMARY OF ARGUMENT ..............................................................1

ARGUMENT ..........................................................................................6

I.    The Proposal Is Not Excludable Under the "Ordinary Business
      Operations" Guidance of the SEC ................................................6

      A.    The Proposal Does Not Seek to Micro-Manage Wal-Mart...................6

      B.    Trinity's Proposal Respects the Role of the Board Under State
            Law to Provide Oversight of Important Policy Decisions ...................9

      C.    Wal-Mart's Argument That the Proposal Deals with "Ordinary
            Business Operations" Because It Is Addressed to Wal-Mart's
            Board Mistakes the District Court's Reasoning in Holding the
            Proposal Was Not Excludable............................................................11

II.   The Proposal Focuses on a Significant Social Policy Issue and So Is
      Not Excludable. ...........................................................................13

III.  Appellant's Argument That the Proposal Should Be Excluded Merely
      Because It Relates to Products Is Inconsistent with the Plain Language
      of Rule 14a-8(i)(7)......................................................................16

IV.   The Proposal Is Not Inherently Vague or Indefinite ....................................19

V.    The No-Action Position of SEC Staff Is Not Binding on This Court ...........21

CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
  821 F. Supp. 877 (S.D.N.Y. 1993) ...........................................................2, 7, 22

*CA, Inc. v. AFSCME Emp's Pension Plan*,
  953 A.2d 227 (Del. 2008) (en banc) ...................................................13

*Cobalt Operating, LLC v. James Crystal Enters.*,
  No. 714-VCS, 2007 Del. Ch. LEXIS 108 (Del. Ch. July 20, 2007), *aff'd*,
  945 A.2d 594 (Del. 2008) ...................................................................9

*Colish v. Brandywine Raceway Ass'n.*,
  119 A.2d 887 (Del. Super. 1955)........................................................10

*Hollinger Int'l, Inc. v. Black*,
  844 A.2d 1022 (Del. Ch. 2004) .........................................................13

*In re Caremark Int'l Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996) .......................................................10, 11

*In re TSIC, Inc. f/k/a The Sharper Image Corp.*,
  428 B.R. 103 (D. Del. Bankr. 2010)...................................................9

*Italo-Petroleum Corp. of Am. v. Hannigan*,
  14 A.2d 401 (Del. 1940) ...................................................................10

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ................................................................11

STATUTES

8 *Del. C.* § 141(a)....................................................................................10

RULES

17 C.F.R. § 240.14a-8 ........................................................................passim

17 C.F.R. § 240.14a-8(i)(3) ...............................................................5, 19

17 C.F.R. § 240.14a-8(i)(7) ..............................................................................passim

SEC RELEASES & SEC STAFF BULLETINS

*Amendments to Rules on Shareholder Proposals*, Exchange Act Release No.
    34-40018, 63 Fed. Reg. 29106, 1998 WL 254809 (May 21, 1998) ....8, 13, 15,17

SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971 (Sept. 15, 2004)................19

SEC NO-ACTION LETTERS

*PetSmart Inc.*,
    2011 WL 528414 (Mar. 24, 2011).......................................................................15

*Philip Morris Cos. Inc.*,
    1990 WL 286062 (Feb. 22, 1990) ......................................................................18

*Prudential Financial Inc.*,
    2011 WL 6071962 (Dec. 23, 2011) ....................................................................17

*The Kroger Co.*,
    2000 WL 486232 (April 12, 2000) ......................................................................17

*Wal-Mart Stores, Inc.*,
    2010 WL 1371654 (Mar. 26, 2010)....................................................................17

OTHER AUTHORITIES

*Black's Law Dictionary* 378 ....................................................................................10

American Law Institute, PRINCIPLES OF CORPORATE GOVERNANCE:
    ANAYLSIS AND RECOMMENDATION §3.02 cmt. j. (1994) ....................................10

SEC Division of Corporate Finance, *Informal Procedures Regarding
    Shareholder Proposals*, http://www.sec.gov/divisions/corpfin/cf-
    noaction/14a-8-informal-procedures.htm (last modified Nov. 2, 2011) ............21

Larence A. Hamermesh, *Corporate Democracy and Stockholder-Adopted
    By-Laws: Taking Back the Street?*, 73 Tul. L. Rev. 409 (1998) ........................13

Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC
    No-Action Letters:  Current Problems and a Proposed Framework*, 83
    Cornell L. Rev. 921 (1998).................................................................................21

## STATEMENT OF INTEREST

Amici are 38 law professors whose research and teaching focus primarily on corporate and securities law.  See Appendix A (listing the individual professors joining this brief).  This brief addresses those issues that are specifically within Amici's areas of scholarly expertise.  Amici submit this brief out of concern for the proper development of the law regarding shareholder proposals, which can be an important corporate governance tool that facilitates communication between a board of directors and the shareholders for whom those directors are fiduciaries. Except for this brief, Amici have no financial interest or involvement in this or any other pending action raising the issues discussed here.

No party or party's counsel has authored this brief in whole or in part.  No party or party's counsel has contributed money that was intended to fund preparing or submitting this brief.  No person—other than Amici or their counsel—has contributed money that was intended to fund preparing or submitting this brief.

Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented that Amici may file this brief.

## SUMMARY OF ARGUMENT

The District Court correctly interpreted SEC Rule 14a-8(i)(7), 17 C.F.R. § 240.14a-8(i)(7), in holding that Defendant-Appellant Wal-Mart Stores, Inc. ("Wal-Mart") is not permitted to exclude the proposal submitted by Plaintiff-

Appellee Trinity Wall Street (the "Proposal") from Wal-Mart's proxy materials for its 2015 annual meeting of shareholders.

In seeking to overturn the District Court's decision, Wal-Mart seeks to curtail shareholders' longstanding and well-recognized corporate governance right under SEC Rule 14a-8, 17 C.F.R. §240.14a-8, to communicate their desires and interests to a company's board of directors through "precatory" proposals that request the board to consider certain issues or actions. Rule 14a-8 permits shareholders to use precatory proposals to communicate not only their interests in a company's financial performance, but also their interests and preferences concerning a wide range of issues, such as the board's structure and oversight of important policies, sustainability, and ethical performance. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 892 (S.D.N.Y. 1993) (Rule 14a-8 "implement[s] Congress's goals by providing shareholders with the right to communicate with other shareholders and with management through the dissemination of proxy material on matters of broad social import. . . ").

These are matters of concern to many shareholders. Risk-management policy is especially important to incompletely diversified shareholders, such as employees; sustainability is of particular interest to long-term shareholders; and corporate ethical performance is of concern to both customers and shareholders

who have concerns for ethical rules and others' welfare. Recognizing that these widely held concerns are both real and legitimate, Wal-Mart's own website states, "Wal-Mart is committed to making a difference on the issues that matter to our . . . shareholders in the environmental, social and governance . . . areas" (*see ESG Investors*, http://stock.walmart.com/esg-investors (last visited Feb. 10, 2015).

Trinity Wall Street properly sought to use Rule 14a-8 to submit for shareholder consideration a precatory proposal urging Wal-Mart's board to provide oversight concerning the formulation of company policy regarding the sale of products that "*especially* [endanger] public safety and well-being," "have *substantial* potential" to damage Wal-Mart's reputation, and/or "would be reasonably *considered by many offensive* to the family and community values integral to Wal-Mart's promotion of its brand" (emphasis added). (A- 443). The Proposal thus:

1.      Did not attempt to dictate to Wal-Mart's board what policy to adopt. The Proposal merely asked the board to exercise its traditional corporate-law oversight function in connection with Wal-Mart's formulation of a policy with regard to the sale of products posing great risks to public safety, Wal-Mart's reputation, and/or Wal-Mart's basic values.

2.      Did not attempt to instruct the board on how to operate Wal-Mart or how to make business decisions.

3.      Did not tell the board what products to sell or not to sell, or what actions to take with regard to any specific product.  Although the narrative portion of the Proposal offered the example of semiautomatic weapons with magazines holding 10 or more bullets as Wal-Mart merchandise that might pose a substantial risk to public safety and/or Wal-Mart's reputation and values, this was an illustrative example.

4.      Did not ask the board to formulate a policy regarding risks that were minor or incidental, or risks that threatened idiosyncratic values only held by few shareholders or customers.  The Proposal asked Wal-Mart's board to put on its agenda oversight of Wal-Mart's policy with regard to risks that were "substantial" and to consider threats to values deemed by "many" members of the public to be "integral" to Wal-Mart's brand.

The Proposal on its face thus sought only to solicit and communicate to Wal-Mart's board the views of Wal-Mart's shareholders on the important and high-level question of whether the board should exercise its traditional corporate-oversight function in connection with the formulation and implementation of a policy regarding whether Wal-Mart, whose core business is selling products at retail, should seek short-term profits from selling products that pose substantial threats to public safety, Wal-Mart's reputation, and/or Wal-Mart's values.

4

The Proposal is the perfect illustration of the appropriate use of a shareholder precatory proposal to provide a company's board with important information about shareholders' financial and nonfinancial concerns, without limiting the board's authority to exercise its business judgment or interfering with the day-to-day operations of the company.

Nevertheless, Wal-Mart seeks to exclude the Proposal from its proxy materials by claiming that the Proposal fits two exemptions to Rule 14a-8: the Rule 14a-8(i)(7) exemption for proposals dealing with "ordinary business operations," and the SEC Rule 14a-8(i)(3) exemption for proposals that are "inherently vague and indefinite." 17 C.F.R. §240.14a-8(i)(3).

Wal-Mart seeks to stretch these exemptions to such a degree that, together, they threaten to swallow the entirety of Rule 14a-8. Under Wal-Mart's expansive view of the two exemptions, any shareholder proposal will either be too specific (and thus infringe on "ordinary business operation") or be too general (and thus "inherently vague and indefinite"). If adopted, this interpretation would endanger Rule 14a-8 and undermine its value for ensuring that boards of public companies remain informed about shareholders' governance-related desires and interests. Moreover, in arguing for a broad interpretation of the Rule 14a-8(i)(7) exemption, Wal-Mart relies on the no-action letter issued by the SEC's staff, which is not an agency decision entitled to judicial deference. The SEC's Releases, in contrast, are

5

entitled to judicial deference, and these do not support Wal-Mart's broad interpretation.

In rejecting Wal-Mart's arguments and holding that the Proposal should be included in Wal-Mart's proxy materials, the District Court properly chose to protect and preserve an existing, well-established, and important shareholder right that plays a vital role in good corporate governance. Conversely, if the District Court's decision were overturned, the result would be a dramatic new restriction on shareholders' traditional governance rights that could harm public companies' abilities to serve both their shareholders and society as a whole. Thus, and for reasons stated in greater detail below, we believe and respectfully submit that this Court should uphold the District Court's decision.

## ARGUMENT

I.    **The Proposal Is Not Excludable Under the "Ordinary Business Operations" Guidance of the SEC**

A.    **The Proposal Does Not Seek to Micro-Manage Wal-Mart**

Precatory shareholder proposals play a vital role in ensuring good corporate governance by providing information to a board about shareholders' concerns regarding the board's oversight of the company. Without precatory proposals and the Rule 14a-8 right to have those proposals distributed to shareholders with management's proxy materials, the dispersed shareholders of a widely held, publicly traded company would find it inordinately expensive, and perhaps

impossible, to take coordinated action to communicate their governance-related interests and preferences to that company's board.  Similarly, absent shareholders' ability to compel inclusion of matters of shareholder concern in a company's proxy, a board would have no way of knowing whether a shareholder proposal enjoys broad support or merely reflects a small minority's enthusiasm.

However, to keep the shareholder-proposal process from being abused, SEC Rule 14a-8 provides certain specific, narrow exemptions that identify particular types of proposals that may be excluded from a company's solicitation materials. One of these is the Rule 14a-8(i)(7) exemption for a proposal that "deals with a matter relating to the company's ordinary business operations."  (The other exemption at issue here—for a proposal that is overly vague—is discussed in Argument Section IV below.)

Virtually any shareholder proposal, whether it is concerned with executive compensation, employment practices, political contributions, or the use of renewable energy, may have some impact on a company's business operations if it is submitted to the shareholders and is successful in persuading the board to change high-level corporate policies.  *See Amalgamated Clothing*, 821 F. Supp. at 890 (Wal-Mart could not exclude as dealing with ordinary business operations a proposal requesting a report about Wal-Mart's equal employment and affirmative action policies because "*all* proposals could be seen as involving some aspect of

day-to-day business operations." (emphasis in original)).  As a result the Rule 14a-8(i)(7) exemption cannot be read so broadly that it swallows the Rule.  Recognizing this, and to preclude an expansive interpretation, the SEC has offered guidance on the "ordinary business" exemption that makes clear it applies only to shareholder proposals that attempt to inject "direct shareholder oversight" of how a company's management "run[s] a company on a day-to-day basis," and proposals that seek "to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Amendments to Rules on Shareholder Proposals,* Exchange Act Release No. 34-40018, 63 Fed. Reg. 29106, 29108, 1998 WL 254809 at \*5 (May 21, 1998) ("*1998 Release*").

On its face, the Proposal does not fall within the "ordinary business operations" exemption.  It does not seek to impose shareholder oversight of Wal-Mart's day-to-day business decisions.  It does not seek to cabin the Wal-Mart board's discretion to formulate policy.  Rather, the Proposal identifies an issue and requests that the Wal-Mart board consider it as a matter of shareholder concern appropriate for board oversight.  By asking Wal-Mart's board itself to oversee how Wal-Mart formulates, implements, and reports policies and standards regarding products that pose substantial risks to public safety or Wal-Mart's reputation or core values, the Proposal acknowledges the board's authority to oversee Wal-

8

Mart's affairs. It does not seek to limit the board's exercise of its discretion as to what is the best policy for Wal-Mart on this issue, much less attempt to dictate whether Wal-Mart may or may not sell any particular product or class of products. The District Court properly recognized these important features of the Proposal. Memorandum Opinion, at 18 (A-20).

The Proposal asks only that the Wal-Mart board provide oversight of an important business and policy issue, not that any substantive management decision be made. Thus, the Proposal respects the divide between the board's authority to manage the business and affairs of Wal-Mart and the shareholders' right to inform the board of their views of important policy issues.

### B. Trinity's Proposal Respects the Role of the Board Under State Law to Provide Oversight of Important Policy Decisions

Wal-Mart's argument that the Proposal interferes with Wal-Mart's conduct of its "ordinary business" finds no support in state corporation law, which governs a company's internal affairs and informs Rule 14a-8. Under state law, "ordinary course" transactions and acts have been defined as transactions and acts that are "recurring," "customary," and "routine."[1] As a result, ordinary course transactions

---

[1]    *See, e.g.*, *In re TSIC, Inc. f/k/a The Sharper Image Corp.*, 428 B.R. 103, 116 (D. Del. Bankr. 2010) (holding that a severance payment to the CEO of a Delaware corporation was a voidable transfer to an insider and outside the ordinary course, where the payment was neither "recurring" nor "customary," and where no other insider received a similar payment upon termination); *Cobalt Operating, LLC v. James Crystal Enters.*, No. 714-VCS, 2007 Del. Ch. LEXIS 108, at *45-46 n.24

usually do not require board approval and are carried out by a company's officers and employees.[2]

In contrast, board oversight of the formulation of policy and standards in general is not recurring, customary, or routine, but is rather a core board function under state corporation law.[3]   While a board may delegate authority for day-to-day operations to an executive team, the board itself remains obliged to continue to monitor and oversee officers and other employees to whom it has delegated authority.  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996); *see also* American Law Institute, PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATION § 3.02 cmt. j (1994).  Indeed, as

---

(Del. Ch. July 20, 2007) (holding that "[a] material increase of the number of aired commercials would involve an operation of [the corporation's radio] station outside of the ordinary course of business"), *aff'd*, 945 A.2d 594 (Del. 2008). *Black's Law Dictionary* defines ordinary course of business as "[t]he normal routine in managing a trade or business."  *Black's Law Dictionary* 378 (8th ed. 2004).

[2]     *Italo-Petroleum Corp. of Am. v. Hannigan*, 14 A.2d 401, 406 (Del. 1940) ("[The president] is presumed to have, by virtue of his office, certain more or less limited powers in the transaction of the usual and ordinary business of the corporation." (citation omitted)); *Colish v. Brandywine Raceway Ass'n.*, 119 A.2d 887, 891 (Del. Super. 1955) (applying the *Italo-Petroleum* rule's limitation and holding that the ability to enter into the contract at issue was not within the ordinary course of business).

[3]     Wal-Mart is incorporated under the General Corporation Law of the State of Delaware (the "DGCL").  Under Section 141(a) of the DGCL, the "business and affairs" of Wal-Mart "shall be managed by or under the direction of a board of directors" unless its certificate of incorporation provides otherwise.  8 *Del. C.* § 141(a).

10

articulated in *Caremark*, and approved by the Delaware Supreme Court in *Stone v. Ritter*, 911 A.2d 362 (Del. 2006), "a sustained or systematic failure of the board to exercise oversight" is a breach of fiduciary duty that may "render a director liable for losses." *Caremark*, 698 A.2d at 970-71.

Through the Proposal, Trinity does not seek to usurp the Wal-Mart board's authority or direct Wal-Mart's officers and employees on what policies to follow or how to implement policy. The Proposal merely seeks to inform the Wal-Mart board of its shareholders' views concerning a significant business and public policy issue so that the Wal-Mart board will be aware of those views as it carries out its oversight function. In short, the Proposal honors the traditional roles of boards and shareholders under state corporation law. Wal-Mart's argument—that the Proposal is an impermissible attempt by its shareholders to inject themselves into decisions about Wal-Mart's "ordinary business"—fails to respect those traditional roles.

### C. Wal-Mart's Argument That the Proposal Deals with "Ordinary Business Operations" Because It Is Addressed to Wal-Mart's Board Mistakes the District Court's Reasoning in Holding the Proposal Was Not Excludable

As a basis to challenge the District Court's ruling that the Proposal did not deal with ordinary business operations, Wal-Mart speculates that the ruling turned on Trinity Wall Street's addressing the Proposal to Wal-Mart's board, rather than to Wal-Mart's executives. By doing so (Wal-Mart claims), the District Court

11

"effectively created a board action exception to Rule 14a-8(i)(7)." Appellant's Opening Brief, at 28. This argument reveals a fundamental misunderstanding of the basis for the District Court's ruling.

The District Court's Memorandum Opinion makes clear that the Court neither created nor relied upon a "board action exception." It is Wal-Mart that seeks to conjure the "board action exception" into being, to service an argument that is nonsensical. By necessity all shareholder proposals are addressed to a company's board of directors, rather than to its executives or employees. If addressing a proposal to the board were enough to ensure that it must be included in management's proxy materials, no shareholder proposal could ever be excluded. Accordingly, the question whether a shareholder proposal seeks board action has no analytical value.

Nothing in the District Court's Memorandum Opinion suggests that the Court relied on such facile and flawed reasoning to find that Wal-Mart may not exclude the Proposal. To the contrary, the Court quite properly focused on whether the Proposal respected the board's authority, on whether it left it "for the board to determine what, if any, policy should be formulated and implemented"

(Memorandum Opinion at 18 (A-20)), and on whether it did not "dictate to management specific products that Wal-Mart could or could not sell" (*id.*).[4]

## II.    The Proposal Focuses on a Significant Social Policy Issue and So Is Not Excludable

SEC guidance makes clear that the "ordinary business" exception should not be used to exclude a proposal "relating" to ordinary business operations if the proposal also "[focuses] on sufficiently significant social policy issues (e.g., significant discrimination matters) . . . [that] transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote." *1998 Release*, 1998 WL 254809 at *4.  As the SEC stated in its issuing release:

> Certain tasks are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight. Examples include the management of the workforce, such as the hiring, promotion, and termination of employees, decisions

---

[4]    In this regard, the District Court's reasoning is completely consistent with Delaware corporation law concerning shareholder power to enact bylaws. *Cf. CA, Inc. v. AFSCME Emp's Pension Plan*, 953 A.2d 227, 235 (Del. 2008)(en banc) (distinguishing, in the context of shareholder-proposed bylaws, between permissible bylaws, which "establish[] or regulate[] a process for substantive director decision-making," and impermissible bylaws, which "mandate[] the decision itself"); *cf. also Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1079 (Del. Ch. 2004) (recognizing that "there is a general consensus that bylaws that regulate the process by which the board acts are statutorily authorized," and "[t]his includes the extent and manner in which the board shall act through committees" (citing Lawrence A. Hamermesh, *Corporate Democracy and Stockholder-Adopted By-Laws: Taking Back the Street?*, 73 Tul. L. Rev. 409, 484–85 (1998))).

on production quality and quantity, and the retention of suppliers. However, proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote.

*Id.*

Nevertheless, Wal-Mart argues that the SEC's Guidance to Rule 14a-8(i)(7) does not apply to the Proposal, because the Proposal does not "focus" on a "significant" policy issue. This argument is contradicted by the Proposal's very language.

The Proposal asks the Wal-Mart board to oversee Company policy regarding whether and when to sell products that especially endanger public safety, have substantial potential to damage Wal-Mart's reputation, and/or would be considered by many to be offensive to values integral to Wal-Mart's brand. (A-443). Thus, the Proposal by its very language asks Wal-Mart's board to address significant issues, and only significant issues. By using such terms as "especially," "substantial," and "offensive," the Proposal made clear that Wal-Mart's shareholders are not seeking to ask the board to oversee policies concerning minor risks.

Moreover, all of the policy issues addressed by the Proposal are both important financial issues and self-evidently "social policy" issues. Selling

14

products that endanger public safety, Wal-Mart's reputation, or Wal-Mart's core values has obvious financial implications for Wal-Mart's shareholders, because selling such products could alienate customers and employees and trigger expensive litigation and additional government regulation. There might be a strong adverse public reaction, for example, if Wal-Mart sold a high-capacity firearm that was used in a mass shooting at a school. In addition, the sale of products that pose substantial risks to public safety or are offensive to the core values of Wal-Mart—the world's largest retailer (Appellant's Opening Brief at 10)—has ethical and social policy implications. These ethical and social policy implications are easily on a par with employment discrimination, which the SEC's *1998 Release* deemed a sufficiently significant policy issue to warrant inclusion of shareholder proposals relating to it.

Again, as shown in Argument Section I above, it is equally clear that the Proposal "focuses" on board oversight of high-level business and social policy issues, and not on day-to-day business operations. Appellant's brief cites no-action letters in which proposals were excluded because they requested some *specific* corporate action to address a significant policy issue, such as requiring suppliers to make specific certifications. *See PetSmart Inc.,* 2011 WL 528414 (Mar. 24, 2011) (asking that PetSmart certify that its products met all the standards of the Animal Welfare Act, the Lacey Act, and any equivalent state laws). Appellant's Opening

Brief at 32, 24. The Proposal is not such a case. It does not direct Wal-Mart's management to undertake any specific business operation or set any deadlines. If successful, it would simply communicate the desire of many of Wal-Mart's shareholders that the board exercise its oversight authority to include oversight of important social and business policy questions of concern to shareholders.

**III.    Appellant's Argument That the Proposal Should Be Excluded Merely Because It Relates to Products Is Inconsistent with the Plain Language of Rule 14a-8(i)(7)**

Wal-Mart concedes that the Proposal "is drafted broadly" and does not direct Wal-Mart's board to take any particular action with regard to sales of any particular product. Appellant's Opening Brief at 32. Nevertheless, Wal-Mart argues that Rule 14a-8(i)(7) requires the Proposal's exclusion, using a categorical argument that any and all shareholder proposals touching upon the selection of products for sale—no matter at how high a policy level, no matter how procedural in focus, and no matter how respectful of board decision-making authority and business judgment—must be excluded under Rule 14a-8(i)(7) for the simple reason that they deal with products.

This overreaching claim is contradicted by the very language of Rule 14a-8(i)(7). The Rule by its terms allows companies to exclude only proposals that deal with ordinary business operations. Nothing in the language of the Rule allows companies to exclude proposals merely because, in raising important business and

social policy issues at a very high level, they address the sale of products. To the contrary, the SEC's own guidance affirmatively states that even when a proposal deals with ordinary business operations, it is not excludable if it also raises significant social policy questions that "transcend the day-to-day." *1998 Release*, 1998 WL 254809 at *4.

Nor is Wal-Mart's argument supported by the no-action letters and cases that Wal-Mart and amici writing in support of it cite. These no-action letters generally deal with shareholder proposals relating to individual products, or proposals that seek to dictate a specific product policy to the board. *See, e.g.*, *Prudential Financial Inc.*, 2011 WL 6071962 (Dec. 23, 2011) (proposal requesting that company adopt particular method for valuing annuity contracts); *Wal-Mart Stores, Inc.*, 2010 WL 1371654 (Mar. 26, 2010) (proposal requesting that company require all products and services sold to be manufactured or produced in the United States).

In contrast, the Proposal here asks that Wal-Mart's board itself decide overall policy regarding an important class of products: those that create substantial risks to public safety, Wal-Mart's reputation, and Wal-Mart's values. Thus, the Proposal is consistent with proposals the SEC staff has determined were not excludable under Rule 14a-8(i)(7). *See e.g.*, *The Kroger Co.*, 2000 WL 486232, at *1 (April 12, 2000) (refusing to exclude under Rule 14a-8(i)(7) a

proposal "request[ing] that the board adopt a policy of removing genetically engineered crops, organisms, or products thereof from all products sold under its brand names or private labels, where feasible, until long-term testing has shown that they are not harmful to humans, animals, and the environment" because the proposal "raise[d] significant policy issues that [were] beyond the ordinary business operations of Kroger"); *Philip Morris Cos. Inc.*, 1990 WL 286062 (Feb. 22, 1990) (refusing to exclude under the ordinary business exception a proposal calling for establishment of a board committee to evaluate the impact of the company's advertising and marketing on teenagers' decisions to purchase the company's cigarette products, and which mandated that the board consider "what policies/practices [the] Company might implement to insure that minors not be targeted" for purchase of the company's products, because the SEC "believe[d] that th[e] proposal—which involve[d] activities attendant to the distribution of the Company's tobacco products—raise[d] issues of significance and [did] not constitute a matter of ordinary business").

Thus, the Proposal's request is neither unduly burdensome (unlike proposals asking boards to deal with products on a case-by-case basis) nor intrusive on the board's decision-making authority.

## IV.    The Proposal Is Not Inherently Vague or Indefinite

Wal-Mart also argues that the Proposal should be excluded under Rule 14a-8(i)(3) because it is so inherently vague or indefinite that neither the shareholders voting on the Proposal, nor Wal-Mart in implementing the Proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires.    Appellant's Opening Brief at 19 (relying on SEC Staff Legal Bulletin No. 14B, 2004 WL 3711971, at *4 (Sept. 15, 2004)).    The Proposal asks Wal-Mart's board to develop and implement a policy regarding the sale of products that "would be reasonably considered by many as offensive to the family and community values integral to the Company's promotion of its brand."  (A-443).  Wal-Mart argues that this language renders the Proposal inherently vague and indefinite because it fails to "identif[y] any specific 'values'" integral to Wal-Mart's brand.  Appellant's Opening Brief at 42.

The Proposal does not specify values integral to Wal-Mart's brand because the Proposal quite properly respects the decision-making authority of Wal-Mart's board.  Accordingly, the Proposal invites the board itself to exercise its business judgment by evaluating whether Wal-Mart sells products that the board determines many would deem offensive to Wal-Mart's publicly articulated "family and community" values.  Indeed, if the Proposal had identified specific values

integral to Wal-Mart's brand, Wal-Mart surely would then have claimed the Proposal was seeking to "micro-manage" and "dictate to" Wal-Mart's board.

Nor does the Proposal's failure to identify specific values prevent Wal-Mart's shareholders from understanding what they are being asked to vote on. They are being asked to vote on whether they prefer that Wal-Mart's board exercise its business judgment to formulate policies that identify whether the sale of any particular product undermines the "family and community" values on which Wal-Mart has built its brand and reputation. *See, e.g.*, *Ethics & Integrity*, http://corporate.walmart.com/our-story/ethics-integrity (last visited Feb. 10, 2015) (attributing to Sam Walton the statement that "[p]ersonal and moral integrity is one of our basic fundamentals and it has to start with each of us").

Finally, although it is not entirely clear, Wal-Mart may be advancing the extreme argument that it is impossible for Wal-Mart's board to ever identify values integral to Wal-Mart's brand because no "single set" of values exists. Appellant's Opening Brief at 42. In other words, Wal-Mart may be advancing an extreme form of moral relativism that denies the possibility of widely accepted values. Admittedly, people may sometimes have conflicting values and interests. However, it should be no more difficult for Wal-Mart's board to identify and balance commonly-held values associated with the Wal-Mart brand than it is for the board to identify and balance other complex business interests (for example,

balancing conflicts between short-term and long-term investors, between minimizing taxes and maintaining a reputation as a good "corporate citizen," between maximizing returns and minimizing risks, and so forth).

## V.    The No-Action Position of SEC Staff Is Not Binding on This Court

Wal-Mart is aware that a no-action letter is not the action of the SEC itself, but rather is the view of an individual SEC staff member or small team of staff members.    Appellant's Opening Brief at 37-39.    The Commission itself underscores this point:

> [t]he staff's no-action responses to Rule 14a-8(j) submissions reflect only informal views.    The determinations reached in these no-action letters do not and cannot adjudicate the merits of a company's position with respect to the proposal.  Only a court such as a U.S. District Court can decide whether a company is obligated to include shareholder proposals in its proxy materials.

SEC Division of Corporate Finance, *Informal Procedures Regarding Shareholder Proposals*, *available at* http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm (last modified Nov. 2, 2011).

Thus, a no-action letter is not an agency decision entitled to typical judicial deference.  *See* Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 933, 992 (1998).  What does have legal authority, and is entitled to judicial deference, is the SEC's interpretation of its own rules.  *See*

*Amalgamated Clothing*, 821 F. Supp. at 890–91 (requiring Wal-Mart to include in its proxy materials a shareholder proposal requesting a report about Wal-Mart's equal employment and affirmative action policies despite SEC no-action letter supporting exclusion of the proposal, because the no-action letter was inconsistent with the SEC's own Interpretive Release).  It is these interpretations in the *1998 Release* that the District Court properly applied in determining that the Proposal was wrongfully excluded in 2014, and that we have relied upon in our arguments above.

## <u>CONCLUSION</u>

For decades, federal law has recognized and protected shareholders' rights to use precatory shareholder proposals to inform boards of their significant financial and nonfinancial interests and concerns.  Precatory proposals provide an important channel of communication between shareholders and boards that can help boards manage companies so they better serve the interests of shareholders and society.  The District Court was correct in preserving shareholders' rights by holding that Trinity's proposal was not excludable under either Rule 14a-8(i)(3) or Rule 14a-8(i)(7).  The undersigned corporate and securities law experts listed in

Appendix A respectfully request that this Court affirm the District Court's grant of summary judgment to Trinity Wall Street.

Respectfully submitted,

/s/ *Rolin P. Bissell*

Rolin P. Bissell (Del. Bar No. 4478)
John J. Paschetto (Del. Bar No. 3776)
Benjamin Z. Potts (Del. Bar No. 6007)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
*Attorneys of Record for Amici Curiae Corporate and Securities Law Professors*

Professor Lynn Stout, Esq.
Cornell Law School
Myron Taylor Hall
Ithaca, NY  14853-4901
Telephone:  (607) 255-8431
*Of Counsel for the Amici Curiae*

Dated: February 11, 2015

## Appendix A

### List of the Professor Amici

*Lynn Stout,* **Distinguished Professor of Corporate & Business Law, Clarke Business Law Institute, Cornell Law School**

*Jayne Barnard,* **Cutler Professor of Law, William & Mary Law School**

*William A. Birdthistle,* **Professor of Law Chicago-Kent College of Law**

*Norman D. Bishara,* **Associate Professor of Business Law and Ethics, Stephen M. Ross School of Business, University of Michigan**

*Dr. Margaret M. Blair,* **Professor of Law, Milton R. Underwood Chair in Free Enterprise, Vanderbilt University Law School**

*Douglas M. Branson,* **W. Edward Sell Chair in Business Law, University of Pittsburgh**

*James D. Cox,* **Brainerd Currie Professor of Law, School of Law, Duke University**

*Michael B. Dorff,* **Professor of Law, Southwestern Law School**

*Lisa M. Fairfax,* **Leroy Sorenson Merrifield Research Professor of Law, George Washington University Law School**

*Tamar Frankel,* **Professor of Law, Boston University School of Law**

*Brandon L. Garrett,* **Professor of Law, University of Virginia School of Law**

*Kent Greenfield,* **Professor of Law and Dean's Research Scholar, Boston College**

*Daniel JH Greenwood,* **Professor of Law, Deane School of Law, Hofstra University**

*Jon Hanson,* **Alfred Smart Professor of Law, Harvard Law School**

*Thomas Lee Hazen,* **Cary C. Boshamer Distinguished Professor, School of Law, The University of North Carolina at Chapel Hill**

*Robert C. Hockett,* **Edward Cornell Professor of Law, Cornell Law School**

*Robert J. Jackson, Jr.,* **Professor of Law and Milton Handler Fellow, Columbia Law School**

*Lyman Johnson,* **Robert O. Bentley Professor of Law, Washington and Lee University School of Law**

*Renee M. Jones,* **Professor, Boston College Law School**

*Thomas W. Joo,* **Professor of Law University of California, Davis School of Law**

*Donald C. Langevoort*, **Thomas Aquinas Reynolds Professor of Law, Georgetown Law**

*Patricia A. McCoy,* **Liberty Mutual Insurance Professor, Boston College Law School**

*Donna M. Nagy,* **Executive Associate Dean and C. Ben Dutton Professor of Law**, **Indiana University Maurer School of Law -- Bloomington**

*Lisa H. Nicholson,* **Professor of Law,  University of Louisville  Louis D. Brandeis School of Law**

*Charles R. T. O'Kelley,* **Professor and Director Adolf Berle Center on Corporations Law and Society, Seattle University**

*Saule T. Omarova, **Professor of Law**, **Cornell University***

*Stefan J. Padfield,* **Professor of Law, University of Akron School of Law**

*Alan R. Palmiter,* **Howard L. Oleck Professor of Business Law, School of Law, Wake Forest University**

*Frank Partnoy*, **George E. Barrett Professor of Law and Finance, University of San Diego School of Law**

*Brian JM Quinn,* **Associate Professor of Law, Boston College Law School**

*Margaret V. Sachs,* **Robert Cotten Alston Professor of Law, University of Georgia School of Law**

*Cindy A. Schipani,* **Merwin H. Waterman Collegiate Professor of Business Administration and Professor of Business Law, Steven M. Ross School of Business, University of Michigan**

*Jennifer Taub,* **Professor of Law, Vermont Law School**

*Kellye Y. Testy,* **Dean and Judge James W. Mifflin University Professor, University of Washington School of Law**

*Cheryl L. Wade,* **Harold F. McNiece Professor of Law, Saint John's University School of Law**

*David H. Webber***, Associate Professor of Law, Boston University Law School**

*Cynthia Williams,* **Osler Chair in Business Law, Osgoode Hall Law School, York University**

*Adam Winkler,* **Professor of Law, UCLA School of Law**

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Third Circuit Rule 28.3(d), I, Rolin P. Bissell, certify that

I am a member of the Bar of the United States Court of Appeals for the Third

Circuit.

/s/ *Rolin P. Bissell*
Rolin P. Bissell, Esquire (DE 4478)

Dated:  February 11, 2015

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), I, Rolin P. Bissell, certify, based on the word-counting function of my word-processing system (Microsoft Word 2010), that this brief complies with the type-volume limitations of Fed. R. App. P. 29(d) and Fed. R. App. P. 32(a)(7)(B), in that the brief contains 5,054 words, excluding the parts of the Brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it is prepared in a 14-point, proportional format (Times New Roman) using Microsoft Word 2010.

Pursuant to 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronic brief is identical to the text of the paper copies.  I also certify that a virus detection program, specifically Symantec  Endpoint Version 11, has been run on this file and that no virus was detected.

/s/ Rolin P. Bissell
Rolin P. Bissell, Esquire (DE 4478)

Dated:  February 11, 2015

## CERTIFICATE OF SERVICE

I, Rolin P. Bissell, Esquire, hereby certify as follows:  On February 11, 2015, I caused a copy of this brief to be electronically filed with the Clerk of the Court using the CM/ECF system.  In addition, 10 paper copies of the brief were sent by Certified First Class Mail to the Court on the same day it was electronically filed.  One paper copy was mailed to each of the following parties:

Christopher M. Foulds, Esquire
Joel E. Friedlander, Esquire
Jeffrey M. Gorris, Esquire
Friedlander & Gorris, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
*cfoulds@friedlandergorris.com*
*jfriedlandergorris.com*
*jgorris@friedlandergorris.com*

*Attorneys for Plaintiff-Appellee*
*Trinity Wall Street*

Theodore J. Boutrous, Jr., Esquire
Gibson Dunn
333 South Grand Avenue
Los Angeles, CA  90071
*tboutrous@gibsondunn.com*

Adam H. Offenhartz, Esquire
Aric H. Wu, Esquire
Gibson Dunn
300 Park Avenue
47th Floor
New York, NY 10166
*aoffenhartz@gibsondunn.com*
*awu@gibsondunn.com*

Matthew E. Fisher, Esquire
Philip A. Rovner, Esquire
Angela C. Whitesell, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
*mfisher@potteranderson.com*
*provner@potteranderson.com*
*awhitesell@potteranderson.com*

*Attorneys for Defendant-Appellant*
*Wal-Mart Stores, Inc.*

Robert A. Long, Jr., Esquire
Covington & Burling
850-10th Street, N.W.
One City Center
Washington, DC 20001
*rlong@cov.com*

*Attorney for Amicus Appellants*
*American Petroleum Institute,*
*Business Roundtable and Chamber of*
*Commerce of the United States of*
*America*

Richard L. Wyatt, Jr., Esquire
Hunton & Williams
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
*rwyatt@hunton.com*

*Attorney for Proposed Amicus Appellant*
*National Association of Manufacturers*

Paul J. Lockwood, Esquire
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19801
*paul.lockwood@skadden.com*

*Attorney for Proposed Amicus Appellant*
*Society of Corporate Secretaries and*
*Governance Professionals Inc.*

Cory L. Andrews, Esquire
Washington Legal Foundation
2009 Massachusetts Avenue, N.W.
Washington, DC 20036
*candrews@wlf.org*

*Attorney for Proposed Amicus Appellant*
*Washington Legal Foundation*

William B. Chandler, III, Esquire
Wilson, Sonsini, Goodrich & Rosati
222 Delaware Avenue
Suite 800
Wilmington, DE 19801
*wchandler@wsgr.com*

*Attorney for Proposed Amicus Appellant*
*Retail Litigation Center Inc.*

Respectfully submitted,

/s/ Rolin P. Bissell
Rolin P. Bissell, Esquire (DE 4478)